1

2

3

4

5

6

The Honorable Thomas S. Zilly

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STRAITSHOT RC, LLC, a Delaware
corporation,

               Plaintiff,

      v.

TELEKENEX, INC., a Delaware corporation;
MARK PRUDELL and JOY PRUDELL,
husband and wife and the marital community
composed thereof; MARK RADFORD and
NIKKI RADFORD, husband and wife and the
marital community composed thereof; JOSHUA
SUMMERS and JULIA SUMMERS, husband
and wife and the marital community composed
thereof; ANTHONY ZABIT and JANE DOE
ZABIT, husband and wife and the marital
community composed thereof; BRANDON
CHANEY and JANE DOE CHANEY, husband
and wife and the marital community composed
thereof; MAMMOTH NETWORKS, LLC and
BRIAN WORTHEN and JANE DOE
WORTHEN, husband and wife and the marital
community composed thereof,

               Defendants.

Case No. 2:10-cv-00268-TSZ

**TELEKENEX DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT**

***NOTE ON MOTION CALENDAR:***
***December 17, 2010***

**ORAL ARGUMENT REQUESTED**

**TELEKENEX DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 1**
(Case No. 2:10-cv-00268-TSZ)
98591091v2 066331.1001

| | |
|---|---|
| 1 | TELEKENEX, INC., a Delaware Corporation, |
| 2 | Third-Party Plaintiff, |
| 3 | v. |
| 4 | STRAITSHOT RC, LLC., a Delaware limited liability company; STEPHEN PERRY and |
| 5 | JANE DOE PERRY, and the marital community composed thereof; and ANDREW GOLD and |
| 6 | JANE DOE GOLD, and the marital community composed thereof, |
| 7 | |
| 8 | Third-Party Defendants. |
| 9 | MAMMOTH NETWORKS, LLC, a Wyoming limited liability company, |
| 10 | Third-Party Plaintiff, |
| 11 | v. |
| 12 | CLARITAGE STRATEGY FUND, L.P., a Cayman Islands limited partnership, and |
| 13 | STRAITSHOT RC, LLC, a Delaware limited liability company, |
| 14 | |
| 15 | Third-Party Defendants. |

## I.  RELIEF REQUESTED

Defendant TELEKENEX, INC., Brandon Chaney, Anthony Zabit, and Joshua Summers (hereafter, "The Telekenex Defendants") request that the Court award summary judgment as to (1) Plaintiff's claim that the Telekenex Defendants violated the Lanham Act; (2) Plaintiff's claim that the Telekenex Defendants violated the Washington Consumer Protection Act; (3) Plaintiff's claim that the identity of their customers is a "trade secret;" and (4) Plaintiff's claim that the Telekenex Defendants solicited employees of Straitshot in violation of a duty not to do so.

## II.  FACTS RELEVANT TO THIS MOTION

### A.  Straitshot's Business was Failing in 2008.

By December, 2008, Straitshot owed its vendors more than $700,000, and complaints and demands to be paid were numerous and overwhelming.  Straitshot's CEO, Andrew Gold

**TELEKENEX DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 2**
(Case No. 2:10-cv-00268-TSZ)

98591091v2 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1   conceded as much:

2       Q   Let me change the question.  Isn't it true that [Plaintiff's responses to Telekenex'
3       discovery requests] show that at the end of December, 2008, Straitshot owed its vendors
        more than $700,000?
4
5       A   That is correct.

6       Q   Okay.  And within this list [set forth in Plaintiff's response to RFP 16], did you
        notice any companies who had been complaining that they were not being paid on time?
7
8       A   I haven't gone through this list.

9       Q   Take a minute and see if you recognize any customers who complained that they
        were not -- I mean vendors who complained they were not being paid.
10
11      A   I'm sure that there -- I'm not sure of them.  I mean, I imagine there are.

    Excerpt of Deposition Transcript of Gold[1] at 62:7-19; Exhibit 381.  Although Mr. Gold was
12
    unable to recall any customers with complaints about Straitshot's failure to pay invoices, many
13
    of Straitshot's accounts were so far in arrears that service was discontinued.  By way of example:
14
15      Q   XO shut off the circuits to Straitshot Communications on February 6, didn't it?

16      A   Yes, it did.

17      Q   For nonpayment?

18      A   Yes.

19      ...

20      Q   Drawing your attention to [Exhibit 392] You write, "One of Straitshot's toll-free
21      support numbers was wrongfully deactivated by Simple Signal, one of Straitshot's
        vendors, in January, 2009 without notice in an attempt to gain leverage in a billing
22      dispute."... And the billing dispute, can you tell me a little bit about that?  What was the
        billing dispute? Were you paying Simple Signal?
23
24      A   Simple Signal was a provider of voice services and SIP trunks that had proved to be a
        disaster as an initial partner, and we subsequently switched to Voxitas as our SIP
25

26  [1] True and correct copies of excerpts of the deposition transcript and exhibits of Andrew Gold are attached to the
    Declaration of Tift as Exhibit 1.

