The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STRAITSHOT RC, LLC, a Delaware corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>TELEKENEX, INC., a Delaware corporation; MARK PRUDELL and JOY PRUDELL, husband and wife and the marital community composed thereof; MARK RADFORD and NIKKI RADFORD, husband and wife and the marital community composed thereof; JOSHUA SUMMERS and JULIA SUMMERS, husband and wife and the marital community composed thereof; ANTHONY ZABIT and JANE DOE ZABIT, husband and wife and the marital community composed thereof; BRANDON CHANEY and JANE DOE CHANEY, husband and wife and the marital community composed thereof; MAMMOTH NETWORKS, LLC and BRIAN WORTHEN and JANE DOE WORTHEN, husband and wife and the marital community composed thereof,<br><br>        Defendants. | Case No. 2:10-cv-00268-TSZ<br><br>**TELEKENEX DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>*NOTE ON MOTION CALENDAR:*<br>*December 17, 2010*<br><br>**ORAL ARGUMENT REQUESTED** |

**TELEKENEX DEFENDANTS' REPLY TO OPP. TO PMSJ - 1**
(Case No. 2:10-cv-00268-TSZ)
99188543v1 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

| | |
|---|---|
| TELEKENEX, INC., a Delaware Corporation, | |
| Third-Party Plaintiff, | |
| v. | |
| STRAITSHOT RC, LLC., a Delaware limited liability company; STEPHEN PERRY and JANE DOE PERRY, and the marital community composed thereof; and ANDREW GOLD and JANE DOE GOLD, and the marital community composed thereof, | |
| Third-Party Defendants. | |
| MAMMOTH NETWORKS, LLC, a Wyoming limited liability company, | |
| Third-Party Plaintiff, | |
| v. | |
| CLARITAGE STRATEGY FUND, L.P., a Cayman Islands limited partnership, and STRAITSHOT RC, LLC, a Delaware limited liability company, | |
| Third-Party Defendants. | |

## I. ARGUMENT

### A. Straitshot's Poor Financial Position had Nothing to do with Telekenex.

Plaintiff maintains that Straitshot's financial projections showed the company was "poised for growth;" that it was "in regular contact with its vendors to ensure it made all payments necessary to maintain service;" and that any statement to the contrary was actionable falsehood. Plaintiff's pronouncements in this lawsuit cannot be reconciled with historical fact.

First, as to Straitshot's financial projections, these were intended (according to their principal author, CFO Phil Howe) to either "justify Claritage's investment" or as an analytical tool. Howe Tr. at 19:23-20:5.[1] Mr. Perry, who directed that Straitshot's financial projections be

---

[1] Excerpts of the Deposition Transcript of Phil Howe, Straitshot's former CFO, are attached as Exhibit 1 to the 2nd Decl. of Tift.

**TELEKENEX DEFENDANTS' REPLY TO OPP. TO PMSJ - 2**
(Case No. 2:10-cv-00268-TSZ)
99188543v1 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

prepared,[2] explained that he did not believe the projections reliably foretold Straitshot's future and did not think investors should rely on them either. Perry Tr. at 147:17-25[3] (Perry had "no expectation that that [the projected outcome] would be what the future of the company would be."); Perry Tr. at 153:15-24 (Q: "Did you tell the investors that [the projections] were documents that could be relied upon?" A: "No, I don't believe so.") Furthermore, in addition to the projections used to "justify" Claritage's investment and/or value the company--which were stunningly optimistic,[4] Straitshot prepared other, more realistic projections that showed the company would run out of cash (and therefore be out of business) by 2009 if it could not find another investor. Howe Tr. at 30:3-9. Straitshot did not find another investor in 2008, although Claritage loaned money to Straitshot which the company used, in part, according to Howe, to pay creditors "who were threatening to shut off services." Howe Tr. at 30:23-25.

