THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STRAIGHTSHOT COMMUNICATIONS, INC., a Washington Corporation, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>TELEKENEX, INC., a Delaware Corp., et al.<br><br>Defendants. | No.  C10-268Z<br><br>ORDER |

THIS MATTER comes before the Court on four motions for summary judgment.  Three groups of defendants have moved for summary judgment on the claims brought by plaintiffs Straightshot Communications, Inc. ("SCI") and Straightshot RC, LLC ("SRC").  See Mot., docket no. 150 (filed by defendants Telekenex, Brandon Chaney, Anthony Zabit, and Joshua Summers, collectively the "Telekenex Defendants"); Mot., docket no. 152 (filed by defendants Mark Prudell and Mark Radford); and Mot., docket no. 161 (filed by defendants Mammoth Networks, LLC and Brian Worthen, collectively "Mammoth").  The remaining motion, docket

ORDER - 1

no. 157, is brought by counterclaim defendants SCI and SRC, and third party defendants Andrew Gold, Stephen Perry, and Claritage Strategy Fund, L.P. ("Claritage") (collectively the "Straightshot Parties"), and seeks the dismissal of Mammoth's counterclaims and third party claims.  Having reviewed the papers filed in support of, and opposition to, the various motions, the Court now enters the following Order.

**DISCUSSION**

A.   <u>**Standard of Review**</u>

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).  Material facts are those which might affect the outcome of the suit under governing law.  <u>Id.</u> at 248. The Court must draw all reasonable inferences in favor of the non-moving party.  <u>See</u> <u>F.D.I.C. v. O'Melveny & Meyers</u>, 969 F.2d 744, 747 (9th Cir.1992), <u>rev'd on other grounds</u>, 512 U.S. 79 (1994).  The nonmoving party, however, must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

B.   <u>**The Telekenex Defendants' Motion for Partial Summary Judgment, Docket no. 150**</u>

The Telekenex Defendants move for partial summary judgment on plaintiffs' claims for: (a) intentional interference with contractual relations; (b) violation of the

Lanham Act; and (c) violation of the Consumer Protection Act ("CPA"). The Telekenex Defendants also move for summary judgment on the issue of whether the identity of SCI's customers can constitute a "trade secret" for purposes of plaintiffs' misappropriation of trade secrets claim. The Court DENIES the Telekenex Defendants' motion. There are genuine disputes of material fact that preclude summary judgment.

C. **Prudell and Radford's Motion for Summary Judgment, Docket no. 152**

Prudell and Radford move for summary judgment on plaintiffs' claims for: (a) breach of contract; (b) breach of the duty of loyalty; (c) intentional interference with contractual relations; (d) misappropriation of trade secrets; (e) violation of the Lanham Act; and (f) violation of the CPA. The Court DENIES Prudell and Radford's motion. There are genuine disputes of material fact that preclude summary judgment.[1] See Thola v. Henschell, 140 Wn. App. 70, 78, 164 P.3d 524 (2007).

D. **The Straightshot Parties' Motion for Summary Judgment, Docket no. 157**

The Straightshot Parties move for summary judgment on Mammoth's counterclaims/third party claims for: (a) fraudulent transfer; (b); successor liability; and (c) unlawful corporate distributions.[2] At issue in Mammoth's claims is an

---

[1] Plaintiffs' trade secret claim does not supersede their other claims against Prudell and Radford, which do not arise out of the taking of SCI's trade secrets. RCW 19.108.900(2)(a); Boeing Co. v. Sierracin Corp., 108 Wn.2d 38, 48, 738 P.2d 665 (1987); Pac. Aerospace & Elec., Inc. v. Taylor, 295 F. Supp. 2d 1205, 1212 (E.D. Wash. 2003); Thola, 140 Wn. App. at 83.

