THE HONORABLE THOMAS S. ZILLY

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| STRAITSHOT RC, LLC, a Washington corporation,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>TELEKENEX, INC., a Delaware corporation; et al.,<br><br>　　　　　　　Defendants. | CASE NO. C10-268 TSZ<br><br>**PLAINTIFF AND THIRD-PARTY DEFENDANTS' OPPOSITION TO MAMMOTH'S MOTION FOR RECONSIDERATION OF LIMITED ISSUE**<br><br>**NOTE ON MOTION CALENDAR:**<br>**April 8, 2011** |
| TELEKENEX, INC., a Delaware Corporation,<br><br>　　　　　　　Third-Party Plaintiff,<br><br>　v.<br><br>STRAITSHOT RC, LLC, a Delaware limited liability company; et al.,<br><br>　　　　　　　Third-Party Defendants. | |
| MAMMOTH NETWORKS, LLC, a Wyoming limited liability company,<br><br>　　　　　　　Third-Party Plaintiff,<br><br>　v.<br><br>CLARITAGE STRATEGY FUND, L.P., a Cayman Islands limited partnership, et al.,<br><br>　　　　　　　Third-Party Defendants. | |

PLAINTIFF AND THIRD-PARTY DEFENDANTS' OPPOSITION TO MAMMOTH'S MOTION FOR RECONSIDERATION OF LIMITED ISSUE
CASE NO. C10-268 TSZ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Pursuant to the Court's Minute Order,[1] Plaintiff Straitshot RC, LLC and Third-Party Defendants Straitshot Communications, Inc. ("SCI"), Claritage Strategy Fund, L.P. ("Strategy Fund"), Andrew Gold, and Stephen Perry (collectively the "Straitshot Parties")[2] oppose Mammoth's Motion for Reconsideration of Limited Issue[3] because Defendant Mammoth Networks, LLC ("Mammoth") improperly has raised a new argument, improperly has repeated an argument, and both arguments fail on the merits.

## I.     ARGUMENT

### A.     Reconsideration Standard.

Pursuant to Local CR 7(h)(1), "[m]otions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." Mammoth has failed to satisfy this high burden.

#### 1.     Mammoth May Not Raise A New Argument.

The first argument Mammoth makes now is new and completely at odds with the position it originally took in opposing the Straitshot Parties' Motion for Summary Judgment. Because Mammoth neither acknowledges that it is raising a new argument nor justifies its failure to raise it in the first place, Mammoth's Motion for Reconsideration should be denied. *Pimentel v. Dreyfus*, No. C11-119 MJP, 2011 WL 1085886, * 2 (W.D. Wash. Mar. 22, 2011) ("Defendant offers no new fact or legal authority as to why this argument was not presented during prior briefing and the Court declines to reconsider its decision based on an issue presented for the first time on a motion for reconsideration."); *Proshipline, Inc. v. Aspen Infrastructures, LTD.*, No. C07-5660 BHS, 2011 WL 840977, *1 n.1 (W.D. Wash. Mar. 8, 2011) ("A new argument is not generally permissible on reconsideration."); *Castello v. City of Seattle*, No. C10-1457 MJP, 2011 WL 219671, *4 (W.D. Wash.

---

[1] ECF No. 219.

[2] Straitshot Communications, Inc. and Straitshot RC have been spelled in various ways in these proceedings. The correct spelling is "Straitshot."

[3] ECF No. 217.

PLAINTIFF AND THIRD-PARTY DEFENDANTS'
OPPOSITION TO MAMMOTH'S MOTION FOR
RECONSIDERATION OF LIMITED ISSUE - 1
CASE NO. C10-268 TSZ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Jan. 24. 2011) ("Plaintiff's motion for reconsideration raises an entirely new issue … not even mentioned in passing in his original responsive brief …. Plaintiff makes no argument that this issue … could not have been raised earlier (in fact, Plaintiff makes no mention of the fact that he is asking the Court to reconsider its ruling in light of an entirely new argument). And, because this is an entirely new argument, there can be no question of 'manifest error in the prior ruling;' the Court cannot have ruled in error on an argument never before raised.").

