THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STRAIGHTSHOT COMMUNICATIONS,
INC., a Washington Corporation, et al.

                            Plaintiffs,

vs.

TELEKENEX, INC., a Delaware Corp., et al.

                            Defendants.

No.  C10-268Z

ORDER

        THIS MATTER comes before the Court on motions for summary judgment

filed by (1) defendants Mark Prudell and Mark Radford, docket no. 201;

(2) Telekenex, Inc. ("Telekenex"), Brandon Chaney, Anthony Zabit, and Joshua

Summers (collectively the "Telekenex Defendants"), docket no. 202; and

(3) defendants Mammoth Networks, LLC ("Mammoth") and Brian Worthen

(collectively the "Mammoth Defendants"), docket no. 205.  Having reviewed the

papers filed in support of, and opposition to, the various motions, the Court enters the

following Order.

ORDER - 1

I.    **BACKGROUND**

This case arises out of the corporate dissolution of Plaintiff Straightshot Communications, Inc. ("SCI"),[1] a company that provided networking services to small and medium-sized businesses.  5th Am. Compl. ("FAC"), ¶ 14, docket no. 175.  The FAC alleges that between October 2008 and March 2009, several of SCI's employees began stealing SCI's confidential information, including SCI's customer lists, contacts, and circuit diagrams, and secretly providing the information to SCI's primary competitor Telekenex.  Id. at ¶¶ 28-29, 34-35, 38, 42, 44, 54, 76, 84, 87-93, 98-105, 109-22.  Using this information, Radford, Prudell, and the Telekenex Defendants allegedly solicited SCI's existing customers and made false representations that SCI was going out of business in an effort to induce SCI's clients to switch their service to Telekenex.  Id. at ¶¶ 84, 88, 90-91, 93, 104-05, 111, 115-16, 147, 154-61, 166, 170-72, 175, 180, 186-88, 190, 192, 208, 210, 212-13, 215-16.  The Mammoth Defendants allegedly facilitated the transfer of SCI's customers to Telekenex by providing Telekenex with SCI's confidential circuit information.  Id. at ¶¶ 93, 95-97.

Plaintiffs brought the present lawsuit alleging, among other things, that defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as the state version of RICO, the Washington Criminal Profiteering

---

[1] A related company, Straightshot RC, LLC, ("SRC") is also a plaintiff in the present action.  Order, docket no. 81.  SRC acquired some of SCI's claims against the defendants in an asset foreclosure in 2009.  Perry Decl., Ex. 14, docket no. 160.  The Court has not yet determined whether the claims that are the subject of the pending motions are the property of SCI or SRC, and the parties have not briefed that issue. The Court need not address the issue in this Order.

Act ("WCPA").  See 3d Am. Compl. ("TAC"), docket no. 83.  Specifically, plaintiffs contended that defendants joined together in an association for the common purpose of defrauding SCI of its trade secrets and confidential information, and using that information to deprive SCI of its business and customers.  See id. at ¶ 293.  On November 15, 2010, the Court granted defendants' motion to dismiss plaintiffs' RICO and WCPA claims because plaintiffs had failed to allege facts demonstrating the existence of a pattern, a necessary element of both a RICO and WCPA claim.  Order, docket no. 139.  However, the Court also granted plaintiffs leave to amend to cure the TAC's deficiencies.  Id.

Although RICO identifies a number of different predicate acts that constitute illegal racketeering activity, see 18 U.S.C. § 1961(a), the TAC relied exclusively on wire fraud (18 U.S.C. § 1343).  See TAC at ¶ 292, docket no. 83.  Plaintiffs filed the FAC[2] on December 9, 2010, alleging further acts of wire fraud in support of their amended RICO claim.  FAC, docket no. 175.  The FAC also alleges new predicate acts to support plaintiffs' RICO claim, including obstruction of justice (18 U.S.C. § 1503), evidence tampering (18 U.S.C. § 1512), and mail fraud (18 U.S.C. § 1341).

---

[2] Plaintiffs first filed an amended complaint containing the revised RICO allegations on December 6, 2010.  See 4th Am. Compl., docket no. 173.  On December 8, 2010, the Court granted in part plaintiffs' motion to file another amended complaint, docket no. 147, alleging claims against Telekenex's successor-in-interest, IXC Holdings, Inc. ("IXC Holdings").  Minute Entry, docket no. 174.  Shortly thereafter, plaintiffs filed the FAC, which is the operative complaint.  Docket no. 175.