**TELEKENEX DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 3**
(Case No. 2:10-cv-00268-TSZ)

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

provider partner.  And the dispute had to do with their insistence on being paid for services they provided over a period of time where the services didn't work and, in fact, resulted in the loss of some of our business.

Gold Tr. at 66:13-17; 204:22-206:4; Exhibit 392.  Covad, Straitshot's largest circuit provider,

threatened to discontinue service to Straitshot due to a large balance near the same time:

> Q   Will you look down in the middle of [Exhibit 402] to a sentence that says, "Please be advised that payment in the amount of $265,704.06 must be received by noon on January 28, 2009."
>
> A   I see that.
>
> Q   And is it your understanding that at the date of this message, January 27th, that amount was owed by Straitshot to Covad?
>
> ...
>
> A   Well, according to this, that would be a total balance; but other than this document, I don't – I don't know exactly what the balance was with Covad.

Gold Tr. at 348:12-19; 349:13-15; Exhibit 402.[2]

Also by December 2008, Straitshot abandoned its leased premises, breached its lease, transferred its equipment and property to a storage unit,[3] and instructed its engineers to work from home.  Knowledge of Straitshot's "midnight moveout" was well-known to its vendors and creditors.  *See*, Exhibit 339, Deposition of Perry; Perry Tr. 117:14-119:14.[4]

**B.       There is no Evidence of Unlawful Solicitation.**

---

[2] Disconnect notices were also received from Voxitas (September 2008); U.S. Signal (December 2008), Co-Location.com (October 2008-February 2009), Covad (November 2008-January 2008); Qwest (January 2009-February 2009), NewEdge Networks (February 2009) and Internap (December 2008), as well as numerous vendor inquiries about past due invoices and collection activities.  *See*, Declaration of Tift.

[3] *See*, Transcript of Summers, at 67:14-68:10.

[4] True and correct excerpts of the deposition and exhibits of Steve Perry are attached as Exhibit 2 to the Declaration of Tift.  Mr. Perry explained that Straitshot RC, Plaintiff here, is an entity wholly owned by the Claritage Strategy Fund.  *See*, Perry Tr. at 62:12-14; Exhibit 363.  Mr. Perry is the Director of Claritage Strategy Fund, *see, Id.*  On behalf of Claritage Capital, Mr. Perry signed a "management contract" with Straitshot Communications, Inc., pursuant to which Claritage was to offer "management services" to Straitshot, and Straitshot was to pay Claritage sums in amounts ranging from more than $13,000/month to $25,000/month.  Perry Tr. at 71:23-72:1; 78:3-79:13.  Mr. Perry testified the "management duties" he assumed included "provid[ing] direction both directly to the company and also to Minki Synn and Andrew Gold relative to [Straitshot]."  Perry Tr. at 86:22-87:13.

**TELEKENEX DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 4**
(Case No. 2:10-cv-00268-TSZ)

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1    Straitshot's precarious position was well known to its employees as well as to its vendors.

2    *See*, e.g., Gold Tr. at 65:11-66:12; Ex. 382; Pauole Tr. 17:1-11; Dickason Tr. 11:6-9.[5]   In late

3    January, 2009, all of the Straitshot engineers resigned.  Straitshot alleges that Telekenex

4    unlawfully lured them away, but there is no support for this contention.

5    First, all of the engineers were at-will employees, who were free to leave Straitshot's

6    employment with or without notice.  Pauole Tr. 15:14-20; Dickason Tr. 11:15-12:13; Summers

7    Tr. 112:7-13, 124:7-125:21, 192:17-193:4; Ex. 46.  Mr. Pauole and Mr. Dickason began

8    searching for employment on-line toward the end of 2008.  Pauole Tr. 11:4-12:22; Dickason

9    11:6-11.  Josh Summers had also begun to explore other employment.  Summers Tr. at 74:1-11.

10   Despite the direct testimony of the employees who left Telekenex explaining the reasons and

11   motivations for their resignations, Plaintiff contends that Prudell and Radford, (who, for

12   purposes of this motion, had employment agreements that appear to prohibit solicitation of

13   Straitshot employees), actively solicited the engineers.  In fact, Straitshot has no admissible

14   evidence that Prudell or Radford spoke one word to Summers or the other Straitshot engineers.

15   The engineers, to a man, deny that they were solicited by Prudell and Radford.  Pauole Tr. 10:11-

16   14, 15:14-17:16; Dickason Tr. 21:22-23:25; Summers Tr. at 101:3-6, 102:12-25.