Plaintiff claims that it had "agreements" with both Covad and Mammoth to defer payments and that it was in no "danger of having its wholesale carriers disable its network." This contention is demonstrably false. There was no agreement with Covad. At his deposition, Mr. Gold admitted that he never signed an agreement with Covad, and instead, "Jeff," from Covad required Straitshot to make a January payment of $120,000 at which point Covad would take a "wait and see" approach on the ultimate question of deferral. Gold Tr. at 282:6-21; 283:12-14; 285:8-20[5] (by early February, "The deferral agreement was really not something that was going to be discussed until [Covad was] able to see conclusively how it all shook out vis-á-vis Straitshot and Telekenex and the other defendants.") Furthermore, contrary to Plaintiff's characterizations now, Covad's written communications to Straitshot at the time show conclusively there was no agreement with Covad. That is, Mr. Howe identified <u>monthly</u> "48-

---

[2] Mr. Perry was able to give these directions to Straitshot because he "control[led] the primary investor in Straitshot." *See*, Ex. 2, Decl. of Tift.
[3] Excerpts of the Perry Transcript are attached as Ex. 3 to 2nd Decl. of Tift.
[4] Straitshot's "Jupiter projection," relied upon by Plaintiff's expert, forecast sales growth by 86% in 2009 and 82% in 2010. *See*, Excerpt of Barrick report, attached as Ex. 4, 2nd Decl. of Tift.
[5] Excerpts of the Gold Transcript are attached as Ex. 5 to the 2nd Decl. of Tift.

**TELEKENEX DEFENDANTS' REPLY TO OPP. TO PMSJ - 3**
(Case No. 2:10-cv-00268-TSZ)
99188543v1 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

1  hour disconnect notices" from Covad, beginning in November, 2008 which culminate in a
2  January 27, 2009 notice from Covad that if the account was not paid in full by noon the
3  following day, Covad will "terminate service and evaluate its options in fully enforcing its rights
4  under the contract." *See*, Howe Tr. at 78:7-79:13; Exhibits 455, 461, 470, and 475 to Howe
5  Dep.[6] There was likewise no agreement with Mammoth. Mammoth conditioned its agreement
6  to a deferral upon Straitshot achieving a deal with Covad—which, as noted above, did not
7  happen. *See*, Worthen Tr. at 314:2-22.[7]

8  Finally, Plaintiff characterizes the decision to abandon its offices in December as both a
9  "cost-saving" measure and a prudent business decision to move to a different location. In fact,
10 after Straitshot abandoned its lease prior to the end of its term, Straitshot's landlord sued for
11 unpaid rent, obtained a $36,000 judgment, and then applied for a writ of garnishment—so there
12 was no cost-savings to Straitshot. *See*, Ex. 330 to Perry Tr; Gold Tr. at 202:4-9. Straitshot did
13 not move to a new office, *see*, Gold Tr. at 139:16-25, and it is therefore literally true that the
14 company "closed its doors" in December.

15 **B.    There is no Evidence of Unlawful Solicitation.**

16 Plaintiff argues that there is plenty of evidence that Telekenex solicited its engineers.
17 True or not, a solicitation by Telekenex was not unlawful. The only parties to this dispute who
18 had non-solicitation agreements were Prudell and Radford, and despite pages of text devoted to
19 the "solicitation" argument, Plaintiff adduces not one admissible statement or document to show
20 that Prudell or Radford had a hand in the solicitation of any Straitshot employee.

21 Straitshot had no fixed-term contracts with its engineers, and therefore had no way of
22 requiring them to stay with Straitshot when a better opportunity was offered. *See*, Perry Tr. at
23 152:2-7. In fact, while Plaintiff makes much of the fact that the exodus of employees was well

---

[6] Mr. Gold passed this communication along to Mr. Perry with a note that said, simply, "the other shoe." *See*, Ex. 402, Gold Tr at 347:6-21.

[7] Excerpts of the Worthen Transcript are attached as Exhibit 6 to the 2nd Decl. of Tift.

**TELEKENEX DEFENDANTS' REPLY TO OPP. TO PMSJ - 4**
(Case No. 2:10-cv-00268-TSZ)
99188543v1 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

known to Straitshot customers, one of Straitshot's former customers (which—notably, left Straitshot for Qwest, not Telekenex) wrote, on January 28, 2009: "I haven't heard if Josh and his staff have excepted (sic) the offer [from Telekenex] or not but I can't imagine them staying with Straitshot when they have an offer with a stable company."[8]