[2] The Straightshot Parties also move for summary judgment on Mammoth's claims for Breach of Contract (Mammoth's First Cause of Action) and Unjust Enrichment

ORDER - 3

agreement between SCI and Claritage, entered into prior to the events giving rise to this lawsuit, and pursuant to which Claritage agreed to loan SCI up to $2,300,000. Perry Decl. ¶ 3, docket no. 160.  In exchange, SCI granted Claritage a security interest (the "Security Agreement") in all of SCI's tangible and intangible assets.  Id. at Ex. 3. On April 18, 2008, Claritage perfected its security interest by filing a UCC-1 financing statement.  Id. at Ex. 4.  Over the course of the next several months, Claritage loaned SCI millions of dollars pursuant to the Security Agreement.  Id. at Exs. 5-8.  When SCI failed to meet its obligations to repay the loans, Claritage sent a demand for payment, and notified SCI that failure to comply with its obligations under the parties' agreements could result in Claritage foreclosing on its security interest.  Id. at Ex. 9. In June 2009, Claritage assigned its rights under the Security Agreement to Claritage's wholly owned subsidiary, SRC.  Id. at Ex. 13.  SRC foreclosed on its security interest and acquired all of SCI's tangible and intangible assets that were subject to the Security Agreement in July 2009.  Id. at Ex. 14.  Mammoth now brings a number of claims against SCI, SRC, Claritage, Gold, and Perry arising out of the foreclosure that took place in July 2009.

---

(Mammoth's Second Cause of Action) against Gold, Perry, Claritage, and SRC.  Mot. at 12, docket no. 157.  Mammoth has filed no opposition as to these parties and these claims, which the Court construes as an admission that the motion has merit.  See Local Rule CR 7(b)(2).  Moreover, the contract was solely between Mammoth and SCI. Worthen Decl. Ex. A at 1, docket no. 162.  Accordingly, the Court GRANTS the Straightshot Parties' motion in part, and DISMISSES Mammoth's claims for breach of contract and unjust enrichment against Gold, Perry, Claritage, and SRC.

ORDER - 4

The Court STRIKES, in part, and DEFERS, in part, the Straightshot Parties' motion.  The Court STRIKES in part, as moot the Straightshot Parties' motion on Mammoth's claims for fraudulent transfer and successor liability.  The parties agree that the security agreement between SCI and Claritage/SRC did not create an interest in after-acquired commercial tort claims.  See RCW 62A.9A-204(b)(2).  Consequently, Claritage/SRC did not acquire a security interest in SCI's commercial tort claims,[3] which remain with SCI.[4]  The lien foreclosure that took place in July 2009 transferred only those assets of SCI subject to a perfected security interest.  As such, the foreclosure was not fraudulent, and the Court STRIKES as moot Mammoth's claims for fraudulent transfer and successor liability (which Mammoth argues is predicated exclusively on SCI's alleged fraudulent transfer of assets).

The Court DEFERS ruling on the remainder of the Straightshot Parties' motion, relating to Mammoth's claim for unlawful corporate distributions in violation of RCW 23B.14.070, and DIRECTS Mammoth to submit additional briefing on the following issues:

    (a)    Whether the alleged "unlawful distribution" occurred in March 2008 when SCI entered into the security agreement with Claritage, in July 2009 when SRC foreclosed on the security interest, or on some other date;

---

[3] As the issue is not fully briefed by the parties, the Court declines at this juncture to address which of SCI's claims, if any, meet the definition of "commercial tort claims" under Washington's version of the Uniform Commercial Code.

[4] The Court's Order adding SRC as a party had no effect on SCI's status as a plaintiff in this lawsuit.  Minute Order, docket no. 81.  SCI also remains a plaintiff for all commercial tort claims brought against the defendants.

ORDER - 5

(b)   Identifying the evidence in the record that demonstrates that SCI was incapable of meeting its current obligations as they came due on the date the unlawful distribution occurred, or that SCI's total assets were less than the sum of its total liabilities on the date the unlawful distribution occurred; and

(c)   Identifying the evidence in the record that demonstrates that SCI's directors failed to act in conformance with their statutory duties in approving the distribution.

See RCW 23B.08.310(1); 23B.06.400(2); 23B.08.300(1)(a)-(c).

In preparing its response, Mammoth should address the significance or relevance of the following authorities:  RCW 23B.06.400(5); RCW 23B.06.400(4)(b)(ii); and MODEL BUS. CORP. ACT § 6.40 cmts. 8(b), (c) (2005). Mammoth's response shall be limited to five (5) pages and shall be filed no later than March 11, 2011.  The Straightshot Parties shall not file a response unless one is requested by the Court.