### a. Mammoth's initial argument.

In their Motion for Summary Judgment, the Straitshot Parties argued that the wholly-owned subsidiary of SCI's secured creditor Strategy Fund had foreclosed on "all of the collateral identified in Strategy Fund's UCC-1 Financing Statement,"[4] which included all causes of action belonging to SCI.[5] The Straitshot Parties did not distinguish between secured "tort" claims and secured "non-tort claims" and argued that the foreclosure of a security interest is not a "transfer" under the Uniform Fraudulent Transfer Act ("UFTA") and, hence, could not have been a *fraudulent* transfer.[6]

Mammoth responded that "[t]his argument [is] flawed" for one reason.[7] According to Mammoth, "[t]he flaw is that Strategy Fund and Straitshot RC do not have, and never had, an interest in Straitshot's commercial tort claims against Mammoth and Telekenex (or anyone else)."[8] Mammoth then argued that SCI's after-acquired commercial tort claims could not have been subject to the previously filed UCC-1.[9] Based on this argument, Mammoth concluded as follows:

> Thus, when Straitshot sought to transfer all its assets – including all its claims – to Strategy Fund, very few of the claims were subject to a security interest and, thus, "encumbered by a valid lien." Of Straitshot's 14 causes of action in this case, only two – its breach of contract claims – were arguably subject to Strategy Fund's Security Agreement. The remaining claims are commercial tort claims and, thus, beyond the

---

[4] ECF No. 157 at 5:7-11, 5:17-19.

[5] *Id.* at 2:11-12, 3:13-18.

[6] *Id.* § II.B.

[7] ECF No. 180 at 5:12.

[8] *Id.* at 5:13-14 (emphasis original).

[9] *Id.* at 5:14-6:2.

PLAINTIFF AND THIRD-PARTY DEFENDANTS'
OPPOSITION TO MAMMOTH'S MOTION FOR
RECONSIDERATION OF LIMITED ISSUE - 2
CASE NO. C10-268 TSZ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

<u>reach of the Security Agreement.  Therefore, in May 2009, Straitshot did make a "transfer" of an "asset" (commercial tort claims) as those terms are used in the UFTA, RCW 19.40.011.</u>[10]

So, Mammoth argued that because Strategy Fund's Security Agreement could not, as a matter of law, have included the commercial tort claims, SCI had "transferred" the unsecured *commercial tort claims* to Strategy Fund, subjecting those transfers to a claim under the UFTA.  Mammoth did not challenge the Straitshot Parties' argument that SCI's *other* claims – the "very few" *non-tort* claims[11] – *were* subject to the Security Agreement and so *not* subject to the UFTA.

Consequently, in their summary judgment reply brief, the Straitshot Parties explained that Mammoth:

> [D]oes not disagree with the basic rule that the foreclosure of a security interest *cannot* give rise to liability under the Uniform Fraudulent Transfer Act ….  Instead, Mammoth contends that [Strategy Fund] did not assume ownership of [SCI's] commercial tort causes of action because those claims did not accrue until after Strategy Fund filed its security interest….  If Mammoth is correct, it follows that: (i) SCI's commercial tort claims still reside with SCI – and thus are not subject to the [UFTA], and <u>(ii) SCI's other claims were foreclosed under the security agreement – and thus also are not subject to the UFTA.</u>[12]

Based on the summary judgment briefing – and not surprisingly – the Court correctly ruled as follows:

> The Court STRIKES in part, as moot the Straightshot Parties' motion on Mammoth's claims for fraudulent transfer and successor liability.  The parties agree that the security agreement between SCI and Claritage/SRC did not create an interest in after-acquired commercial tort claims….  Consequently, Claritage/SRC did not acquire a security interest in SCI's commercial tort claims, which remain with SCI.  <u>The lien foreclosure that took place in July 2009 transferred only those assets of SCI subject to a perfected security interest.</u>  As such, the foreclosure was not fraudulent, and the Court STRIKES as moot Mammoth's claims for fraudulent transfer and successor liability (which Mammoth argues is predicated exclusively on SCI's alleged fraudulent transfer of assets).[13]

---

[10] *Id.* at 6:3-9 (nn. omitted).

[11] Whether the non-torts claims are or are not "very few" is an issue that the Court did not decide, ECF No. 214 at 8 fn.3, and is beside the point at this juncture.

[12] ECF No. 190 at 1:1-7, 1:19-22 (emphasis added).