### A.    Obstruction of Justice Allegations, 18 U.S.C. § 1503(a)

Plaintiffs allege that defendant Summers engaged in at least three instances of obstruction of justice.  Specifically, plaintiffs contend that Summers perjured himself in a declaration filed in state court on February 16, 2009, and again in two depositions held on August 3, 2009 and November 16, 2010.  FAC at ¶¶ 253, 266-68, docket no. 175.[3]  The allegedly perjurous statements relate to Summers' attempts to cover up his involvement in defendants' conspiracy to steal SCI's trade secrets and drive the company out of business.  Id. at ¶ 250 ("Defendant Summers made a long series of false statements to cover up Defendants' wrongdoing.").

### B.    Evidence Tampering Allegations, 18 U.S.C. § 1512(c)(1)

Plaintiffs originally alleged in the TAC that when defendant Summers resigned from his position at SCI on February 6, 2009, he took one of SCI's laptop computers loaded with confidential information.  TAC at ¶ 107, docket no. 83.  Summers then allegedly used the confidential information on the laptop to access SCI's servers and shut down SCI's client services.  Id. at ¶¶ 193, 197, 203-04.

Plaintiffs now allege that Summers concealed the fact that he retained the SCI laptop so that he could destroy evidence of his illicit use of SCI's confidential information and his access to SCI's servers.  FAC at ¶¶ 254-56, 262-63, docket no. 175.  Plaintiffs contend that Summers destroyed the evidence in direct

---

[3] Plaintiffs also contend that Summers' perjurous statements are indictable racketeering activity under 18 U.S.C. § 1512(c)(2).

ORDER - 4

contravention of a state court's temporary restraining order, and with the specific intent of interfering with the administration of justice.  Id. at ¶¶ 261-62, 265, 269.

### C.    Mail and Wire Fraud Allegations, 18 U.S.C. §§ 1341, 1343

In addition to the original wire fraud allegations, plaintiffs contend that the defendants engaged in further acts of wire fraud and other acts of mail fraud against SCI, SCI's former customers, and third parties.

#### 1.    Mail and Wire Fraud Against SCI

Plaintiffs allege that Telekenex engaged in mail and wire fraud when it fraudulently transferred its assets to IXC Holdings in August 2010.  FAC at ¶ 324, docket no. 175.

#### 2.    Mail and Wire Fraud Against SCI's Former Customers

The FAC alleges that defendants pressured SCI's former customers into signing contracts with Telekenex without affording the customers the opportunity to consider alternative service options.  Id. at ¶ 271.  Plaintiffs contend that defendants' representations to SCI's former customers that they had no alternative to obtain service on short notice as a result of SCI's collapse, left the customers with no choice but to assent to unfavorable service agreements with Telekenex.  Id.  In addition, at least one customer, U.S. Bearings, allegedly received inferior service after it switched providers from SCI to Telekenex.  Id.

3.    <u>Mail and Wire Fraud Against Third Parties</u>

In addition to the events related to SCI's collapse, the FAC alleges that

Telekenex has perpetrated other mail and wire fraud schemes against the following

third parties:

(1)    Charlotte Russe, Inc. ("Charlotte Russe").  Telekenex and Telekenex
IXC, Inc. ("Telekenex IXC") allegedly used misrepresentations and the
threat of service interruptions to pressure Charlotte Russe into signing an
unfavorable service contract with Telekenex IXC.  <u>Id.</u> at ¶¶ 273-82;

(2)    Restaurant Concepts II, LLC ("RCII").  Telekenex and Telekenex IXC
allegedly told RCII that Telekenex IXC would only agree to provide
service to RCII if the company agreed to extend its contract by 36
months.  <u>Id.</u> at ¶ 283;

(3)    Perseus Books, LLC ("Perseus").  Telekenex allegedly refused to port
Perseus's telephone numbers to a new carrier in violation of federal law
unless Perseus paid an early termination fee.  <u>Id.</u> at ¶¶ 284-88;

(4)    Eat 'n Park Hospitality Group, Inc. ("Eat 'n Park").  Telekenex and
Telekenex, IXC allegedly used misrepresentations and the threat of
service interruptions to pressure Eat 'n Park into signing an unfavorable
service contract with Telekenex IXC.  <u>Id.</u> at ¶¶ 289-92;

(5)    Eric F. Anderson, Inc. ("EFA").  Telekenex allegedly refused to port
EFA's telephone numbers to a new carrier in violation of federal law
unless EFA paid an early termination fee.  <u>Id.</u> at ¶¶ 293-99;

(6)    Dealtree, Inc. ("Dealtree").  Telekenex allegedly misrepresented its
ability to provide quality services to Dealtree in order to induce Dealtree
to enter into a service contract with Telekenex.  <u>Id.</u> at ¶¶ 300-05;

(7)    Bryco Funding, Inc. ("Bryco").  Telekenex allegedly misrepresented its
ability to provide quality services to Bryco in order to induce Bryco to
enter into a service contract with Telekenex.  <u>Id.</u> at ¶¶ 306-19;

(8)    Robin Riechert.  One of Telekenex's successor corporations, Net World,
Inc., allegedly fraudulently transferred its assets to Telekenex and other

companies after Riechert obtained a sizeable judgment against Net World.  Id. at ¶ 320; and

(9)   Michigan Street Buildings, LLC ("Michigan Street").  Telekenex IXC allegedly wrongly refused to honor the lease agreement between Michigan Street and AuBeta Network Corp. after Telekenex IXC acquired AuBeta in March 2009.  Id. at ¶ 321.