17   Mr. Gold's testimony is wholly inadequate to establish Plaintiff's claim to the contrary:

18   Q    What did either defendant Prudell or defendant Radford say to Josh Summers to
19   solicit his employment?

20   A    My personal knowledge is not -- does not include having been privy to the
     conversations that they had.
21

22   Q    Okay.  And how about the other engineers, do you actually know that either Prudell
     or Radford solicited an engineer?
23

24   A    I do know that, but I did not -- I didn't have any conversations with them about it.

25   Q    How do you know that?

26

[5] True and correct excerpts and exhibits of the depositions of Pauole, Dickason, and Summers are attached as Exhibit 3, 4 and 5 to the Declaration of Tift.

**TELEKENEX DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 5**
(Case No. 2:10-cv-00268-TSZ)
98591091v2 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

A   Well, I've seen other evidence, including e-mails and other communications, that either directly or -- suggested or confirm it or indirectly suggest it.

Gold Tr. at 132:22-133:9. These emails are hardly the conclusive evidence Mr. Gold suggests they are:

Q   And in what ways did you believe that these things that you've seen have suggested that Mark Radford and Mark Prudell solicited Josh Summers and the other engineers to go work at Telekenex?

A   [Prudell and Radford] communicated with customers prior -- Straitshot customers prior to the engineers leaving regarding that fact.[6]  I do know that Mr. Prudell was in communication with Mr. Summers during the time between their departure...

Q   And how do you know that?

A   I saw when I was with Josh Summers leaving a luncheon...sometime during the week of January 19th when I was in Seattle, Josh's phone rang, and it was Mr. Prudell calling.

Q   Okay.  And do you know for a fact that they talked about Josh coming to work at Telekenex?

A   As I said, I didn't hear their conversation.

Q   And the e-mail that you're referring to is an e-mail, I believe, that was written by Mark Prudell, and it said something along the lines to a customer that Josh was coming to work at Telekenex?

A   That was at least -- There was, as I recall, more than just one document demonstrating that that message was expressed.  I've also received other documents, e-mails, et cetera from third parties saying that was what was represented to me.

Q   Okay.  And the fact that Josh is coming to work at Telekenex doesn't mean -- it doesn't also include the statement, "I solicited Josh." You never see that anywhere, do you?

A   I haven't stated that I saw that.

Gold Tr. at 133:10-134:19.  Ultimately, Mr. Gold concedes that he made an assumption that the

---

[6] The email Mr. Gold is referring to actually says "Josh is in San Francisco interviewing for a job."  A few days later, Mr. Shaw wrote that "supposedly Josh is going to work for Telekenex as well."  *See*, page 44 and Exhibits 143 and 145, Transcript of Shaw, excerpts of which are attached as Exhibit 6 to Decl. of Tift.

**TELEKENEX DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 6**
(Case No. 2:10-cv-00268-TSZ)

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

1   engineers were solicited—but that he has no direct, testimonial knowledge that his assumption

2   was true.  Gold Tr. at 136:5-18.  Mr. Gold's working assumption, simply stated, is untrue.

3       **C.**    **Straitshot Ceased offering Services to Customers on February 20, 2009.**

4       Straitshot stopped offering services to its customers on February 20, 2009.  *See*, Ex. 381,[7]

5   Deposition of Gold.  Even before February 20, 2009, on February 12 and later, on February 16,

6   2009, Straitshot publicly "released" its customers from their contractual obligations to Straitshot,

7   and allowed them to obtain the same services that had been provided by Straitshot from other

8   vendors.  *See*, Gold Tr. at 384:16-386:7; Ex. 409; Ex. 393 ("[A]s you know, we are not requiring

9   any customer to take advantage of [the opportunity to switch to Voxitas] and want you to

10  understand that you are free to explore your options.  If you choose to migrate to another supplier

11  Straitshot will cooperate with that transition.").  Mr. Gold explained Straitshot's decision to

12  cease its business operations as follows:

13      Q   So why did you decide to stop providing services?

14
15      A   Because we felt that it was more important to allow our customers to -- We didn't
    feel it was possible for us to continue operating, given the attacks that we were under
16      from the defendants.

17      Q   And what specifically were the defendants doing to you on February 16th that
    prevented you from offering services?
18
19      A   There was a concentration of acts that ultimately led us to the decision that we were
    not going to be able to survive.

20      Q   What were they doing?  What happened?

21      A   They were attacking our customer base.  They were unlawfully diverting circuits in
22      conjunction with Mammoth.[8]  They were stealing our information.[9]  They were lying to

23  [7] Answer to Interrogatory No. 16.