### C. Plaintiff cannot show Harm from Misleading Advertising or Communications.

Straitshot maintains that "throughout February 2009, many customers cancelled their Straitshot contracts," implying this was harm directly attributable to the acts of the Telekenex Defendants. Opp. at page 15. However, on February 12, 2009, Straitshot publicly "released" its customers from their contractual obligations to Straitshot. Customers who left Straitshot after February 12, 2009 presumably did so because Straitshot suggested it was the best thing for them to do. Prior to that date, however, Plaintiff points to a February 9, 2009 communication from Prudell and Radford which indicated that <u>nine</u> former customers had decided to switch to Telekenex (although this email does not show when the switch occurred, i.e., whether after February 12 or before). Opp. at page 16. In any event, at most, Plaintiff is able to show that this handful of customers (less than 10% of its customer base) was affected by a "solicitation" to move to Telekenex.[9] *See*, Docket No. 18-11, Oct. 12, 2009 Dec. of Gold, ¶10 (Straitshot had 87 customers before Prudell and Radford were hired) and ¶¶19-23 (the customers Gold attributed to Prudell and Radford's sales efforts). Taking Plaintiff's evidence at face value, the loss of customers to Telekenex is hardly compelling. Moreover, and more significantly, Plaintiff does not attempt to show how much revenue is attributable to a loss of customers prior to February 12--and that is because Plaintiff has no idea. *See*, Gold Tr. at 147:4-148:11. In fact, Straitshot takes the position that a customer cancellation costs them nothing. In support of this,

---

[8] Exhibit 150 to Deposition of Skylar Shaw, IT Director of Super Supplements, attached as Exhibit 7 to 2nd Decl. of Tift. Notably, Mr. Shaw is writing to Voxitas, an ally and proposed successor to Straitshot.

[9] Plaintiff suggests that Telekenex used an objectionable "script" to solicit Straitshot customers. *See*, Opp. at page 17. Plaintiff knows that the cited-to script was never approved for use by Telekenex. Bani Tr. at 62:24-63:18, Ex. 8, 2nd Decl. of Tift.

**TELEKENEX DEFENDANTS' REPLY TO OPP. TO PMSJ - 5**
(Case No. 2:10-cv-00268-TSZ)
99188543v1 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

Mr. Howe testified as follows:

> Q   Okay.  Mr. Gold next writes, "Customers that cancel during the contract pay termination fees and/or order replacement circuits (replacing the cash flow either way)."  Do you see that?
>
> A   I see that.
>
> Q   Do you agree with that statement?
>
> A   That was what we assumed, yes, in this particular model.
>
> Q   Okay.  So if you had a customer that canceled during a contract period, you -- your models indicated that the revenue to Straitshot was the same.
> ...
> THE WITNESS:  The -- yeah, I mean, the revenue would stay the same.  I think -- I think this was for early termination.

Howe Tr. at 108:11-24.  Plaintiff does not, and in fact cannot, show any harm attributable to "lost customers" or customers who terminated early on or before February 12, 2009.

Further, although Plaintiff argues that Telekenex's pleadings show that Straitshot was doing its best to "mitigate" damages from the bad acts of the Telekenex Defendants, the testimony of Mr. Gold shows otherwise.  If anything, Straitshot's failures are due to Mr. Gold's "business decisions."  Mr. Gold testified as follows:

> Q   Under the heading of duty to mitigate, why don't you just pay off Mammoth?
> ... Why didn't you just pay off the account in full?
>
> A   Because we made business decisions that were based on the realities of the time.  We did what we could.
>
> Q   Well, Mr. Perry testified that he stood behind Straitshot with millions at his disposal.  So why not just pay off Mammoth and pay off Covad and continue doing business?
>
> A:  ...I only can speak as CEO of Straitshot, not Mr. Perry -- I had resources available to me either through revenues that were earned from our customers and bills that were paid from our customers, or from our outside investor.  And I applied those revenues in a way that didn't just get me through today but was -- was focused on creating an entity that could survive into the future.  Every decision I made on every day dealing with the facts that I had were based on that, to make sure that Straitshot could continue to survive and thrive despite what was thrown at it, and I was -- I proved myself to be and my -- my team and Mr. Perry, frankly, at that point proved ourselves to be incredibly adaptable, given the barriers that were thrown up to us -- but it just was too much in the end.
> ...

**TELEKENEX DEFENDANTS' REPLY TO OPP. TO PMSJ - 6**
(Case No. 2:10-cv-00268-TSZ)
99188543v1 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

> Q   Can you tell me why paying Mr. -- paying Mammoth and eliminating the issue of being cut off wasn't something you considered by way of mitigation?
>
> A   I mean, we did consider it.  It was not the best course of action, given all the other choices and decisions that had to be made by me.

Gold Tr. at 192:12-194:5.