### E.   Mammoth's Motion for Summary Judgment, docket no. 161

Mammoth moves for summary judgment on plaintiffs' claims for: (a) intentional interference with contractual relations; (b) misappropriation of trade secrets; (c) violation of the CPA; (d) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (e) violation of the Washington Criminal Profiteering Act ("WCPA"); (f) promissory estoppel; (g) breach of contract; and (h) intentional interference with a business expectancy.  Mammoth also moves affirmatively for summary judgment on its breach of contract counterclaim against SCI.  The Court GRANTS in part and DENIES in part Mammoth's motion for summary judgment as follows.

1. <u>The Court GRANTS in part Mammoth's motion as to Plaintiffs' CPA Claim and Promissory Estoppel Claim</u>

   a. <u>CPA (Plaintiffs' Seventh Cause of Action)</u>

To prevail on their CPA claim, plaintiffs bear the burden of proving (1) an unfair or deceptive act or practice by Mammoth; (2) occurring in trade or commerce; (3) that affects the public interest; (4) which causes; (5) injury to plaintiffs' business or property. <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wn.2d 778, 784, 719 P.2d 531 (1986). The "unfair or deceptive act or practice" element of a CPA claim may be established by showing that the defendant's conduct has the capacity to deceive a substantial portion of the public. <u>Id.</u> at 785.

Plaintiffs submitted no evidence or argument in opposition to Mammoth's motion for summary judgment on the CPA claim, electing instead to incorporate by reference the argument and evidence they provided in connection with their opposition to the Telekenex Defendants' motion for summary judgment. <u>See</u> Resp. at 21, docket no. 178 ("Plaintiff has addressed [the CPA] argument in its Opposition to the Telekenex Defendants' Motion For Partial Summary Judgment and hereby incorporates that response by reference here."). In plaintiffs' opposition to the Telekenex Defendants' motion for summary judgment, however, plaintiffs relied exclusively on the alleged solicitation of SCI's customers by Prudell, Radford, and Telekenex, to support their contention that the defendants' conduct had the capacity to deceive a substantial portion of the public. Resp. at 20, docket no. 181. The conduct of Prudell, Radford, and Telekenex is not, however, imputable to Mammoth. <u>Segal</u>

Co. v. Amazon.com, 280 F. Supp. 2d 1229 ,1232 (W.D. Wash. 2003) ("In order to state a claim for relief under the CPA, plaintiffs must allege that acts by defendant were unfair or deceptive."). Plaintiffs cite no evidence from which the Court can infer that any actions by Mammoth had the capacity to deceive a substantial portion of the public.[5] Accordingly, plaintiffs have failed to meet their burden, and the Court GRANTS Mammoth's motion for summary judgment on plaintiffs' CPA claim.

      b.     Promissory Estoppel (Plaintiffs' Tenth Cause of Action)

To establish a claim for promissory estoppel, a plaintiff must prove (1) the existence of a promise; (2) that the promisor should reasonable expect would cause the promisee to change positions; (3) that actually causes the promisee to change positions; (4) justifiable reliance on the promise; and (5) injustice can only be avoided by enforcement of the promise. Flower v. T.R.A. Indus., Inc., 127 Wn. App. 13, 31, 111 P.3d 1192 (2005). However, promissory estoppel implies a contract from a unilateral, otherwise unenforceable promise "and is wholly inapplicable where [an] actual contract exists." Klinke v. Famous Recipe Fried Chicken, Inc., 94 Wn.2d 255, 261 n.4, 616 P.2d 644 (1980) (citing Sacred Heart Farmers Coop. Elevator v. Johnson, 305 Minn. 324, 232 N.W.2d 921, 923 n.1 (1975)).

---

[5] Plaintiffs also rely solely on evidence relating to actions taken by Radford, Prudell, and Telekenex to support the public interest element of their CPA claim against Mammoth. Resp. at 21-22, docket no. 181.

ORDER - 8

In this case, it is undisputed that SCI and Mammoth entered into a written contract for the provision of Mammoth's services that provided, in relevant part, as follows:

> Customer shall be invoiced via postal mail each month in advance of Service, at Customer preference, for all amounts due and owing to Mammoth.  Payments are due within thirty (30) days of invoice issuance.
>
> . . .
>
> The terms, representations, and warranties of this Agreement may only be waived by a written instrument executed by the Party waiving compliance.  Except as otherwise provided herein, neither party's failure, at any time, to enforce any right or remedy available to it under this Agreement shall be construed as a continuing waiver of such right or a waiver of any other provision hereunder.