[13] ECF No. 214 at 5:2-13 (nns. omitted; emphasis added).

PLAINTIFF AND THIRD-PARTY DEFENDANTS'
OPPOSITION TO MAMMOTH'S MOTION FOR
RECONSIDERATION OF LIMITED ISSUE - 3
CASE NO. C10-268 TSZ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

### b.     Mammoth's new argument.

While Mammoth does not take issue with the Court's ruling that the commercial tort claims were never transferred to Strategy Fund, were always retained by SCI, and thus are not subject to the UFTA or a claim for successor liability, Mammoth argues for the first time that the non-tort claims which properly – and undisputedly – were subject to the Security Agreement come within the UFTA pursuant to RCW 19.40.081(e)(2).[14]  That provision states:  "A transfer is not voidable under RCW 19.40.041(a)(2) or 19.40.051 if the transfer results from … enforcement of a security interest in compliance with Article 9A of Title 62A RCW."  In its pitch for reconsideration, Mammoth contends that under this provision:

> [A] transfer that results from enforcement of a security interest is voidable under RCW 19.40.041(a)(1) – i.e., where there is "actual intent to hinder, delay, or defraud any creditor of the debtor."  Mammoth noted this authority in its prior briefing, but the point may have been lost due to the volume of issues before the Court.[15]

The "prior briefing" to which Mammoth cites is footnote 22 of its initial opposition brief which states simply:  "See also RCW 19.40.081(e)(2) (enforcement of security interest a valid defense only under RCW 19.40.041(a)(2) and .051)."[16]  Footnote 22 annotated this sentence in Mammoth's opposition brief:  "Therefore, in May 2009, Straitshot did make a 'transfer' of an 'asset' (commercial tort claims) as those terms are used in the UFTA, RCW 19.40.011."[17]

Thus, the reason why Mammoth's current argument regarding *non-tort claims* "may have been lost" by the Court and by the Straitshot Parties is because Mammoth never made it.  Moreover, Mammoth does not so much as address – nor can it establish – that this new argument is based on new law as Local CR 7(h)(1) requires.

---

[14] ECF No. 217 at 2:18-20 & n. 2.

[15] *Id.* at 3:1-5 (citing RCW 19.40.081(e)(2) & RCW 19.40.041(a)(1)) (nn. omitted).

[16] ECF No. 180 n. 22.

[17] *Id.* at 6:7-9 (emphasis added).

PLAINTIFF AND THIRD-PARTY DEFENDANTS'
OPPOSITION TO MAMMOTH'S MOTION FOR
RECONSIDERATION OF LIMITED ISSUE - 4
CASE NO. C10-268 TSZ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**2.      Mammoth May Not Rehash an Old Argument.**

The second argument Mammoth makes now is wholly duplicative of an argument it presented in opposition to the summary judgment motion. Over five pages in its summary judgment opposition brief, Mammoth argued that the jury should decide if a "transfer" was fraudulent.[18] Mammoth now again presses the Court to rule that "there is a question for the jury as to whether the assets were transferred with intent to hinder, delay, or defraud."[19] Mammoth readily acknowledges that this was "a central argument of Mammoth's summary judgment response."[20]

This argument may not be raised again under Local CR 7(h)(1) and Mammoth is wrong to burden the Court and the parties with a request for a second bite of the apple. *Russell v. Comcast Corp.*, No. C08-309Z, 2009 WL 995720, *1 (W.D. Wash. Apr. 13, 2009) ("Plaintiff's motion [for reconsideration] is denied because, for the most part it simply rehashes arguments already made and rejected by the Court"), *aff'd*, 381 Fed. Appx. 657 (9th Cir. 2010); *Pimentel*, 2011 WL 1085886, *2 ("The Court finds Defendant's argument repeats those already presented to the Court. A motion for reconsideration should not be used to ask the court to rethink what the court has already thought through.") (quotation marks, citation & brackets omitted).

Mammoth's Motion for Reconsideration should be denied for failure to satisfy Local CR 7(h)(1).

**B.      Mammoth's Arguments Fail on the Merits.**

Mammoth's Motion for Reconsideration also fails because Mammoth did not – and cannot – establish that this Court made a manifest error in striking the UFTA and successor liability claims.