## II.  DISCUSSION

Defendants move to strike many of the allegations in the FAC.  Mot., docket no. 202.  Defendants also move for summary judgment on plaintiffs' RICO claim (Eighth Cause of Action) and WCPA claim (Ninth Cause of Action).  Id.; see also Mot., docket no. 201; Mot., docket no. 205.  The Telekenex Defendants separately move for summary judgment on plaintiffs' claims for fraudulent transfer (Fourteenth[4] Cause of Action), and corporate disregard (Fifteenth Cause of Action).

### A.   Defendants' Motion to Strike

Defendants move to strike the new allegations in the FAC to the extent it (1) alleges that defendants engaged in predicate acts of racketeering activity other than wire fraud; (2) alleges facts or legal theories previously rejected by the Court; and (3) alleges misconduct by non-party Telekenex IXC and attributes such conduct to the defendants.  See Reply at 3, docket no. 211.  Defendants argue that all three categories of allegations should be stricken because they exceed the Court's Order granting leave

---

[4] The FAC identifies two different claims as plaintiffs' "Fourteenth Cause of Action:" fraudulent transfer and corporate disregard.  FAC at 84, docket no. 175.  For purposes of the present motion, the Court will refer to the fraudulent transfer claim as the Fourteenth Cause of Action and the Corporate Disregard claim as the Fifteenth Cause of Action.

to amend.  See Order, docket no. 139.  The Court GRANTS in part and DENIES in part the motion to strike.  The Court GRANTS in part the motion and STRIKES the paragraphs specifically identified by defendants that allege misconduct by non-party Telekenex IXC in connection with third parties Charlotte Russe, RCII,[5] Eat 'n Park, and Michigan Street.  See FAC at ¶¶ 273-83, 289-92, 321.  The Court denied plaintiffs' motion to add Telekenex IXC as a defendant, see Minute Entry, docket no. 174, and as such, the allegations are improper.[6]  The Court otherwise DENIES defendants' motion to strike.  With the exception of the allegations related to Telekenex IXC, defendants have failed to identify any specific paragraphs of the amended complaint that they contend should be stricken.  McGorray v. O'Connor, 87 F. 586 (9th Cir. 1898) (holding that a motion to strike out parts of a pleading must be denied when the moving party fails to specifically identify the portions to be stricken); see also Fed. R. Civ. P. 7(b)(1)(B)-(C) (noting that a motion must state with particularity the grounds for seeking the order and the relief sought).

---

[5] In addition, the FAC only alleges that, as to RCII, "Telekenex IXC told [RCII] . . . that Telekenex IXC would agree to assume RCII's agreement with AuBeta only if the contract was extended for a period of 36 months."  FAC at ¶ 283, docket no. 175.  The alleged statement, standing alone, is neither illegal nor improper, and fails to state a claim for relief.

[6] For the same reasons, the Court STRIKES plaintiffs' allegations regarding third party Robin Reichart, see FAC at ¶ 320, docket no. 175, which relate to misconduct allegedly perpetrated by non-party Net World, Inc.

**B.     Defendants' Motions for Summary Judgment[7] — Standard of Review**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The Court must draw all reasonable inferences in favor of the non-moving party.  See F.D.I.C. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir. 1992), rev'd on other grounds, 512 U.S. 79 (1994).

**C.     Plaintiffs' Amended RICO Claims (Eighth Cause of Action)**

To state a claim under RICO section 1962(c),[8] a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  Miller v.