24  [8] This assertion is patently untrue.  Not one Straitshot customer was "repointed" from a Straitshot circuit to a
    Telekenex circuit (or, for that matter a Voxitas circuit) until Mr. Worthen received confirmation that that was the
    customer's intention.  Plaintiff offers no admissible evidence in support of any "diversion" of a circuit until it
25      released its customers on February 16 (or the customers otherwise made an election to obtain services from another
    company).  *See*, Worthen Tr. at 135:21-137:12; attached as Exhibit 7 to Decl. of Tift; Ex. 386, *infra*.
26  [9] This contention is likewise unsupported by any facts absent inflammatory accusations by Plaintiff.

**TELEKENEX DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 7**
(Case No. 2:10-cv-00268-TSZ)
98591091v2 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

our customers. They were creating a circumstance of fear. They were undermining every effort we made to save the company and to solve problems. They were throwing barriers up in front of us every chance they got, and --

Gold Tr. at 152:11-153:6 (emphasis added).

When asked for specifics, however, Mr. Gold admitted he "did not know" of any revenue that Straitshot was deprived of relative to leads that were allegedly "diverted" to Telekenex. Gold Tr. at 109:8-17. Mr. Gold was also unable to state, with <u>any</u> level of particularity what revenue was lost or what customers were lost by Straitshot due to the acts of the Telekenex Defendants. *See*, Gold Tr. at 111:6-13; 145:24-148:11. Finally, Mr. Gold was unable to articulate one act that the Telekenex Defendants undertook after Straitshot released its customers in mid-February 2009—or any credible threat that Telekenex intended to continue "attacking the customer base" after Straitshot released its customers from their contractual obligations and/or stopped offering services. Mr. Perry's testimony was the same—a listing of possibilities, with no actual evidence that Telekenex took any actions toward Straitshot after it failed nor an indication that Telekenex intended to do so. *See*, Perry Tr. at 218:18-220:4.

### D.    There is No Evidence that any Telekenex Defendant made a False Statement Concerning Straitshot.

Plaintiff contends that the Telekenex Defendants made false and misleading statements about Straitshot, causing the company damage. *See*, e.g., Third Amended Complaint, ¶152 (Telekenex said "Straitshot is in some extreme financial trouble right now and Straitshot customers are in jeopardy of their circuits with underlying carriers being disconnected due to non payment;" ¶155-158 "falsely stat[ing] that Straitshot was going out of business."); *see*, also, testimony of Gold at 137:3-16 ("Among the lies that they told was that Straitshot had closed its doors, that it was out of business, that it was in imminent danger of being cut off from various carriers...[a]s far as I can tell, it had no basis in fact.") However, as can be seen from the record, above, Straitshot <u>was</u> in extreme financial trouble, Straitshot received numerous notices of disconnect from its vendors, and Straitshot customers actually <u>did</u> suffer outages because

TELEKENEX DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 8
(Case No. 2:10-cv-00268-TSZ)
98591091v2 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1    vendors disconnected Straitshot for non-payment.  Mr. Gold complains that the Telekenex

2    Defendant "falsely" reported that Straitshot was about to "close its doors," but in fact Straitshot

3    <u>did</u> "close" its office and abandon the leased office with no notice to customers or vendors.  In

4    fact, at one point, one of Straitshot's lenders, Vencore, was attempting to contact the company to

5    discuss its account, but was literally unable to locate the company for that visit:

> I've gotten several calls from Jillian at Vencore Capital trying to find out, "quote, 'what's going on,'" end quote, "and get our physical address so they can come out and visit us. She says she's been trying to call you (Phil) but is not able to get through.
> I was not sure what was the message I'm supposed to tell our lenders (or other vendors) for that matter.  I gave her our P.O. box address, but when she drilled further for where our office is, I didn't know what you were telling them.  I disclosed only that I work as a telecommuting employee and do not have the new corporate address other than the P.O. box for mail receipt.

11   *See*, Exhibit 331 email from Straitshot's "Project Manager," Joy Hunsinger.  The statements

12   attributed by Straitshot to the Telekenex Defendants were not flattering, but they were also not

13   demonstrably false or misleading.

14       Moreover, Plaintiff is very well aware that the statements attributed to Telekenex had

15   little or no effect with respect to customers.  For example, on February 3, 2009, Mr. Balch, on

16   behalf of Straitshot customer MacKay and Sposito, wrote:

> Q   "Andrew, I'm glad to hear your company is not closing its doors.  However, I've contacted several people there about closing our account and ending our contract, and I have not heard anything.  *We've had the service disconnected in our office for over a month and are not using it,* and I would like a response that you received this e-mail regarding terminating our service."

20   Gold Tr. at 82:23-83:10 (emphasis added); Exhibit 386.  Mr. Shaw, another of Straitshot's

21   customers, testified that he attempted to terminate its contract with Straitshot in August, 2008,

22   and felt, by January 2009, that "we were not staying with Straitshot, whether we had to battle the

23   contract or if they were going out of business."  The reason, according to Mr. Shaw, was that

24   Straitshot had never performed its contractual obligations to Super Supplements.  Shaw Tr. at

25   50:23-25; 85:21-87:12.