### D.   Straitshot's CEO Conceded that the Identity of Straitshot Customers Identities was not Confidential.

Among the claims Plaintiff brings against the Telekenex Defendants is a claim for "stealing" Straitshot's trade secrets, including the identity of Straitshot's customers.  Straitshot's CEO, Mr. Gold, however, conceded that the identity of Straitshot's customers was not confidential.  Gold Tr. at 438:3-17.  Plaintiff's efforts to recast or recharacterize Mr. Gold's testimony to salvage its claims against Telekenex should be disregarded by the Court.  Mr. Gold's testimony is not ambiguous.

## II.   ARGUMENT AND AUTHORITY

### A.   The Telekenex Defendants did not Violate the Lanham Act.

Plaintiff claims that the Telekenex Defendants falsely reported that Straitshot was going out of business, "was going under," and/or "was going out of business and would be unable to serve customers."  Each of these "reports" is inadmissible hearsay and should not be considered by the Court at all.

If the Court does consider the examples of "false" statements by Plaintiff, it is apparent they are not false, were not relied upon by Straitshot's former customers, and/or were not material to the customers.  Beginning with Plaintiff's first attempt to show a false statement, the report identified by Plaintiff is a third hand characterization by an absent witness (Terry Ward, an agent of U.S. Bearings, was reporting something that was said to her "customer," U.S. Bearings).  *See*, Ex. 9, Second Decl. of Tift.  Plaintiff has deposed Mr. MacPherson, President and COO of U.S. Bearings, the actual "customer" who was contacted by Prudell.  Mr. MacPherson testified that Prudell told him that Straitshot was having "some financial

**TELEKENEX DEFENDANTS' REPLY TO OPP. TO PMSJ - 7**
(Case No. 2:10-cv-00268-TSZ)
99188543v1 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

difficulties." However, this information did not motivate U.S. Bearings to leave Straitshot. Mr. MacPherson explained that he decided to switch service from Straitshot to Telekenex as a result of "seeing stuff on the Straitshot website that, you know, they were, in fact, trying to move their customers over to a -- to a third party. So I knew this was serious." MacPherson Tr. at 17:12-18; 40:9-13.[10] Mr. McPherson was never able to obtain reassurance from Mr. Gold (which might have salvaged this relationship), as Mr. Gold appeared to be "dodging him." *Id*., at 40:1-4. Mr. MacPherson's testimony shows that any statements made to him by a Telekenex Defendant (or Prudell) were neither false nor material to MacPherson—his inability to obtain reassurance from Straitshot and statements on Straitshot's website were the deciding factors.

Plaintiff's second attempt to show literally false statements attributable to Telekenex is equally flawed. The statement from Mr. Jacobs, Ex. 11 to Second Decl. of Tift, does not actually refer to any Telekenex Defendant at all ("are you guys in trouble as we have some other company calling us saying the circuits are being turned off because Straitshot is out of business.") To the extent that Plaintiff asks the Court to assume that the "company" referred to is Telekenex, such an assumption is legally insufficient and inadequate to withstand summary judgment.

Plaintiff's third example, from Terry Precht, on behalf of the Neurology Center, does not attribute any specifically false statement to Telekenex, and in any event, shows that Ms. Precht didn't believe what she was being told by "the sales guys." That is, while Ms. Precht states she didn't believe the statement attributed to the "sales guys" her real concern is that no one at Straitshot was answering her calls. (Ms. Precht "call[ed] all numbers at Straitshot for 3 days and could not get anyone to answer.") *See*, Ex. 12, Second Decl. of Tift. Nothing in this report that can be attributed to Telekenex, and even if that were not so, nothing attributed to the "sales guys" was material to Straitshot's customer, Ms. Precht.

---

[10] Excerpts of the MacPherson Transcript are attached as Exhibit 10 to the 2nd Decl. of Tift.