Worthen Decl., Ex. A at ¶¶ 3, docket no. 162.  Despite the language in the contract requiring payment of amounts due and owing within thirty days of invoicing, plaintiffs contend that at a later date, Mammoth agreed to enter into an oral agreement (the "deferral agreement") described by SCI's director and officer Andrew Gold as follows:

> We agreed [that] $120,000 in [Mammoth] receivables from 2008 [would] be financed over the 12 months – as I recall, to be financed over the 12 months of 2009, and then to be repaid over either six or 12 months in 2010.

Goldman Decl., Ex. 3 (docket no. 186-3 at 13-14).  The oral agreement described by Mr. Gold is directly contrary to the written terms of the parties' services contract.  It calls for payment of amounts due and owing in 2008, amounts that would otherwise be due in thirty days, more than twelve months late.  Although the absence of a signed

ORDER - 9

writing is generally not dispositive of a claim for promissory estoppel, the existence of a contrary written agreement is dispositive of a claim for promissory estoppel. Klinke, 94 Wn.2d at 261 n.4. Accordingly, plaintiffs' promissory estoppel claim, which is based on Mammoth's alleged oral agreement to defer payments, is barred by the existence and terms of the express written contract between the parties.

Plaintiffs' promissory estoppel claim is also barred because the evidence in the record indicates that Mammoth and SCI never reached agreement on the terms of the deferral agreement. It is undisputed that the deferral agreement was conditioned on SCI successfully negotiating a deferral agreement with Covad Communications. The record is devoid of any evidence that suggests that SCI and Covad ever finalized their agreement, and as such, Mammoth could not have promised to enter into the deferral agreement. The evidence submitted by plaintiffs suggests only that the parties were in active negotiation over a deferral agreement. See Martin Decl., docket no. 18-11 at 93-95 (email between general counsel for Covad Communications and Straightshot conveying unexecuted drafts of a proposed deferral agreement); id., docket no. 18-11 at 97-104 (miscellaneous email communications between SCI and Mammoth regarding negotiation of a potential deferral agreement); id., docket no. 27-23 at 21 (defendant Worthen's telephone records describing calls with SCI representatives regarding Covad and deferral agreement); Goldman Decl., Ex. 3, docket no. 186-3 at 13-14 (describing potential terms of SCI's deferral agreements with Covad and Mammoth); id. Ex. 16, docket no. 186-6 at 67-68 (noting that the parties had an "intent

ORDER - 10

to formalize" the proposed deferral agreement); id. Ex. 22, docket no. 186-8 at 191 (noting that SCI informed Worthen that SCI had reached an agreement in principle with Covad, and that Mammoth would like to see a copy of that agreement). The Court concludes as a matter of law that Mammoth never promised to enter into the deferral agreement because the parties never agreed to the terms of the deferral agreement. Accordingly, the Court GRANTS Mammoth's motion for summary judgment on plaintiffs' claim for promissory estoppel.

2. <u>The Court DENIES the Remainder of Mammoth's Motion</u>

The Court DENIES in part Mammoth's motion on plaintiffs' remaining claims and Mammoth's affirmative motion for summary judgment on its claim for breach of contract. There are genuine issues of material fact in dispute that preclude summary judgment.

**CONCLUSION**

For the foregoing reasons, the Court:

(1) DENIES the Telekenex Defendants' motion for partial summary judgment, docket no. 150;

(2) DENIES Prudell and Radford's motion for summary judgment, docket no. 152;

(3) STRIKES, in part, the Straightshot Parties' motion for summary judgment as to Mammoth's claims for fraudulent transfer and successor liability, as moot, GRANTS in part as to Mammoth's claims for breach of contract and unjust

enrichment against Gold, Perry, Claritage and SRC, and DEFERS in part as to Mammoth's claim for unlawful distribution in violation of RCW 23B.14.070, docket no. 157; and

(4) GRANTS, in part, Mammoth's motion for summary judgment as to plaintiffs' CPA and promissory estoppel claims, and DENIES as to the remainder of the motion, docket no. 161.

IT IS SO ORDERED.

DATED this 28th day of February, 2011.

*[signature]*

Thomas S. Zilly
United States District Judge