Mammoth's argument in its Motion for Reconsideration goes as follows: The UFTA prohibits avoidance of "a transfer"[21] under three provisions "if the transfer results from …

---

[18] *Id.* at 6:10-11:5.

[19] ECF No. 217 at 3:6-12.

[20] *Id.* at 6.

[21] *Id.* at 2:17-3:5 (emphasis added).

PLAINTIFF AND THIRD-PARTY DEFENDANTS'
OPPOSITION TO MAMMOTH'S MOTION FOR
RECONSIDERATION OF LIMITED ISSUE - 5
CASE NO. C10-268 TSZ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

[e]nforcement of a security interest in compliance with Article 9A,"[22] but a fourth provision allows the voiding of such a transfer where there is intent to harm a creditor.[23]  Presumably, Mammoth now takes the position that the foreclosure of Strategy Fund's security interest in SCI's *non-tort* claims may be voided.

Mammoth is wrong as a matter of law.  As Mammoth conceded in its initial opposition brief, SCI's *non-tort* claims "were subject to a security interest and, thus, encumbered by <u>a valid lien</u>."[24]  Pursuant to the UFTA, a valid lien "includes a security interest created by agreement."[25]  There is no dispute that the UCC-1 security agreement entered into by Strategy Fund and SCI months before *any* of the conduct at issue in this lawsuit is a "security interest created by agreement."  The law of Washington is plain that "if the debtor transfers assets encumbered by security interests, <u>that transfer is beyond the reach of the [UFTA] statute</u>."  *Eagle Pac. Ins. Co. v. Christensen Motor Yacht Corp.*, 135 Wn.2d 894, 912, 959 P.2d 1052 (1998) (emphasis added).[26]

---

[22] RCW 19.40.081(e)(2).

[23] ECF No. 217 at 3:1-3.

[24] ECF No. 180 at 6:3-5 (quotation marks omitted; emphasis added).

[25] RCW 19.40.011(8); *see also* ECF No. 157 at 7:10-8:6.

[26] *See also Nara Bank, N.A. v. Hana Fin., Inc.*, No. B148292, 2003 WL 1091035, *7 (Cal. Ct. App. Mar. 13, 2003) ("[B]efore the UFTA may even be applied to a transaction, the creditor must establish that an 'asset' was 'transferred' within the specific definitions of the UFTA…. Property encumbered by a valid lie is not an asset for purposes of fraudulent transfer law to the extent of the encumbrance."); *Dietter v. Dietter*, 737 A.2d 926, 935 (Or. Ct. App. 1999) ("[W]e conclude, as a matter of law, that the assets the trustee in bankruptcy transferred to Great Country Bank, which were encumbered by a valid lien, were not 'assets' within the meaning of the Fraudulent Transfer Act and, therefore, this transfer is not subject to the Fraudulent Transfer Act."); *White v. Babcock*, No. 14-94-00468-CV, 1995 WL 502942, *3 (Tex. App. Aug. 24, 1995) ("The Uniform Fraudulent Transfer Act does not cover property to the extent it is encumbered by a valid lien.  Tex. Bus. & Com. Code Ann. § 24.002(2)(A).  The assets appellants claim were fraudulently transferred were encumbered by BankSouth's valid lien. Even if appellants were to have received Gates' assets, the assets still would have been encumbered by the BankSouth lien; therefore, Gates had no 'assets' to fraudulently transfer."); *Baker & Sons Equip.. Co. v. GSO Equip. Leasing, Inc.*, 622 N.E.2d 1113, 1119 (Ohio Ct. App. 1993 ("[S]ince the equipment and inventory at issue were encumbered by valid liens, they are not assets; not being assets, they do not fall within the definition of transfers governed by the Fraudulent Transfers Act and, to that extent, are 'exempt' from the provisions thereof."); *Kellstrom Bros. Painting v. Carriage Works, Inc.*, 844 P.2d 221, 279 (Or. Ct. App. 1992) ("We agree with defendants that the definitions show that UFTA does not apply here.  Before a creditor is entitled to relief under UFTA, there must have been a 'transfer' by the debtor, and there was no transfer by Carriage Works within the meaning of the act.  ORS 95.200(12) provides that a 'transfer' means 'disposing of … an asset ….'  An 'asset' does *not* include a debtor's property 'to the extent that it is encumbered by a valid lien ….'  ORS 95.200(2)(a).  A lien includes a 'security interest created by agreement.'  ORS 95.200(8).  It is thus undisputed that Bank held a valid security interest that encumbered all of the assets of Carriage Works.  Neither was there a transfer from the debtor to Rowlett.  Bank transferred the collateral to Rowlett and another after the sale, at which