---

[7] Plaintiffs argue that defendants' motions for summary judgment are premature, and that the Court should instead apply the liberal Rule 12(b)(6) dismissal standard and decline to review materials outside the pleadings in deciding defendants' motions. Defendants' motions are not premature, however, as this case has been pending since February 2009.  Moreover, although plaintiffs request time to conduct further discovery pursuant to Fed. R. Civ. P. 56(d), the discovery deadline passed on November 24, 2010.  Order, docket no. 80.  On December 8, 2010, the Court expressly ordered the parties to engage in no further discovery, with the limited exception of discovery regarding plaintiffs' claims against defendant IXC Holdings.  Minute Entry, docket no. 174.  Plaintiffs have had countless opportunities to conduct discovery regarding their RICO claim in the two years that this case has been pending, and no further discovery is warranted or necessary.  Finally, a party requesting a continuance pursuant to Fed. R. Civ. P. 56(d) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment.  See Tatum v. City of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006). Here, plaintiffs have failed to meet their burden to explain what further discovery would reveal, and why it would preclude summary judgment.  See Fed. R. Civ. P. 56(d).  Accordingly, the Court DENIES plaintiffs' motion for a Rule 56(d) continuance, and will apply the summary judgment standard to defendants' motions.

Yokohama Tire Corp., 358 F.3d 616, 620 (9th Cir. 2004).  With the exception of the pattern element, in its prior Order the Court held that plaintiffs had alleged sufficient facts to establish all of the elements of a RICO claim.  Order, docket no. 139. Therefore, the existence of a pattern of racketeering activity is the primary issue before the Court.

To establish a pattern of racketeering activity, the plaintiff must show that the defendant committed at least two predicate offenses.  Clark v. Time Warner Cable, 523 F.3d 1110, 1116 (9th Cir. 2008).  The plaintiff must further establish that the racketeering predicates are 1) related (the relationship element); and 2) part of a continuous pattern that either threatens or constitutes long-term criminal activity (the continuity element).  H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989).

1.    The Relationship Element

"'Related' conduct 'embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'"  Howard v. Am. Online, Inc., 208 F.3d 741, 749 (9th Cir. 2000) (quoting H.J., 492 U.S. at 239).

---

[8] Plaintiffs also allege that defendants violated two other provisions of the RICO statute, sections 1962(a) and 1962(d).  As discussed below, however, the dispositive issue on all of plaintiffs' RICO claims is whether plaintiffs can establish a pattern of racketeering activity.  See Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co., 981 F.2d 429, 437 (9th Cir. 1992) (plaintiff must show a pattern of racketeering activity to recover under section 1962(a)); Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir. 2000) (holding that the failure to plead the elements of a section 1962(c) claim precludes a claim under section 1962(d)), overruled on other grounds by, Odom v. Microsoft Corp., 486 F.3d 541 (9th Cir. 2007).

"The relationship requirement exists to ensure that RICO is not used to penalize a series of disconnected criminal acts."  United States v. Eufrasio, 935 F.2d 553, 565 (3d Cir. 1991).  In the present case, the relationship element was not disputed in the last round of motions because all of the allegations in the TAC related to defendants' alleged misappropriation of SCI's trade secrets, and SCI's resulting dissolution (the "trade secret scheme").

There is no dispute that the majority of the new allegations in the FAC (such as the allegations relating to Summers' obstruction of justice and evidence tampering, and allegations related to SCI's former customers) are related to the trade secret scheme.  However, the FAC also alleges that Telekenex, acting alone, engaged in mail and wire fraud involving third parties Perseus, EFA, Dealtree, and Bryco (collectively the "third party schemes").  Specifically, the FAC alleges that Telekenex misrepresented its ability to provide quality services in order to entice the third parties to become customers (Dealtree, Bryco), and refused to transfer its former customers' telephone numbers to other carriers, in violation of federal law, unless the customers agreed to pay termination fees (Perseus, EFA).[9]  FAC at ¶¶ 284-28, 293-319, docket no. 175.  The Court must determine whether the third party schemes are related to the trade secret scheme alleged in the FAC.

_____

[9] It is questionable whether Telekenex's alleged misconduct towards Dealtree, Bryco, Perseus, or EFA rises to the level of an indictable predicate act, because neither the violation of a statute, nor the failure to perform as promised, constitutes to the level of wire fraud.  See Hilton Sea, Inc. v. DMR Yachts, Inc., 750 F. Supp. 35, 39 (D. Me. 1990); Rothman v. Vedder Park Mgmt., 912 F.2d 315 (9th Cir. 1990).

The Ninth Circuit addressed the relationship component of a pattern in Howard, 208 F.3d at 749, where the plaintiff's complaint alleged that AOL, an internet service provider, fraudulently advertised a flat-fee pricing plan in order to increase subscribership and drive up the company's stock price.  Id. at 746.  The plaintiff alleged that the advertising was fraudulent because AOL knew that the number of individuals who would be enticed to sign up for AOL's services by the advertising would outstrip the company's ability to provide internet service.  Id. at 746-47.  In addition to the fraudulent advertising scheme, the plaintiff alleged that AOL made misrepresentations about its shipping needs in order to induce a shipping company to expand its operations.  Id. at 748.  The plaintiff contended that the different schemes were "related" because both schemes demonstrated that "fraudulent activity has been AOL's modus operandi over an extended period of time, manifested in a variety of ways."  Howard v. Am. Online, Inc., Dkt. No. 35, Civ. 97-1642 (C.D. Cal., May 14, 1998).  The district court held that the shipping company allegations had no connection to the false advertising allegations and therefore the two schemes were not "related" under RICO.  Id.  The Ninth Circuit affirmed, holding that although the schemes involved the same participant (AOL), the "purpose, result, victim and method of the [shipping company] misrepresentations are strikingly different [than the other allegations in the complaint]."  Howard, 208 F.3d at 749.