26

**TELEKENEX DEFENDANTS' MOTION FOR PARTIAL**
**SUMMARY JUDGMENT - 9**
(Case No. 2:10-cv-00268-TSZ)
98591091v2 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

**E.    Straitshot's CEO Conceded that the Identity of Straitshot Customers Identities was not Confidential.**

Among the claims Plaintiff brings against the Telekenex Defendants is a claim for "stealing" Straitshot's trade secrets, including the identity of Straitshot's customers.  Straitshot's CEO, Mr. Gold, however, conceded that the identity of Straitshot's customers was not confidential:

> Q    But other than that, you didn't treat the fact of somebody being a client to be itself confidential information?
>
> A    No.  Not as a general practice, no.
>
> Q    Just for the sake of the record, my statement is accurate?  Sometimes when you respond no it's unclear whether --
>
> A    Oh, I see what you're saying.
>
> Q    -- that you're really saying no, you're wrong, or --
>
> A    As a general practice we did not keep the identity of businesses we had direct customer relationships with confidential, ...unless otherwise obligated by contract.

Gold Tr. at 438:3-17.  Mr. Gold's testimony eliminates any claim or cause of action related to confidentiality or a trade secret violation relative to the identity of a Straitshot customer.  The Telekenex Defendants request that Court so find, and dismiss, as a matter of law, any claim for breach of confidentiality or trade secret violation based upon the identity of a Straitshot Customer.

### III.    EVIDENCE RELIED UPON

The Telekenex Defendants rely on the following documents and exhibits in support of their Motion for Partial Summary Judgment: (1) Declaration of Leigh Ann Tift and exhibits attached thereto, and the pleadings, files and records herein.

### IV.    ARGUMENT AND AUTHORITY

**A.    Standard Applicable to the Motion.**

**TELEKENEX DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 10**
(Case No. 2:10-cv-00268-TSZ)
98591091v2 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1   Summary judgment is appropriate when the pleadings, affidavits and other material

2   present no genuine issue of material fact and the moving party is entitled to judgment as a matter

3   of law. *Rebel Oil Co, Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1432 (9th Cir. 1995). "By its

4   very terms, this standard provides that the mere existence of some alleged factual dispute

5   between the parties will not defeat an otherwise properly supported motion for summary

6   judgment; the requirement is that there be no genuine issue of material fact." *Anderson v.*

7   *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "As to materiality, the substantive law will

8   identify which facts are material. Only disputes over facts that might affect the outcome of the

9   suit under the governing law will properly preclude the entry of summary judgment." *Id.*, at 248.

10   "Where the record taken as a whole could not lead a rational trier of fact to find for the

11   non-moving party, there is no genuine issue for trial". *Matsushita Elec., Inc., Co., v. Zenith*

12   *Radio Corp.*, 475 U.S. 574, 587, (1986). More specifically, the party resisting summary

13   judgment "must do more than simply show that there is some metaphysical doubt as to the

14   material facts," and must produce more than a "mere scintilla" of evidence to demonstrate a

15   genuine issue of material fact and avoid summary judgment.

16   **B.    The Telekenex Defendants did not Violate the Lanham Act.**

17   Plaintiff alleges that the conduct of the Telekenex Defendants violated the Lanham Act,

18   15 U.S.C. §1125(a). The statute, which has considerable breadth, provides that a violation is

19   established where:

20   (a)(1) Any person who, on or in connection with any goods or services ... uses in
   commerce any word, term, name, symbol, or device, or any combination thereof, or any
21   ... false or misleading description of fact, or false or misleading representation of fact,
   which—
22

23   (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,
   connection, or association of such person with another person, or as to the origin,
   sponsorship, or approval of his or her goods, services, or commercial activities by another
24   person, or

25   (B) in commercial advertising or promotion, misrepresents the nature, characteristics,
   qualities, or geographic origin of his or her ... goods, services, or commercial activities,
26

TELEKENEX DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 11
(Case No. 2:10-cv-00268-TSZ)
98591091v2 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Seemingly, Plaintiff is contending that the Telekenex Defendants engaged in some kind of false advertising. Accordingly, Plaintiff must show:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;

(2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

(3) the deception is material, in that it is likely to influence the purchasing decision;

(4) the defendant caused its false statement to enter interstate commerce; and

(5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *Nat'l Prods. v. Gamber-Johnson LLC*, 699 F. Supp. 2d 1232, 1237 (W.D. Wash. 2010).