**TELEKENEX DEFENDANTS' REPLY TO OPP. TO PMSJ - 8**
(Case No. 2:10-cv-00268-TSZ)
99188543v1 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

The statements attributed to Prudell and Telekenex regarding Straitshot's "financial difficulties," its failure to pay its vendors, and the likelihood of being disconnected by the vendors are true—unflattering, but true. It is simply impossible to read Covad's <u>monthly</u> 48-hour disconnect notices in any other way. To the extent that Plaintiff implies that something further was communicated, Plaintiff fails to show that any customer who heard the statement was misled, let alone persuaded. Instead, Plaintiff's evidence is that the information was discounted, or not relied upon until the customer read communications from Straitshot <u>or</u> discovered it was impossible to contact Straitshot (buttressing the impression that the company was not operational). *See, Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *U.S. Healthcare, Inc. v. Blue Cross,* 898 F.2d 914, 922 (3d Cir. 1990) (holding that defendant is not liable under the Lanham Act unless the false statement was material because it would be likely to influence the purchasing decision); *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995).

Similarly, Plaintiff's proffer of a handful of customers who questioned the accuracy of statements about Straitshot's ability to continue to operate does not meet the requirement that a "substantial segment" of the public be misled. The few customers that Plaintiff identifies in its opposition to Telekenex's Motion are wholly insufficient to make a showing that the "public" was misled by the actions of a Telekenex Defendant. *See*, *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 208 (9th Cir. 1989).

Finally, it is clear that Plaintiff has no proof of injury that can be attributed to a statement made by a Telekenex Defendant. Mr. Gold's testimony is unambiguous. He has "no idea" what revenues were lost as a result of the actions of Telekenex—yet Plaintiff must have some "actual evidence of [] injury resulting from the deception" to support its claim for violation of the Lanham Act. *Harper House, Inc.*, 889 F.2d at 210.

In the absence of literal falsity and actual deception, summary judgment must be granted

**TELEKENEX DEFENDANTS' REPLY TO OPP. TO PMSJ - 9**
(Case No. 2:10-cv-00268-TSZ)
99188543v1 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

a Defendant accused of a violation of the Lanham Act. *Nat'l Prods. v. Gamber-Johnson*, 699 F. Supp. 2d 1232, 1239 (W.D. Wash., 2010). The District Court's analysis in *Nat'l Products*, applied here, show why this is so. Specifically, the Court contrasted statements that a product was "analyzed" and "investigated" that were untrue, and thus actionable, with non-actionable statements by the same company spokesman that were unflattering, but literally true. When that same analysis is employed here, the Telekenex Defendants must be awarded summary judgment of dismissal of the Lanham Act claims.

### B. The Telekenex Defendants did not Violate the Washington Consumer Protection Act.

To establish a violation of the Washington Consumer Protection Act, a plaintiff must establish: (i) an unfair or deceptive act or practice; (ii) occurring in trade or commerce; (iii) a public interest impact; (iv) an injury to plaintiff in his or her business or property; and (v) causation. *Hangman Ridge Riding Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531, 533 (1986). For the same reasons that Plaintiff's evidence fails to establish the Lanham Act's requirement of impact to a "substantial segment" of the public, Plaintiff's evidence fails to establish a violation of the Washington CPA.

Plaintiff argues that *Segal Co. (Eastern States), Inc. v. Amazon.com*, 280 F. Supp. 2d 1229, 1232 (W.D. Wa. 2003) does not apply to its case. However, Plaintiff's central premise highlights the flaw in the argument. That is, Plaintiff suggests that *Segal* concerned only a private contract between two parties and did not affect the general public. While Plaintiff argues that Telekenex's conduct affected "scores of customers," only a handful of deceptive statements are offered by Plaintiff (and they are not actually deceptive statements) and only nine customers (according to Plaintiff) were persuaded to leave Straitshot before it released all of its customers on February 12, 2009. Here, as in *Segal*, "plaintiffs' allegations do not allow the reasonable inference that defendant engaged in the sort of random widespread solicitation of consumers prohibited by these cases." *Id*.

**TELEKENEX DEFENDANTS' REPLY TO OPP. TO PMSJ - 10**
(Case No. 2:10-cv-00268-TSZ)
99188543v1 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

Furthermore, Straitshot fails to adduce any evidence that the actions of the Telekenex Defendants have the requisite public interest impact. The following determinations must be affirmatively established—but here are not: (1) the alleged acts must be committed in the course of defendant's business; (2) the acts must be part of a pattern or generalized course of conduct; (3) the acts must be repeated acts committed prior to the act involving the plaintiff; (4) there must be a real and substantial potential for repetition of the defendant's conduct after the act involving the plaintiff; and (5) if a single transaction, many consumers must be affected or likely affected by the complained-of behavior. *Hangman Ridge*, 105 Wn.2d at 790. Plaintiff's Opposition argues that Telekenex "pressured customers when there was no need to do so," but this argument simply ignores the plain, incontrovertible fact that both Covad and Mammoth were poised to disconnect Straitshot for prolonged nonpayment of moneys due them. It is clear that Plaintiff prefers to overlook the problems with its vendors and creditors, but they were real—and action against Straitshot imminent.