PLAINTIFF AND THIRD-PARTY DEFENDANTS'
OPPOSITION TO MAMMOTH'S MOTION FOR
RECONSIDERATION OF LIMITED ISSUE - 6
CASE NO. C10-268 TSZ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Consequently, the involuntary conveyance of SCI's secured *non-tort* claims, which occurred by operation of law, was not a "transfer" subjecting the conveyance to *any* of the provisions of the UFTA.  *See In re Wintz Cos.*, 230 B.R. 848, 860 (B.A.P. 8th Cir. 1999) ("A threshold determination to be made under the [Minnesota Fraudulent Transfer Act] … is whether 'transfers' occurred at all.  This inquiry is, in turn, dependent upon another, that is, whether any of the items purportedly 'transferred' constitute 'assets.' … Where the term 'asset' does not apply to property which has been conveyed, neither then does the MFTA.").

RCW 19.40.081(e)(2), the prohibition on avoidance which Mammoth references and then distinguishes, has no relevance here – as applied or as distinguished.  Again, it states that "[a] transfer is not voidable under RCW 19.40.041(a)(2) or 19.40.051 if the transfer results from … [e]nforcement of a security interest in compliance with Article 9A of Title 62A RCW [governing secured transactions]."[27]  As stated, the foreclosure of the security interest in SCI's non-tort claims was not a "transfer" under the UFTA and thus there can be no issue as to whether a transfer may or may not be voided here.  Moreover, this provision addresses "transfers" that occur by virtue of a sale <u>by the secured creditor</u> of the secured assets <u>to a third party</u> or "transferee" to enforce the secured creditor's perfected lien.

> Subsection (e)(2) <u>protects a transferee</u> who acquires a debtor's interest in an asset <u>as a result of the enforcement of a secured creditor's rights</u> pursuant to and in compliance with the provisions of Part 5 of Article 9 of the Uniform Commercial Code. *Cf. Calaiaro v. Pittsburgh Nat'l Bank* (*In re Ewing*), 33 B R. 288, 9 C.B.C.2d 526, CCH B.L.R. ¶ 69,460 (Bk.W.D.Pa. 1983) (sale of pledged stock held subject to avoidance as fraudulent transfer in § 548 of the Bankruptcy Code), *rev'd*, 36 B.R. 476 (W.D.Pa. 1984) (transfer held not voidable because deemed to have occurred more than one year before bankruptcy petition filed).[28]

The referenced *Calaiaro* case concerned application of the Bankruptcy Code to a sale, by the secured creditor to a third party, of stocks pledged as security by the defaulting debtor.

---

time they were the high bidders.  ORS 95.240 does not provide a means by which plaintiff could void the transfer from Carriage Works.").

[27] RCW 19.40.081(e)(2) (emphasis added).

[28] Unif. Fraudulent Transfer Act (ULA) § 8, Cmt. (5).

PLAINTIFF AND THIRD-PARTY DEFENDANTS'
OPPOSITION TO MAMMOTH'S MOTION FOR
RECONSIDERATION OF LIMITED ISSUE - 7
CASE NO. C10-268 TSZ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Because the secured creditor (Strategy Fund) did not sell the debtor's (SCI's) secured *non-tort* claims to a third-party "transferee," RCW 19.40.081(e)(2) has no possible application here. The Court found – and Mammoth has not disputed – that "[i]n June 2009, Claritage [Strategy Fund] assigned its rights under the Security Agreement to Claritage's wholly owned subsidiary, SRC.  SRC foreclosed on its security interest and acquired all of SCI's tangible and intangible assets that were subject to the Security Agreement in July 2009."[29]  Thus, here there was an *assignment* by the secured party to a wholly-owned subsidiary *prior to* foreclosure, not a sale to anyone at any time.  Moreover, the prior assignment to Strategy Fund's wholly-owned subsidiary *did not* "result from"[30] the subsequent foreclosure of the security interest.