Here, plaintiffs argue that the third party schemes are related to the trade secret scheme because, collectively, the schemes demonstrate that fraudulent activity is

Telekenex's modus operandi.  Fraudulent or not, however, the schemes must be more than merely a series of disconnected criminal acts.  Id. at 749.  As in Howard, the third party schemes here had different participants (the only alleged participant was Telekenex),[10] different victims (Bryco, Dealtree, Perseus, and EFA), different results,[11] and different methods (no theft of trade secrets) than the trade secrets scheme alleged in the FAC.  Accordingly, the third party schemes alleged in the FAC are unrelated to

---

[10] In addition, although the Court previously held that plaintiffs had pleaded sufficient facts to satisfy the enterprise element of their RICO claim in connection with the trade secret scheme, the absence of any involvement of the remaining defendants in the third party schemes alters the Court's analysis of the enterprise element.  United States v. Minicone, 960 F.2d 1099, 1106 (2d Cir. 1992) ("The racketeering acts must be related to each other . . . and they must be related to the enterprise.") (emphasis added); see also Banks v. Wolk, 918 F.2d 418, 424 (3d Cir. 1990) ("[A]ll predicate acts in a pattern must be somehow related to the [same RICO] enterprise.").  The FAC does not allege that any of the defendants except Telekenex were involved in the third party schemes.  Consequently, even if plaintiffs could rely on the third party schemes to show a pattern of racketeering activity, plaintiffs could not show that the remaining defendants participated in an enterprise engaged in a pattern of racketeering activity.

[11] The evidence relating to the third party schemes submitted by plaintiffs was apparently obtained by combing through court databases to identify every lawsuit initiated since 2006 in which Telekenex is a party.  See Gail Decl. at ¶¶ 2-6, Exs. 1-5, docket no. 210.  However, it appears that these lawsuits have uniformly been resolved in favor of Telekenex, either by dismissal in Telekenex's favor, or settlement.  See Tift Decl., Exs. 6, 8, 9, 11, 12, docket no. 204; Telekenex, Inc. v. Charlotte Russe, Inc., Order, docket no. 74, Civ. 09-2-22435-8 (Wash. Sup. Ct. Feb. 8, 2011).  Moreover, the Court is skeptical that the evidence relating to the third party schemes, which was obtained from the pleadings in the various lawsuits, constitute "facts" that support plaintiffs' RICO claims.  Cf. Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer, 90 F.3d 118, 123-24 (5th Cir. 1996).

the trade secret scheme for purposes of RICO, and do not establish a pattern of racketeering activity.[12]

### 2. The Continuity Element

The continuity element requires proof of either "open-ended" or "closed-ended" continuity. H.J., Inc., 492 U.S. at 241. The Court's prior order only granted plaintiffs leave to plead facts that would demonstrate open-ended continuity, which requires either (1) a threat of future criminal conduct; or (2) conduct that constitutes the enterprise's regular way of doing business. H.J., Inc., 492 U.S. at 241-42. In either case, the touchstone of a pattern is past conduct that by its nature projects into the future with a threat of repetition. See Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1528 (9th Cir. 1995). A plaintiff can establish open-ended continuity where there is an ongoing scheme, multiple victims, or a risk of continuing illegal activity. See Ticor Title Ins. Co. v. Florida, 937 F.2d 447, 449 (9th Cir. 1991). Conversely, a plaintiff cannot establish open-ended continuity if the defendants' collective conduct is in a sense a single episode with a single purpose, rather than a series of separate, related acts. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1533 (9th Cir. 1992). Thus, where the defendants' predicate acts are all directed to one goal which has a definitive ending date, there is no threat of future criminal activity once that goal is accomplished. See Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 366 (9th Cir. 1992).

---

[12] For the same reasons, the Court concludes that Telekenex's alleged fraudulent transfer of assets to IXC Holdings in August 2010, see FAC at ¶ 324, docket no. 175, is not "related" to the trade secret scheme for purposes of RICO.