### 1.      Plaintiff does not Establish a "False or Deceptive" Statement.

To demonstrate falsity, Plaintiff must show either that the statement was literally false or that the statement was literally true but misleading. *Southland Sod Farms*, 108 F.3d at 1139. "When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Id.* "Where a statement is not literally false and is only misleading in context...proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical." *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995) (finding that this requirement was not met where evidence showed less than 3% of the intended audience was deceived).

The "false or deceptive representations" that are the basis for a Lanham Act claim must be such that they "actually deceived a significant portion of the consuming public." *Harper*

TELEKENEX DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 12
(Case No. 2:10-cv-00268-TSZ)
98591091v2 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1  *House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 208 (9th Cir. 1989). A rebuttable presumption

2  of deception may arise if an advertisement is literally false or if a competitor expends

3  "substantial funds in an effort to deceive consumers and influence their purchasing decisions."

4  *Nat'l Prods.*, 699 F. Supp. 2d at 1237, 1240 (citing *U-Haul Intern., Inc. v. Jartran Inc.*, 793 F.2d

5  1034, 1040-41 (9th Cir. 1986)).  However, in the absence of literal falsity and actual deception,

6  summary judgment should be granted. *See, e.g., Nat'l Prods.*, 699 F. Supp. 2d at 1239 (granting

7  partial summary judgment with regard to literally true statement); *Fortunet, Inc. v. Gametech*

8  *Ariz. Corp.*, 2008 U.S. Dist. LEXIS 96565, at *21-22 (D. Nev. Nov. 26, 2008) (granting partial

9  summary judgment to defendant with regard to literally true statements that did not actually

10  deceive consumers).  None of the relevant criteria are present here.

11        Mr. Perry testified that the false statements he attributed to the Telekenex Defendants

12  were "such as we, Telekenex, have permission from Straitshot to take -- to take this customer

13  onto our platform.  That's -- those were false statements.  Things like that."[10] Perry Tr. at 166:3-

14  22.  Mr. Perry could not identify any customer who was told this, nor does this assertion meet the

15  test set forth by the Ninth Circuit relating to deception of a "significant portion of the consuming

16  public."  He believed that other false statements were made as well, but had no independent

17  memory of what those statements might be.  *Id.*  Mr. Gold's attribution of false statements is

18  discussed *infra*.  As noted above, the message that Straitshot was in dire financial straits, that

19  service disruptions were threatened due to nonpayment and/or that the company closed its office

20  were not false.

21        Plaintiff's witnesses did not identify any statements which qualify as a substantive

22  violation of the Lanham Act.  The Telekenex Defendants request that the Court so find, and

23  dismiss this claim.

24

25  [10] Mr. Perry later testified that he felt that conversations between he and Mr. Zabit and Chaney regarding the purchase of Straitshot's assets were deceptive, that Josh Summers was "deceptive" when he was asked what his

26  plans were at the time of his resignation, and that Brian Worthen, of Mammoth was untruthful.  None of these statements are "false advertising" in the context of a Lanham Act violation. *See*, Perry Tr. at 450:7-454:24.

**TELEKENEX DEFENDANTS' MOTION FOR PARTIAL**
**SUMMARY JUDGMENT - 13**
(Case No. 2:10-cv-00268-TSZ)
98591091v2 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

1

       **2.**    **Plaintiff does not Establish Either Materiality.**

2

The Lanham Act requires Plaintiff to show that the complained-of statements are

3

material, or "likely to influence [a] purchasing decision." *Southland Sod Farms*, 108 F.3d at

4

1139. Consumer surveys are the most effective way to establish the materiality of deception,

5

though materiality may also be established through direct consumer testimony. *Skydive Ariz.,*

6

*Inc. v. Ouattrocchi*, 2009 U.S. Dist. LEXIS 128418, at *88-90 (D. Ariz. Feb. 2, 2009); *see also*

7

*Southland Sod Farms*, 108 F.3d at 1140 ("Reactions of the public are typically tested through the

8

use of consumer surveys."). In this case, there is no evidence in the form of consumer surveys or

9

direct consumer testimony that the statements at issue actually influenced a purchasing decision

10

in the substantive manner intended by the terms of the statute.

11

       **3.**    **Plaintiff Lacks Evidence of Injury Attributable to Statements from the Telekenex Defendants.**

12

13

Finally, Plaintiff must establish that it has been injured as a result of the alleged

14

deception. "In a suit for damages under section 43(a)...actual evidence of some injury resulting

15

from the deception is an essential element of the plaintiff's case." *Harper House, Inc.*, 889 F.2d

16

at 210. A plaintiff must prove "both the fact and the amount of damage." *Use Techno Corp. v.*

17

*Kenko USA, Inc.*, 2007 U.S. Dist. LEXIS 85916 (N.D. Cal. Nov. 20, 2007) (granting summary

18

judgment for defendant where plaintiff had failed to disclose damages) (citing *Lindy Pen Co.,*

19

*Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993)). Neither Mr. Gold nor Mr. Perry

20

was able to identify a single customer who made a decision to abandon a Straitshot contract for

21

services based upon "false" statements attributable to a Telekenex Defendant prior to the time

22

that Straitshot itself released its customers. Accordingly, there is no evidence of injury.