### C.  The Telekenex Defendants did not Unlawfully Solicit Straitshot Employees.

Plaintiff states it has not asserted a claim against Telekenex for "tortiously interfering with Straitshot's economic relationship with its engineers." *See*, Opp. at page 23. That being so, this claim is presumably not part of this case nor Plaintiff's presentation to the jury.

### III.  CONCLUSION

The Telekenex Defendants ask that the Court award summary judgment as to (1) Plaintiff's claim that the Telekenex Defendants violated the Lanham Act; (2) Plaintiff's claims that the Telekenex Defendants violated the Washington Consumer Protection Act; (3) Plaintiff's claim that the identity of their customers is a "trade secret;" and (4) Plaintiff's claim that the Telekenex Defendants tortiously solicited employees of Straitshot.

**TELEKENEX DEFENDANTS' REPLY TO OPP. TO PMSJ - 11**
(Case No. 2:10-cv-00268-TSZ)
99188543v1 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

| | | |
|---|---|---|
| 1 | Dated: December 17, 2010 | *s/ Leigh Ann Collings Tift* |
| 2 | | Leigh Ann Collings Tift, WSBA #11776 |
| | | LITTLER MENDELSON, P.C. |
| 3 | | One Union Square |
| | | 600 University Street, Suite 3200 |
| 4 | | Seattle, WA  98101.3122 |
| | | Phone:        206.623.3300 |
| 5 | | Fax:           206.447.6965 |
| | | E-Mail:       ltift@littler.com |

Attorneys for Defendants Telekenex, Inc., a Delaware Corporation, Joshua Summers and Julia Summers, husband and wife and the marital community composed thereof; Anthony Zabit and Jane Doe Zabit, husband and wife and the marital community composed thereof; and Brandon Chaney and Jane Doe Chaney, husband and wife, and the marital community composed thereof.

**TELEKENEX DEFENDANTS' REPLY TO OPP. TO PMSJ - 12**
(Case No. 2:10-cv-00268-TSZ)
99188543v1 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

# CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Jessica L. Goldman<br>Lawrence Carl Locker<br>Summit Law Group<br>315 Fifth Avenue South, Suite 1000<br>Seattle, WA  98104<br>Phone:  206.676.7000<br>Fax:  206.676.7001<br>Email:  jessicag@summitlaw.com<br>        larryl@summitlaw.com | A Chad Allred<br>Ellis Li & McKinstry<br>Market Place Tower<br>2025 First Avenue, Penthouse A<br>Seattle, WA  98121<br>Phone:  206.682.0565<br>Fax:  206.652.1052<br>Email:  callred@elmalw.com<br><br>**ATTORNEYS FOR MAMMOTH NETWORKS LLC** |
| Jonathan Massey, *pro hac vice*<br>Leonard Gail, *pro hac vice*<br>Massey & Gail LLP<br>50 East Washington Street. Suite 400<br>Chicago, IL  60602<br>Phone:  312.283.1590<br>Fax:  312-379-0467<br>Email:  jmassey@masseygail.com<br>        lgail@masseygail.com<br><br>**ATTORNEYS FOR PLAINTIFF** | Kenneth Joel Diamond<br>Winterbauer & Diamond PLLC<br>1200 5th Avenue, Suite 1700<br>Seattle, WA  98101-3147<br>Phone:  206.676.8440<br>Fax:  206.676.8441<br>Email:  ken@winterbauerdiamond.com<br><br>**ATTORNEYS FOR DEFENDANTS MARK AND JOY PRUDELL AND MARK AND NIKKI RADFORD** |

and I hereby certify that I have mailed by the United States Postal Service the foregoing document to the following non CM/ECF participants:

**N/A**

Dated:  December 17, 2010               *s/ Cheryl A. Phillips*
                                         Cheryl A. Phillips
                                         cphillips@littler.com

                                         **LITTLER MENDELSON, P.C.**

TELEKENEX DEFENDANTS' REPLY TO OPP. TO PMSJ - 13
(Case No. 2:10-cv-00268-TSZ)
99188543v1 066331.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300