There was no "transfer" here, and Mammoth does not contend to the contrary in its Motion for Reconsideration.  Hence, there was nothing to be "voided" and the UFTA's protection of a third-party purchaser of foreclosed secured assets is not implicated here.  Mammoth thus has failed to establish that the Court committed a manifest error in striking as moot the two claims based on a transfer under the UFTA.  There exists no basis to re-visit Mammoth's final argument in its Motion for Reconsideration that a jury must decide whether a transfer was fraudulent,[31] an argument which can only be relevant if a "transfer" has occurred.  *See Webster Indus., Inc. v. Northwood Doors, Inc.*, 320 F. Supp. 2d 821, 836 (N.D. Iowa 2004) ("[I]f a 'transfer' involves only property encumbered by a valid lien, it cannot be a 'fraudulent transfer' within the meaning of either the UFTA or Iowa common law, because there is no 'asset' involved, and if there is no 'asset' involved, the intent of the parties to the transfer is irrelevant.").

## II.   CONCLUSION

Mammoth has failed to satisfy the high burden justifying reconsideration pursuant to Local CR 7(h)(1).  Mammoth improperly raises a completely new argument, improperly presses an

---

[29] ECF No. 214 at 4:13-17 (citations omitted).

[30] RCW 19.40.081(e)(2).

[31] The Straitshot Parties incorporate herein by reference their prior, complete opposition to Mammoth's send-it-to-the-jury argument.  *See* ECF No. 190 § A.3.

PLAINTIFF AND THIRD-PARTY DEFENDANTS'
OPPOSITION TO MAMMOTH'S MOTION FOR
RECONSIDERATION OF LIMITED ISSUE - 8
CASE NO. C10-268 TSZ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  argument that was fully-briefed in the summary judgment proceedings, and fails altogether to
2  demonstrate that the Court committed manifest error.  Because under Washington law there was
3  no "transfer" here in the foreclosure of SCI's *non-tort* claims that were properly subject to the pre-
4  existing security agreement, the Court correctly rejected Mammoth's claims for violation of the
5  UFTA and its tag-along claim for successor liability.

6       The Straitshot Parties respectfully request that the Court deny Mammoth's Motion for
7  Reconsideration.

8       DATED this 4th day of April, 2011.

Respectfully submitted,

SUMMIT LAW GROUP PLLC

By /s/Jessica L. Goldman
   Jessica L. Goldman, WSBA #21856
   SUMMIT LAW GROUP, PLLC
   315 5th Avenue S, Suite 1000
   Seattle, WA  98104.2682
   Phone:  206.676.7000
   Fax:  206.676.7001
   *jessicag@summitlaw.com*

   Leonard A. Gail
   *(Admitted Pro Hac Vice)*
   MASSEY & GAIL LLP
   50 East Washington Street, Suite 400
   Chicago, IL  60602
   Phone:  312.283.1590
   Fax:  312.379.0467
   *lgail@masseygail.com*

***Attorneys for Plaintiff***

PLAINTIFF AND THIRD-PARTY DEFENDANTS'
OPPOSITION TO MAMMOTH'S MOTION FOR
RECONSIDERATION OF LIMITED ISSUE - 9
CASE NO. C10-268 TSZ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

# CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Leigh Ann Collings Tift
LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101-3122
ltift@littler.com

A. Chad Allred
ELLIS LI & MCKINSTRY
Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121
callred@elmlaw.com

Kenneth J. Diamond
WINTERBAUER & DIAMOND PLLC
1200 Fifth Avenue, Suite 1700
Seattle, WA  98101
ken@winterbauerdiamond.com

DATED this 4th day of April, 2011.

/s/ Deanna L. Schow
Deanna L. Schow
Legal Assistant
SUMMIT LAW GROUP, PLLC
315 5th Avenue S, Suite 1000
Seattle, WA  98104-.2682
Phone:  206.676.7000
Fax:  206.676.7001
*deannas@summitlaw.com*

PLAINTIFF AND THIRD-PARTY DEFENDANTS'
OPPOSITION TO MAMMOTH'S MOTION FOR
RECONSIDERATION OF LIMITED ISSUE - 10
CASE NO. C10-268 TSZ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001