ORDER - 14

This Court previously held that the trade secret scheme alleged in the TAC constituted a single episode of criminal conduct with a definitive goal:  the complete dismantling of SCI as a company, and the transfer of its business to Telekenex.  Order at 14-15, docket no. 139.  Plaintiffs argue that the new allegations in the FAC demonstrate that the trade secret scheme was not a single episode, but rather, a part of an ongoing scheme, with multiple victims, that represents defendants' regular way of doing business.

Specifically, plaintiffs argue that the trade secret scheme involved multiple victims because SCI's former customers were intended victims of the scheme.  See FAC at ¶ 271, docket no. 175 ("The harm to Straightshot's customers was an inherent part of the defendants' fraudulent scheme.").  However, to constitute racketeering activity, the conduct must be an indictable predicate act under 18 U.S.C. § 1961. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 495 (1985) ("'[R]acketeering activity' consists of no more and no less than commission of a predicate act."). Plaintiffs allege that defendants committed wire fraud when they "pressured customers into signing [unfavorable] contracts with Telekenex without affording customers the opportunity to consider other options" and "represented that Telekenex was the sole alternative to risking a major interruption of their phone, data, and Internet Services." FAC at ¶ 271, docket no. 175.  To adequately plead wire fraud, however, a plaintiff must allege: (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme;

and (3) specific intent to deceive or defraud.  <u>Schreiber Distrib. Co. v. Serv-Well</u> <u>Furniture Co.</u>, 806 F.2d 1393, 1400 (9th Cir. 1986).  To establish a scheme or artifice to defraud, a plaintiff must demonstrate that the defendant retained or misappropriated the money or property of others, through the use of dishonest methods or schemes.  <u>See</u> <u>e.g.</u>, <u>Carpenter v. United States</u>, 484 U.S. 19, 26-27 (1987).  Plaintiffs submit no evidence that defendants misappropriated the property of SCI's former customers.

Moreover, "business rivals may not use RICO to complain about injuries derivatively caused by mail frauds perpetrated against customers, because only the customers are the beneficiaries of the statutory protection."  <u>Israel Travel Advisory</u> <u>Serv., Inc. v. Israel Identity Tours, Inc.</u>, 61 F.3d 1250, 1258 (7th Cir. 1995) (citing <u>Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.</u>, 940 F.2d 397, 405-06 (9th Cir. 1991)).  Thus, although a business can recover under the common law of unfair competition when a rival lies to potential customers, the business does not have a claim under the mail fraud statute, and by extension RICO.  <u>Israel Travel Advisory</u> <u>Serv., Inc.</u>, 61 F.3d at 1257; <u>see</u> <u>also</u> <u>Lancaster</u>, 940 F.2d at 406 ("[I]t might be said that defendants hoped to 'steal' Lancaster's customers.  But it cannot be said that these customers were Lancaster's property.").  SCI's former customers are not additional victims of the trade secrets scheme, and they do not support a showing of open-ended continuity.

Plaintiffs also argue that the trade secret scheme poses a risk of future criminal activity because defendant Summers continues to engage in illegal acts of obstruction

of justice and evidence tampering in an effort to cover-up the trade secret scheme.

FAC at ¶ 250, docket no. 175.  Consistent with the law in several circuits, this Court

held in its prior order that a defendant's efforts to cover up a criminal scheme does not

extend the duration of the underlying scheme.  Order at 17, docket no. 139 (citing

Midwest Grinding Co. v. Spitz,[13] 976 F.2d 1016, 1024 (7th Cir. 1992); Pyramid Sec.

Ltd. v. IB Resolution, Inc., 924 F.2d 1114, 1117 (D.C. Cir. 1991); Aldridge v. Lily-

Tulip, Inc. Salary Ret. Plan Benefits Comm., 953 F.2d 587, 593-94 (11th Cir. 1992));

Jackson v. Bellsouth Comm'ns, Inc., 372 F.3d 1250, 1268 (11th Cir. 2004) ("[T]he

plaintiffs' allegations of ongoing acts aimed at concealing an initial wrongdoing [do]

not establish open-ended continuity.").

Moreover, the federal obstruction of justice statute (18 U.S.C. § 1503) applies

only to perjury offered in federal court proceedings.  Streck v. Peters, 855 F. Supp.