23

  **C.**    **The Telekenex Defendants did not Violate the Washington Consumer Protection Act.**

24

The Washington Consumer Protection Act ("CPA") declares unlawful "[u]nfair methods

25

of competition and unfair or deceptive acts or practices in the conduct of any trade or

26

commerce." *See* Wash. Rev. Code § 19.86.020. To establish a violation of the CPA, a plaintiff

**TELEKENEX DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 14**
(Case No. 2:10-cv-00268-TSZ)
98591091v2 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

1   must establish: (i) an unfair or deceptive act or practice; (ii) occurring in trade or commerce; (iii)

2   a public interest impact; (iv) an injury to plaintiff in his or her business or property; and (v)

3   causation. *Hangman Ridge Riding Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780,

4   719 P.2d 531, 533 (1986).

5        "[F]or conduct to be an unfair or deceptive practice under the CPA, it must have the

6   capacity to deceive a *substantial portion* of the public." *Segal Co. (Eastern States), Inc. v.*

7   *Amazon.com*, 280 F. Supp. 2d 1229, 1232 (W.D. Wa. 2003) (granting defendants' motion for

8   partial summary judgment on CPA claim) (emphasis added, internal quotation marks and citation

9   omitted). In *Segal Co.*, plaintiffs alleged that the manner in which defendant solicited their

10   business had the potential to deceive a large portion of the public. The court dismissed the CPA

11   claim where "plaintiffs' allegations do not allow the reasonable inference that defendant engaged

12   in the sort of random widespread solicitation of consumers prohibited by these cases." *Id.*

13        Here, as in *Segal Co.*, Plaintiff is unable to show that any "widespread" deception

14   occurred. At worst, Plaintiff can possibly prove that the Telekenex Defendants targeted certain

15   of their customers in an effort to lure them away from Straitshot—but the customers that were

16   the targets of these acts were customers that Defendants Prudell and Radford identified as likely

17   to follow them to a new employer based upon past relationships. There is no indication at all

18   that the Telekenex Defendants attempted to solicit customers on a widespread or general basis,

19   and there is no evidence of "a pattern or generalized course of conduct, creating a real and

20   substantial potential for repetition of defendant's conduct." *Segal Co.*, 280 F. Supp. 2d at 1234;

21   *see*, also Section IIC, above. The Telekenex Defendants request that the Court so find and award

22   the Telekenex Defendants summary judgment of dismissal of this claim.

23        Furthermore, Straitshot fails to adduce any evidence that the actions of the Telekenex

24   Defendants have the requisite public interest impact. The following determinations must be

25   affirmatively established—but here are not: (1) the alleged acts must be committed in the course

26

TELEKENEX DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 15
(Case No. 2:10-cv-00268-TSZ)
98591091v2 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

1    of defendant's business; (2) the acts must be part of a pattern or generalized course of conduct;

2    (3) the acts must be repeated acts committed prior to the act involving the plaintiff; (4) there

3    must be a real and substantial potential for repetition of the defendant's conduct after the act

4    involving the plaintiff; and (5) if a single transaction, many consumers must be affected or likely

5    affected by the complained-of behavior. *Hangman Ridge*, 105 Wn.2d at 790.

6         **D.    The Telekenex Defendants did not Unlawfully Solicit Straitshot Employees.**

7         Plaintiff asserts that the Telekenex Defendants unlawfully solicited the Straitshot

8    engineers, allegedly interfering with Straitshot's "contractual relations."[11]   However, Mr. Gold's

9    assumptions and/or speculation that Telekenex solicited its technical staff in breach of a

10   contractual relationship is not sufficient to withstand summary judgment. *Villiarimo v. Aloha*

11   *Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).

12        In any event, even if Straitshot's proof consisted of more than Mr. Gold's presumptions,

13   the Washington Supreme Court explained that to make a claim for tortious interference with a

14   business expectancy, a plaintiff must (1) point to a business expectancy with a third party, (2)

15   must show that defendant was aware of the expectancy, and (3) must allege that defendant

16   interfered with the expectancy. *Calbom v. Knudtzon*, 65 Wn.2d 157, 164-65, 396 P.2d 148

17   (1964).   None of these elements are met here.   Straitshot and the engineers had only an at-will

18   relationship, which by its nature was terminable at any time, for any reason. *Thompson v. St.*

19   *Regis Paper Co.*, 102 Wn.2d 219, 225-26, 685 P.2d 1081 (1984).   Telekenex was not aware of an

20   "expectancy" on the part of Straitshot that its at-will employees were bound to the company or

21   restricted in any way from leaving Straitshot's employment.   To the extent Straitshot had such an

22   expectancy, it was unfounded.   Making an offer of employment to an at-will employee cannot,

23   and does not, interfere with any legitimate expectancy on the part of Straitshot.