1156, 1162 (D. Hi. 1994) (citing O'Malley v. New York City Transit Auth., 896 F.2d

704, 708 (2d Cir. 1990)).  Similarly, the prohibition on evidence tampering found in

18 U.S.C. § 1512(c) applies only in an "official proceeding," which does not include

state court proceedings.  See 18 U.S.C. § 1515(a) (defining "official proceeding" as

---

[13] Plaintiffs argue that the holding in Spitz does not apply in the Ninth Circuit.  Resp. at 11, n.3.  Plaintiffs rely heavily on Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 364-65 (9th Cir. 2005), in which the Ninth Circuit held that a party's litigation misconduct in a prior lawsuit, for the purpose of inducing the other party to accept a reduced settlement offer, may form the basis of a subsequent RICO claim.  Unlike Spitz, and the other circuit court cases cited by the Court in its prior order, Living Designs did not involve a cover-up of past conduct, and it did not address what effect a cover-up has on establishing the pattern element of a RICO claim.  Therefore, Living Designs is not relevant to the Court's analysis.

matters conducted in a federal forum, or matters involving insurance in interstate commerce).  All of Summers' alleged misconduct, with the exception of his testimony at the November 2010 deposition, took place in connection with the state court litigation, and as such, it is not indictable racketeering activity that can support a showing of continuity.[14]

As for the November 2010 deposition, the FAC alleges only that it was inconsistent with Summers' previous deposition, and that Summers "could not explain why he had deliberately erased files on the laptop, why he installed a new operating system to wipe out existing data, and why he ran the 'RegEdit' program to cover up his wrongdoing."  FAC at ¶ 268, docket no. 175.  To show obstruction of justice under 18 U.S.C. § 1503, plaintiffs must show that Summers (1) acted with knowledge that; (2) his actions have the natural and probable effect of interfering with; (3) a pending judicial proceeding.  Salazar-Luviano v. Mukasey, 551 F.3d 857, 862 (9th Cir. 2008) (citing United States v. Acquilar, 515 U.S. 593, 597, 599 (1995)). The allegations in the FAC do not support plaintiffs' contention that Summers acted with knowledge that his testimony would interfere with this proceeding.  To the contrary, the FAC alleges that Summers testified that he did not know why he erased files on the laptop and installed a new operating system.  FAC at ¶ 268, docket no. 175.

---

[14] Contrary to plaintiffs' assertion, see Resp. at 11, docket no. 209, Summers' conduct standing alone is insufficient to show a pattern of racketeering activity.  See Clark, 523 F.3d at 1116 (holding that to establish a pattern of racketeering activity, the plaintiff must show that the defendant committed at least two predicate offenses).

Plaintiffs have failed to submit evidence supporting their contention that the defendants are engaged in an ongoing criminal scheme in violation of RICO. Accordingly, the Court GRANTS defendants' motions for summary judgment and DISMISSES with prejudice plaintiffs' RICO claims.

### C.   Plaintiffs' Amended WCPA Claims (Ninth Cause of Action)

To establish a claim under the WCPA, a plaintiff must show that the defendants engaged in a pattern of criminal profiteering. To show a pattern under the WCPA, a plaintiff must make the same showing required by RICO: relationship plus continuity. See State v. Barnes, 85 Wn. App. 638, 667, 932 P.2d 669 (1997). Plaintiffs rely on the same facts to support both their WCPA claim and their RICO claim. Therefore, plaintiffs have failed to establish a pattern, and the Court GRANTS defendants' motions and DISMISSES with prejudice plaintiffs' WCPA claims.

### D.   Plaintiffs' Fraudulent Transfer Claim (Fourteenth Cause of Action)

The Telekenex Defendants move separately for summary judgment on plaintiffs' fraudulent transfer claim, which is predicated on plaintiffs' contention that Telekenex transferred all of its assets to IXC Holdings in August 2010, knowing that this lawsuit was pending, and that plaintiffs were seeking a substantial award of damages against Telekenex. The Telekenex defendants argue that the Court should grant summary judgment on plaintiffs' fraudulent transfer claim because plaintiffs have not yet reduced their claim to judgment and therefore are not "creditors" under Washington's Uniform Fraudulent Transfer Act ("UFTA"). UFTA, however, defines

a creditor as any person who has a claim, and a claim as "a right to payment, <u>whether</u> <u>or not the right is reduced to judgment</u>."  RCW 19.40.011(3)-(4) (emphasis added).  Therefore, plaintiffs are "creditors" under UFTA.

The Telekenex defendants also argue that summary judgment is appropriate because plaintiffs have failed to submit evidence that Telekenex transferred its assets to IXC Holdings without receiving reasonably equivalent value.  RCW 19.40.041(a)(2).  Defendants' second argument also fails, however, because a transfer may also be fraudulent under UFTA if, as plaintiffs contend, the transferor acted "with actual intent to hinder, delay, or defraud any creditor. . . ."  RCW 19.40.041(a)(1).[15]

In the alternative, the Telekenex Defendants move to dismiss plaintiffs' fraudulent transfer claim under Fed. R. Civ. P. 9(b), arguing that plaintiffs have failed to plead fraud with sufficient particularity.  Plaintiffs argue that dismissal under Rule 9(b) is inappropriate because "[a]llegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge . . ." <u>Scheidt v. Klein</u>, 956 F.2d 963, 967 (10th Cir. 1992).  Here, the relevant facts relating to the allegedly fraudulent transfer, which occurred nearly seventeen months