24        Straitshot cannot establish a cause of action relative to "soliciting" its engineers absent

25

26   [11] This claim is not clearly pleaded in the TAC, but both Mr. Perry and Mr. Gold alluded to it.

**TELEKENEX DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 16**
(Case No. 2:10-cv-00268-TSZ)

98591091v2 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

first establishing that Telekenex breached or caused a breach of a contractual obligation. *Newton Ins. Agency v. Caledonian Ins. Group*, 114 Wn. App. 151, 157-158, 52 P.3d 30 (2002); *Calence v. Dimension Data Holdings*, 2007 U.S. Dist LEXIS 36235, *14 (W.D. Wash. 2007) ("[P]laintiff lacks any evidence of tortuous interference.  Plaintiff point to no evidence in the record that defendant interfered with the contractual relationships between plaintiff and the individually-named co-defendants or between plaintiff and the other former employees.")  Straitshot here is wholly unable to establish the elements of a claim that Telekenex wrongfully solicited its engineers, and this assertion must be dismissed as a matter of law.

## V.     CONCLUSION

For all of the reasons set forth above, the Telekenex Defendants ask that the Court award summary judgment as to (1) Plaintiff's claim that the Telekenex Defendants violated the Lanham Act; (2) Plaintiff's claims that the Telekenex Defendants violated the Washington Consumer Protection Act; (3) Plaintiff's claim that the identity of their customers is a "trade secret;" and (4) Plaintiff's claim that the Telekenex Defendants tortiously solicited employees of Straitshot.

Dated:  November 24, 2010

*s/ Leigh Ann Collings Tift*
Leigh Ann Collings Tift, WSBA #11776
LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
Phone:        206.623.3300
Fax:            206.447.6965
E-Mail:       ltift@littler.com
Attorneys for Defendants
Telekenex, Inc., a Delaware Corporation,
Joshua Summers and Julia Summers, husband
and wife and the marital community composed
thereof; Anthony Zabit and Jane Doe Zabit,
husband and wife and the marital community
composed thereof; and Brandon Chaney and
Jane Doe Chaney, husband and wife, and the
marital community composed thereof.

**TELEKENEX DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 17**
(Case No. 2:10-cv-00268-TSZ)
98591091v2 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on November 24, 2010, I electronically filed the foregoing with the Clerk of

3

the Court using the CM/ECF system which will send notification of such filing to the following:

4

Jessica L. Goldman                              A Chad Allred
Lawrence Carl Locker                            Ellis Li & McKinstry

5

Summit Law Group                                Market Place Tower
315 Fifth Avenue South, Suite 1000              2025 First Avenue, Penthouse A

6

Seattle, WA  98104                              Seattle, WA  98121
Phone:  206.676.7000                            Phone:  206.682.0565

7

Fax:  206.676.7001                              Fax:  206.652.1052
Email:  jessicag@summitlaw.com                  Email:  callred@elmalw.com

8

       larryl@summitlaw.com
                                   **ATTORNEYS FOR MAMMOTH NETWORKS**

9

                                   **LLC**
Jonathan Massey, *pro hac vice*

10

Leonard Gail, *pro hac vice*                    Kenneth Joel Diamond
Massey & Gail LLP                               Winterbauer & Diamond PLLC

11

50 East Washington Street. Suite 400            1200 5th Avenue, Suite 1700
Chicago, IL  60602                              Seattle, WA  98101-3147

12

Phone:  312.283.1590                            Phone:  206.676.8440
Fax:  312-379-0467                              Fax:  206.676.8441

13

Email:  jmassey@masseygail.com                  Email:  ken@winterbauerdiamond.com
       lgail@masseygail.com

14

**ATTORNEYS FOR PLAINTIFF**                     **ATTORNEYS FOR DEFENDANTS MARK**
                                   **AND JOY PRUDELL AND MARK AND**

15

                                   **NIKKI RADFORD**

16

17

and I hereby certify that I have mailed by the United States Postal Service the foregoing

18

document to the following non CM/ECF participants:

19

        **N/A**

20

21

22

Dated:  November 24, 2010            _s/ Cheryl A. Phillips_____

23

                               Cheryl A. Phillips
                               cphillips@littler.com

24

                               **LITTLER MENDELSON, P.C.**

25

Firmwide:98591091.2 066331.1001

26

**TELEKENEX DEFENDANTS' MOTION FOR PARTIAL**
**SUMMARY JUDGMENT - 18**
(Case No. 2:10-cv-00268-TSZ)
98591091v2 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300