---

[15] Telekenex contends that the transfer of its assets in August 2010 could not have been fraudulent because, before the transfer took place, Telekenex was valued at $0.00.  <u>See</u> Gail Decl., Ex. 9, docket no. 210 (May 2010 valuation assigning $0.00 value to Telekenex).  Telekenex first raises this argument on reply, and it has not been fully briefed by the parties.  Moreover, the evidence of Telekenex's valuation is only an excerpt of a longer valuation report, and it is unclear whether it evaluates the going-concern value of the company, which is the relevant valuation for purposes of a fraudulent transfer claim.  <u>See</u> <u>In re Spokane Concrete Prods., Inc.</u>, 126 Wn.2d 269, 280, 892 P.2d 98 (1995).  Accordingly, the Court declines to dismiss plaintiffs' fraudulent transfer claim on this basis.

into the present lawsuit, are known solely by Telekenex and IXC Holdings, and are the subject of pending discovery.  See Minute Entry, docket no. 174; Goldman Decl., Ex. 18, docket no. 148.  Accordingly, the Court DENIES the Telekenex Defendants' motion as to plaintiffs' fraudulent transfer claim.

### E.   Plaintiffs' Corporate Disregard Claim (Fifteenth Cause of Action)

The Telekenex Defendants also move for summary judgment on plaintiffs' claim for corporate disregard.  Mot., docket no. 202.  A plaintiff seeking to pierce the corporate veil and impose direct liability on shareholders or corporate officers must demonstrate that (1) the corporate form has been intentionally used to violate or evade a duty; and (2) disregard of the corporate form is necessary to prevent an unjustified loss to the creditor.  Meisel v. M&N Modern Hydraulic Press Co., 97 Wn.2d 403, 409-10, 645 P.2d 689 (1982).  As a corporation is typically considered a separate entity, distinct from shareholders and officers, the corporate entity will only be disregarded in exceptional circumstances.  Truckweld Equip. Co. v. Olson, 26 Wn. App. 638, 644, 618 P.2d 1017 (1980).

To establish the first element of a corporate disregard claim, the plaintiff must show an abuse of the corporate form.  Meisel, 97 Wn.2d at 403.  Common examples of such abuse include:  commingling of corporate funds and other assets, failure to segregate funds of related entities, the unauthorized diversion of corporate funds or assets to non-corporate or personal uses, the failure to maintain corporate minutes or adequate corporate records, and corporate undercapitalization.  See Thomas V. Harris,

*Washington's Doctrine of Corporate Disregard*, 56 WASH. L. REV. 253, 260 n.38 (1981).

Plaintiffs fail to submit any evidence of abuse of the corporate form, or any of the type of exceptional circumstances that warrant imposing personal liability on the individual defendants for the corporation's conduct, and indeed, have not even alleged such conduct in the FAC.[16]  Plaintiffs contend that dismissal is nonetheless inappropriate because they will ultimately be unable to recover on their claims if they cannot impose liability on Telekenex's officers and shareholders.  However, "[t]he absence of an adequate remedy alone does not establish corporate misconduct." <u>Meisel</u>, 97 Wn.2d at 411.  Accordingly, the Court GRANTS the Telekenex Defendants' motion, and DISMISSES with prejudice plaintiffs' claim for corporate disregard.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS in part and DENIES in part defendants' motion to strike.  The Court GRANTS in part the motion and STRIKES paragraphs 273-83, 289-92, and 321 of the FAC.  The Court otherwise DENIES the motion to strike.

The Court further GRANTS the motions for summary judgment, docket nos. 201 and 205, and DISMISSES plaintiffs' RICO claim (Eighth Cause of Action),

---

[16] The FAC merely contains a formulaic recitation of the legal elements of a claim for corporate disregard.  <u>See</u> FAC at ¶¶ 413-15, docket no. 175.

and WCPA claim (Ninth Cause of Action) with prejudice.  The Court also GRANTS in part and DENIES in part the Telekenex defendants' separate motions for summary judgment, docket no. 202, on plaintiffs' claims for fraudulent transfer and corporate disregard.  The Court GRANTS in part the motion and dismisses with prejudice plaintiffs' claim for corporate disregard (Fifteenth Cause of Action).  The Court DENIES in part the motion on plaintiffs' claim for fraudulent transfer (Fourteenth Cause of Action).

IT IS SO ORDERED.

DATED this 9th day of May, 2011.

Thomas S. Zilly
United States District Judge