1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STRAITSHOT COMMUNICATIONS, INC.;
and STRAITSHOT RC, LLC,

Plaintiffs,

v.

TELEKENEX, INC.; MARK PRUDELL;
MARK RADFORD; JOSHUA SUMMERS;
ANTHONY ZABIT; BRANDON CHANEY;
MAMMOTH NETWORKS, LLC; BRIAN
WORTHEN; and IXC HOLDINGS, INC.,

Defendants.

C10-268Z

COURT'S INSTRUCTIONS

DATED this 31st day of January, 2012.

Thomas S. Zilly
United States District Judge

INSTRUCTION NO. 1

<u>Duty of Jury</u>

Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law which applies to this case. These instructions will be in three parts: first, the instructions on general rules that define and control the jury's duties; second, the instructions that state the rules of law you must apply, i.e., what a party must prove to make its case; and third, some rules for your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you must apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you and according to the law. You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. And you must not read into these instructions or anything I may have said or done any suggestion as to what verdict you should return. That is a matter entirely for you to decide.

INSTRUCTION NO. 2

<u>Burden of Proof:</u>

<u>Preponderance of the Evidence</u>

When a party has the burden of proof on any claim or issue by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or issue is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

INSTRUCTION NO. 3

<u>Evidence</u>

The evidence from which you are to decide what the facts are consists of (1) the sworn testimony of witnesses, both on direct and cross-examination, regardless of who called the witness; (2) the exhibits which have been received into evidence; and (3) any facts to which all the lawyers have agreed or stipulated.

You have also heard testimony in the form of depositions. This testimony is also evidence from which you are to decide the facts. You should draw no inference from whether these individuals were or were not physically present in court themselves.

INSTRUCTION NO. 4

Stipulated Facts

Plaintiffs Straitshot Communications, Inc. and Straitshot RC, LLC will be referred to collectively as "Straitshot."  Defendants Telekenex, Inc. and IXC Holdings, Inc. will be referred to as "Telekenex."  Defendant Mammoth Networks, LLC will be referred to as "Mammoth."

Straitshot and all defendants have agreed, or stipulated, to certain facts.  This means that you should treat these facts as having been proved.  You should consider these facts in addition to those facts which were stipulated and read to you during the trial.

(1)    Straitshot was a telecommunications service provider.  Straitshot enabled customers to share data, voice, and hosted applications between multiple locations.  Most of its customers were small and medium-sized companies that entered into service contracts with Straitshot for a specified term.

(2)    Telekenex is and was during 2008 and 2009 a telecommunications service provider.

(3)    Mammoth provides circuits (cables) for telecommunications service providers. Mammoth usually leases these circuits from an owner, such as Qwest, and then releases them to a service provider such as Straitshot or Telekenex.

(4)    In January 2008, Straitshot and Mammoth entered into a written contract – the Mammoth Network Services Agreement (the "Agreement") pursuant to which Mammoth would supply telecommunications products and services to Stratishot.  Straitshot, in turn, used those products and services to build

INSTRUCTION NO. 4 (page 2)

managed networks for Straitshot's customers.  This Agreement was signed by

Mammoth's president, Brian Worthen, and Straitshot's Chief Executive

Officer, Andrew Gold.

(5)    In both October 2008, and again in January 2009, Telekenex and Straitshot

unsuccessfully explored a potential combination and/or purchase and sale of

Straitshot.

(6)    Mark Prudell signed an employment contract with Straitshot effective April 18,

2007, and served as Straitshot's Regional Sales Director until January 16,

2009.

(7)    Mark Radford signed an employment contract with Straitshot effective June 1,

2007, and served as Straitshot's Regional Sales Director until January 16,

2009.

(8)    Joshua Summers signed an employment contract with Straitshot on October 2,

2006.  Summers initially served as a Senior Network Engineer, and was

promoted in early 2008 to Director of Engineering in which capacity he served

until 2009.

(9)    Prudell's, Radford's, and Summers' employment contracts were terminable

at will, meaning that they could quit or be fired at any time for any reason.

(10)   On January 16, 2009, Prudell and Radford submitted their resignations to

Straitshot.

INSTRUCTION NO. 4 (page 3)

(11)   Following the January 30 resignation of Straitshot engineers, Straitshot contracted with Voxitas, Inc., another telecommunications services provider, to provide technical support services to Straitshot's customers.

(12)   On February 6-7, 2009, Telekenex's President, Anthony Zabit, traveled from California to Wyoming and back.  Zabit met with and made a proposal to Worthen and the Mammoth Board of Directors at Mammoth's offices. Worthen and Mammoth rejected Zabit's proposal.

(13)   In April 2009, Mammoth sued Straitshot.  Mammoth's lawsuit was later consolidated with this lawsuit.

INSTRUCTION NO. 5

<u>What is Not Evidence</u>

In reaching your verdict you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence and you may not consider them in deciding what the facts are.  I will list them for you.

1.      Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the Court's ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, if testimony or exhibits have been received only for a limited purpose, you must follow the limiting instructions I have given.

4.      Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

INSTRUCTION NO. 6

<u>Direct and Circumstantial Evidence</u>

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

INSTRUCTION NO. 7

Credibility of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.      The opportunity and ability of the witness to see or hear or know the things about which the witness testified;

2.      The witness's memory;

3.      The witness's manner while testifying;

4.      The witness's interest in the outcome of the case and any bias or prejudice;

5.      Whether other evidence contradicted the witness's testimony;

6.      The reasonableness of the witness's testimony in light of all the evidence; and

7.      Any other factors that bear on believability.

These are some of the factors you may consider in deciding whether to believe testimony.

The weight of the evidence presented by each side does not necessarily depend on the number of witnesses who testify.

INSTRUCTION NO. 8

<u>Opinion Evidence</u>

You have heard testimony from persons who, because of education or experience, are permitted to state opinions and the reasons for their opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

INSTRUCTION NO. 9

<u>Liability of Corporations</u>

A corporation under the law is a person, but it can only act through its employees, agents, directors, or officers.  The law therefore holds a corporation responsible for the acts of its employees, agents, directors, and officers, if but only if those acts are authorized.  An act is authorized if it is a part of the ordinary course of employment of the person doing it.

The fact that a party is a corporation should not affect your decision.  All persons are equal before the law, and a corporation, whether large or small, is entitled to the same fair and conscientious consideration by you as any other person.

INSTRUCTION NO. 10

Charts and Summaries - Exhibits

Certain charts and summaries have been received into evidence to illustrate information brought out at the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

INSTRUCTION NO. 11

Charts and Summaries - Not in Evidence


Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

INSTRUCTION NO. 12

<u>Destruction of Evidence</u>

When evidence is within the control of a party, and that party destroys the evidence without adequate cause, you may infer that such evidence would be unfavorable to that party. A party has control of evidence when the evidence is in the actual physical custody of the party.

INSTRUCTION NO. 12A

<u>Temporary Restraining Order</u>


You are instructed that the King County Superior Court issued a temporary restraining order ("TRO") on February 5, 2009 and that the requisite bond was posted on that date. The TRO became effective upon notice of the TRO to the defendant.

1

INSTRUCTION NO. 13

2

Summary of the Claims

3

4

Straitshot brings this lawsuit against defendants to recover compensation for damages

5

allegedly sustained.  Straitshot brings this action on the basis of several separate claims,

6

asserting that:

7

8

(1)     Defendants Prudell and Radford breached their employment contracts by

9

using and divulging confidential and proprietary information and by soliciting Straitshot's

10

engineers;

11

(2)     Defendant Telekenex interfered with Straitshot's contractual relations with

12

Prudell and Radford by inducing Prudell and Radford to breach their contractual obligations

13

with Straitshot;

14

(3)     Defendants Prudell, Radford, and Summers breached a duty of loyalty while

15

they were employed at Straitshot by soliciting Straitshot's customers and/or business

16

prospects on behalf of Telekenex while employed at Straitshot and by disclosing Straitshot's

17

confidential and proprietary information to a third party while employed at Straitshot;

18

19

(4)     All defendants unlawfully interfered with Straitshot's contractual relations with

20

its customers;

21

(5)     All defendants misappropriated Straitshot's trade secrets;

22

(6)     Defendants Telekenex, Zabit, Chaney, Prudell and Radford violated the

23

Lanham Act by making false statements about Straitshot to Straitshot customers;

24

(7)     Defendants Telekenex, Zabit, Chaney, Summers, Prudell and Radford violated

25

the Consumer Protection Act by making false statements about Straitshot to Straitshot

26

customers; and

INSTRUCTION NO. 13 (page 2)

(8)     Defendant Mammoth breached its contract with Straitshot by disclosing confidential and proprietary information regarding Straitshot's system including pricing.

Straitshot claims that one or more of these acts was a cause of damage. Defendants deny these claims and, further, deny the nature and extent of Straitshot's claimed damages.

Defendant Mammoth brings a counterclaim against Straitshot for breach of contract and seeks damages allegedly sustained. Straitshot denies this claim and disputes the amount of any claim of damages.

The foregoing is merely a summary of the claims of the parties. You are not to take the same as proof of the matter claimed unless admitted by the opposing party, and you are to consider only those matters that are admitted or established by the evidence. These claims have been outlined solely to aid you in understanding the issues.

Straitshot is asserting several claims, each of which is entitled to your separate consideration. You must decide as to each claim whether Straitshot is entitled to recover. The fact that Straitshot may be entitled to recover on one claim does not mean that Straitshot is entitled to recover on another. Similarly, the fact that Straitshot may not be entitled to recover on one claim does not prevent Straitshot from recovering on another.

Mammoth is asserting a counterclaim. You must also decide that claim.

INSTRUCTION NO. 14

<u>First Claim</u>

<u>Breach of Employment Contract</u>

<u>Against Defendants Prudell and Radford</u>

Straitshot has the burden of proving by a preponderance of the evidence each of the following elements with respect to Straitshot's first claim alleging breach of contract against defendants Prudell and Radford:

 (1) That Straitshot and a defendant entered into an employment contract (Exhibits 3 and 4);

 (2) That defendant breached a term of the employment contract;

 (3) That Straitshot was not in material breach or had performed its obligations under the contract; and

 (4) That Straitshot was damaged as a result of the breach.

You are instructed that the terms of the employment contract applied regardless of whether defendant voluntarily resigned or was fired by Straitshot. You are further instructed that the terms of the employment contract did not prohibit defendant from soliciting customers of Straitshot after termination.

If you find from your consideration of all of the evidence that Straitshot has proved each of these elements as to one or both defendants, your verdict should be for Straitshot on this claim as to such defendant or defendants. On the other hand, if any of these elements has not been proved as to one or both defendants, your verdict should be for such defendant or defendants on this claim.

INSTRUCTION NO. 14A

First Claim - Second Element
Contract Interpretation


A contract is to be interpreted to give effect to the intent of the parties at the time they entered the contract.

You are to take into consideration all the language used in the contract, giving to the words their ordinary meaning, unless the parties intended a different meaning.

You are to determine the intent of the contracting parties by viewing the contract as a whole, considering the subject matter and apparent purpose of the contract, all the facts and circumstances leading up to and surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of the respective interpretations offered by the parties.

INSTRUCTION NO. 14B

<u>First Claim - Fourth Element</u>
<u>Definition of Material Breach</u>

A "material breach" is a breach that is serious enough to justify the other party in abandoning the contract. A "material breach" is one that substantially defeats the purpose of the contract, or relates to an essential element of the contract, and deprives the non-breaching party of a benefit which he or it reasonably expected.

INSTRUCTION NO. 15

<u>Second Claim</u>
<u>Interference with Contractual Relations</u>
<u>Against Defendant Telekenex</u>

Straitshot has the burden of proving by a preponderance of the evidence each of the following elements with respect to Straitshot's second claim alleging defendant Telekenex interfered with Straitshot's contractual relationship with Prudell and Radford:

(1)    That Straitshot had valid employment contracts with Prudell and Radford;

(2)    That Telekenex knew of the existence of Straitshot's contracts with Prudell and Radford;

(3)    That Telekenex intentionally induced or caused Prudell and/or Radford to breach the contract;

(4)    That Telekenex interfered for an improper purpose or used improper means; and

(5)    That Telekenex's conduct was a proximate cause of damage to Straitshot.

If you determine that Straitshot has established each of the elements of this claim by a preponderance of the evidence, then you must determine whether Telekenex has established by a preponderance of the evidence that its actions in interfering were justified under all the circumstances.  Conduct interfering with a contractual relationship may be justified if it occurs during the course of competition.  To establish the affirmative defense of competition, Telekenex has the burden of proving by a preponderance of the evidence each of the following elements:

(1)    That Telekenex's conduct related to competition between Straitshot and Telekenex;

INSTRUCTION NO. 15 (page 2)

    (2)       That Telekenex's purpose was, at least in part, to advance its interest in competing with Straitshot, and was not motivated solely by bad faith or ill will; and

    (3)       That Telekenex did not use wrongful means to compete.

      If you find from your consideration of all of the evidence that Straitshot has proved each of the elements of this claim against Telekenex and that Telekenex has not established that its actions were justified, you should find for Straitshot on this claim.  On the other hand, if any of the elements of this claim has not been proved by Straitshot, or if Telekenex has established that its actions were justified, your verdict should be for Telekenex on this claim.

INSTRUCTION NO. 15A

<u>Second Claim - Fourth Element</u>
<u>Definition of Improper Purpose and Improper Means</u>


"Interference for improper purpose" means interference with an intent to harm Straitshot.  "Interference by improper means" means interference that violates a statute, a regulation, a recognized rule of common law, or an established standard of the trade or profession.

INSTRUCTION NO. 16

<u>Third Claim</u>
<u>Breach of the Duty of Loyalty</u>
<u>Against Defendants Prudell, Radford, and Summers</u>

Straitshot has the burden of proving by a preponderance of the evidence each of the following elements with respect to Straitshot's third claim alleging breach of the duty of loyalty against defendants Prudell, Radford, and Summers:

(1)     That defendant had a duty of loyalty to Straitshot;

(2)     That defendant breached his duty of loyalty to Straitshot by (a) soliciting Straitshot's customers and/or business prospects on behalf of Telekenex while employed at Straitshot; or (b) disclosing Straitshot's confidential and proprietary information to a third party while employed with Straitshot; and

(3)     That defendant's breach of his duty of loyalty was a proximate cause of damage to Straitshot.

In determining whether defendant breached his duty of loyalty, you may not consider any misappropriation (as defined in Instruction 18B) by defendant of any trade secrets belonging to Straitshot. Straitshot has brought a separate claim for misappropriation of trade secrets, which you must decide independently of this claim.

If you find from your consideration of all the evidence that each of these elements has been proved as to one or more defendants, then your verdict should be for Straitshot on this claim as to such defendant or defendants. On the other hand, if you find that any of these elements has not been proved as to one or more defendants, your verdict should be for such defendant or defendants on this claim.

INSTRUCTION NO. 16A

<u>Third Claim - First Element</u>
<u>Definition of Duty of Loyalty</u>

An employee has a duty of loyalty to his employer which prohibits the use of confidential information obtained during employment to the detriment of his employer.

The duty of loyalty prohibits an employee, before the end of his employment, from soliciting his employer's customers and/or business prospects for his new employer.

The duty of loyalty exists, during the period of employment, even in the absence of a non-competition or non-solicitation agreement between the employer and the employee.

INSTRUCTION NO. 17

<u>Fourth Claim</u>
<u>Interference with Contractual Relations</u>
<u>Against All Defendants</u>

Straitshot has the burden of proving by a preponderance of the evidence each of the following elements with respect to Straitshot's fourth claim against all defendants for interference with contractual relations:

(1)     That Straitshot had either a valid contract or a business relationship with a third party, and that any business relationship had the probability of future economic benefit for Straitshot;

(2)     That defendant knew of the existence of the contract or business relationship;

(3)     That defendant intentionally induced or caused a breach of the contract or the termination of the business relationship;

(4)     That defendant's conduct was for an improper purpose or by improper means, as previously defined in Instruction No. 15A; and

(5)     That defendant's conduct was a proximate cause of damage to Straitshot.

An action for interference with a contractual relationship or business expectancy lies only with respect to a third party.  A party to a contract cannot be held liable in tort for inducing its own breach.

In determining whether defendant intentionally induced or caused a breach of the contract or the termination of the business relationship between Straitshot and a third party, you may not consider any misappropriation (as defined in Instruction 18B) by defendant of any trade secrets belonging to Straitshot.  Straitshot has brought a separate claim for misappropriation of trade secrets, which you must decide independently of this claim.

INSTRUCTION NO. 17 (page 2)


If you determine that Straitshot has established each of the elements of this claim by a preponderance of the evidence against one or more defendants, then you must determine whether such defendant or defendants have established by a preponderance of the evidence that the actions in interfering were justified under all the circumstances.  Conduct interfering with a contract or business relationship may be justified if it occurs during the course of competition.  To establish the affirmative defense of competition, defendant has the burden of proving by a preponderance of the evidence each of the following elements:

(1)     That the conduct of defendant related to competition between defendant and Straitshot for the business of the third party or parties;

(2)     That defendant's purpose was, at least in part, to advance defendant's interest in competing with Straitshot, and was not motivated solely by bad faith or ill will; and

(3)     That defendant did not use wrongful means to compete.

If you find from your consideration of all of the evidence that Straitshot has proved each of the elements of this claim against one or more defendants and that the same defendant or defendants have not established that their actions were justified, you should find for Straitshot on this claim against such defendant or defendants.  On the other hand, if any of the elements of this claim has not been proved by Straitshot as to one or more defendants, or if one or more defendants have established that their actions were justified, your verdict should be for such defendant or defendants on this claim.

INSTRUCTION NO. 17A

<u>Fourth Claim - Third Element</u>
<u>Acting in Concert</u>

If you find one or more defendants liable on the fourth claim you may also find other defendants intentionally induced or caused a breach of the contract or the termination of the business relationship if they acted "in concert" with the defendant or defendants you find liable.

You may find another defendant acted in concert if such defendant:

(a)     committed an act or acts in concert with a defendant you find liable or pursuant to a common design, namely of interfering with Straitshot's contract(s) or business relationship(s), with a defendant you find liable;

(b)     knew that the conduct of a defendant you find liable constituted a breach of a duty owed to Straitshot and gave substantial assistance or encouragement to such defendant to engage in such conduct; or

(c)     breached his or its own duty to Straitshot in giving substantial assistance to such other defendant you find liable in inducing or causing the breach of the contract or the termination of the business relationship.

INSTRUCTION NO. 18

<u>Fifth Claim</u>
<u>Misappropriation of Trade Secrets</u>
<u>Against All Defendants</u>

Straitshot has the burden of proving by a preponderance of the evidence each of the following elements with respect to Straitshot's fifth claim against all defendants for misappropriation of trade secrets:

(1)     That Straitshot had a trade secret;

(2)     That defendant misappropriated Straitshot's trade secrets; and

(3)     That defendant's misappropriation was a proximate cause of damage to Straitshot or that, as a result of the misappropriation, defendant received money or benefits that in justice and fairness belong to Straitshot.

If you find from your consideration of all the evidence that each of these elements has been proved as to one or more defendants, then your verdict should be for Straitshot on this claim as to such defendant or defendants.  On the other hand, if you find that any of these elements has not been proved as to one or more defendants, your verdict should be for such defendant or defendants on this claim.

INSTRUCTION NO. 18A

<u>Fifth Claim - First Element</u>
<u>Definition of Trade Secret</u>

"Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(1)     Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2)     Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Information has "independent economic value" if it gives the owner of the information a competitive advantage over others who do not know the information.  In determining whether information derives "independent economic value" from not being generally known or readily ascertainable, you may consider, among other factors, the following:

(1)     The value of the information to Straitshot and its competitors;

(2)     The amount of effort or money that Straitshot expended in developing the information;

(3)     The extent of measures that Straitshot took to guard the secrecy of the information;

(4)     The ease or difficulty of acquiring or duplicating the information by proper means; and

(5)     The degree to which third parties have placed the information in the public domain or rendered the information readily ascertainable.

INSTRUCTION NO. 18A (page 2)


In determining whether information is "readily ascertainable by proper means," you may take into consideration the following:

(1)     The time required to obtain the information without misappropriation;

(2)     The expense required to obtain the information without misappropriation;

(3)     The ease of access to the information through proper means;

(4)     The degree of skill or expertise required to obtain the information by proper means; and

(5)     The complexity, detail, novelty, uniqueness, or other attributes of the claimed secret.

In determining whether information is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy," you may consider, among other factors, the following:

(1)     The extent to which the information is known outside Straitshot's business;

(2)     The extent to which employees and others in Straitshot's business know the information;

(3)     The nature and extent of the measures Straitshot took to guard the secrecy of the information;

(4)     The existence or absence of an express agreement restricting disclosure; and

(5)     The extent to which the circumstances under which the information was disclosed to others indicate that further disclosure without Straitshot's consent was prohibited.

INSTRUCTION NO. 18A (page 3)


A trade secret may consist of one or more elements of information that is available elsewhere, for example in the public domain.  The determination you must make is whether the combination of elements or compilation of information at issue constitutes a trade secret.

INSTRUCTION NO. 18B

Fifth Claim - Second Element
Definition of Misappropriation

"Misappropriation" of a trade secret means acquisition, disclosure, or use of a trade secret of another without the express or implied consent of the owner of the trade secret by a person who:

(1)     Used improper means to acquire the trade secret; or

(2)     At the time of acquisition, disclosure, or use, knew or had reason to know that his or her knowledge of the trade secret was (a) derived from or through a person who had utilized improper means to acquire it, (b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or (c) derived from or through a person who owed a duty to Straitshot to maintain its secrecy or limit its use; or

(3)     Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

For purposes of this second (misappropriation) element of Straitshot's fifth (trade secret) claim, "improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

INSTRUCTION NO. 18C

<u>Fifth Claim - Additional Finding</u>
<u>Wilful and Malicious</u>

If your verdict is for Straitshot on its fifth claim for misappropriation of trade secrets, you must determine whether one or more defendants' misappropriation of trade secrets was wilful and malicious.  Straitshot has the burden of proving by a preponderance of the evidence that one or more defendants' misappropriation of trade secrets was wilful and malicious.  Conduct is wilful and malicious if it is accompanied by ill will or spite, or if it is for the purpose of injuring Straitshot.  Malice may be inferred from an act done in wilful disregard of the rights of another, or an act wrongfully done without just cause or excuse, or an act or omission of duty betraying a wilful disregard of social duty.

INSTRUCTION NO. 19

<u>Sixth Claim</u>
<u>False Statements in Violation of Lanham Act</u>
<u>Against Defendants Telekenex, Zabit, Chaney, Prudell, and Radford</u>

Straitshot has the burden of proving by a preponderance of the evidence each of the following elements with respect to Straitshot's sixth claim alleging false statements in violation of the Lanham Act against defendants Telekenex, Zabit, Chaney, Prudell, and Radford:

(1)     That defendant made a false or misleading statement of fact in a commercial advertisement or promotion about Straitshot;

(2)     That the statement actually deceived or had the tendency to deceive a substantial segment of its audience;

(3)     That the statement was material;

(4)     That defendant caused the statement to enter interstate commerce; and

(5)     That Straitshot has been or is likely to be injured as a result of the statement, either by direct diversion of sales or by a lessening of the goodwill associated with Straitshot's services.

If you find from your consideration of all of the evidence that defendant's advertising statement was literally false, then you must find that the statement actually deceived or had the tendency to deceive a substantial segment of its audience, and Straitshot does not have to prove this second element.  On the other hand, if you find that the statement was not literally false, Straitshot must prove all of the elements of this claim.

INSTRUCTION NO. 19 (page 2)


If you find from your consideration of all of the evidence that Straitshot has proved each of the elements of the sixth claim as to one or more defendants, your verdict should be for Straitshot on this claim as to such defendant or defendants.  On the other hand, if any of these elements has not been proved as to one or more defendants, your verdict should be for such defendant or defendants on this claim.

INSTRUCTION NO. 19A

Sixth Claim - First Element
Definition of Commercial Advertisement

To prove that the false or misleading statement was made in a "commercial advertisement," Straitshot must prove each of the following elements:

(1)     That defendant is in commercial competition with Straitshot;

(2)     That defendant's statement constitutes "commercial speech," meaning that it merely proposes a commercial transaction; negative commentary about a product, service, or company is not commercial speech;

(3)     That the purpose of the statement was to influence the purchasing decision; and

(4)     That the statement was disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry.

INSTRUCTION NO. 19B

Sixth Claim - Third Element
Definition of Materiality

To prove that a statement was "material," Straitshot must prove that the statement was likely to influence the purchasing decision.

INSTRUCTION NO. 20

<u>Seventh Claim</u>
<u>Violation of Consumer Protection Act</u>
<u>Against Defendants Telekenex, Zabit, Chaney, Summers, Prudell, and Radford</u>

Straitshot has the burden of proving by a preponderance of the evidence each of the following elements with respect to Straitshot's seventh claim against defendants Telekenex, Zabit, Chaney, Summers, Prudell, and Radford for violation of the Consumer Protection Act:

(1)     That defendant engaged in an unfair or deceptive act or practice by making false statements about Straitshot to Straitshot customers;

(2)     That the act or practice occurred in the conduct of defendant's trade or commerce;

(3)     That the act or practice affected the public interest;

(4)     That Straitshot was injured in either its business or property; and

(5)     That defendant's act or practice was a proximate cause of Straitshot's injury.

If you find from your consideration of all of the evidence that Straitshot has proved each of these elements as to one or more defendants, your verdict should be for Straitshot on this claim against such defendant or defendants.  On the other hand, if any of these elements has not been proved as to one or more defendants, your verdict should be for such defendant or defendants on this claim.

INSTRUCTION NO. 20A

<u>Seventh Claim - First Element</u>
<u>Definition of Unfair or Deceptive Act or Practice</u>

In order to prove that defendant engaged in an unfair or deceptive act or practice, it is sufficient to show that the act or practice had the capacity to deceive a substantial portion of the public.  Straitshot does not need to show that the act or practice was intended to deceive.

INSTRUCTION NO. 20B

<u>Seventh Claim - Second Element</u>
<u>Definition of Trade or Commerce</u>


The phrase "trade or commerce" includes the sale of assets or services, and any commerce directly or indirectly affecting the people of the State of Washington.  The word "assets" includes anything of value.

INSTRUCTION NO. 20C

<u>Seventh Claim - Third Element</u>
<u>Definition of Public Interest</u>

In deciding whether defendant's acts or practices "affect the public interest," you may consider the following factors, among other things:

(1)     Whether the acts or practices were done in the course of defendant's business;

(2)     Whether the acts or practices were part of a pattern or general course of conduct of business;

(3)     Whether defendant did similar acts or practices prior to the act or practice involving Straitshot;

(4)     Whether there is a real and substantial potential for repetition of defendant's conduct after the act involving Straitshot; or

(5)     If only one transaction is involved, whether many customers were affected or likely to be affected by it.

In reaching your decision, you are not required to find any one particular factor, nor are you limited to considering only these factors.

INSTRUCTION NO. 20D

<u>Seventh Claim - Fourth Element</u>
<u>Definition of Injury</u>

Straitshot has suffered an "injury" if its business or property has been injured to any degree.  Under the Consumer Protection Act, Straitshot has the burden of proving that it has been injured, but no monetary amount need be proved and proof of any injury is sufficient, even if expenses or losses caused by the violation are minimal.

Injuries to business or property include financial loss.

INSTRUCTION NO. 21

<u>Eighth Claim</u>
<u>Breach of Contract</u>
<u>Against Defendant Mammoth</u>

Straitshot and Mammoth entered into a contract (the "Mammoth Network Services Agreement"). Straitshot has the burden of proving by a preponderance of the evidence each of the following elements with respect to Straitshot's eighth claim against Mammoth for breach of contract:

(1)     That the terms of the contract included Mammoth's obligation to not disclose to any third party any confidential or proprietary information of Straitshot;

(2)     That Mammoth breached the contract by disclosing Straitshot's confidential or proprietary information to a third party;

(3)     That Straitshot was not in material breach as defined in Instruction 14B or had performed its obligation under the contract; and

(4)     That the breach caused damage to Straitshot.

If you find from your consideration of all of the evidence that Straitshot has proved each of these elements, your verdict should be for Straitshot on this claim. On the other hand, if any of these elements has not been proved, your verdict should be for Mammoth on this claim.

INSTRUCTION NO. 22 (None)

INSTRUCTION NO. 23

Mammoth's Counterclaim
for Breach of Contract
Against Straitshot

Straitshot and Mammoth entered into a contract (the "Mammoth Network Services Agreement").  Mammoth has the burden of proving by a preponderance of the evidence each of the following elements with respect to its counterclaim against Straitshot for breach of contract:

(1)     That the terms of the contract included Straitshot's obligation to pay Mammoth within 30 days after Mammoth issued each invoice to Straitshot;

(2)     That Straitshot breached the contract;

(3)     That Mammoth was not in material breach as defined in Instruction 14B or had performed its obligation under the contract; and

(4)     That the breach caused damage to Mammoth.

If you find from your consideration of all the evidence that each of these elements has been proved, your verdict should be for Mammoth on this counterclaim.  On the other hand, if any of these elements has not been proved, your verdict should be for Straitshot on this counterclaim.

INSTRUCTION NO. 24

Causation

A cause of an event is a "proximate cause" if it is related to the event in two ways: (1) the cause produced the event in a direct sequence, and (2) the event would not have happened in the absence of the cause.  An event may have more than one proximate cause. If you find that a defendant's conduct was a proximate cause of damage to Straitshot, it is not a defense that another defendant's or a third-party's actions, or an independent event or factor, was also a proximate cause of such damage.  On the other hand, if you find that the sole proximate cause of damage to Straitshot, as to a particular claim or claims, was an action, event, or factor unrelated to a defendant's conduct, your verdict should be for such defendant on such claim or claims.

A superseding cause is a new independent cause that breaks the chain of proximate causation between a defendant's conduct and an event.  If you find that a defendant engaged in the conduct alleged by Straitshot, but that the sole proximate cause of damage to Straitshot was a later independent intervening act by another defendant, a third party, or Straitshot, and that the defendant, in the exercise of ordinary care, could not reasonably have anticipated the later independent intervening act, then the defendant's conduct is superseded and is not a proximate cause.  If you find, however, that a defendant engaged in the conduct alleged by Straitshot, and that the defendant, in the exercise of ordinary care, should reasonably have anticipated the later independent intervening act, then such act does not supersede the

INSTRUCTION NO. 24 (page 2)


defendant's original conduct and you may find that defendant's conduct was a proximate

cause of damage to Straitshot.

INSTRUCTION NO. 25

<u>Damages</u>

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

<u>Straitshot's Actual Damages</u>:  If you find for Straitshot on any of its claims, then you must determine Straitshot's Actual Damages.  Straitshot has the burden of proving its Actual Damages, if any, by a preponderance of the evidence.  Actual Damages means the amount of money that will reasonably and fairly compensate Straitshot for the loss in the value of the business, if any, proximately caused by a defendant or defendants.

<u>Additional or Different Damages</u>:  If you find for Straitshot on either its fifth claim for misappropriation of trade secrets or its sixth claim for false statements in violation of the Lanham Act, then you must determine whether to award, in addition to Actual Damages, Telekenex's profits.  If you find for Straitshot on its eighth claim for breach of contract against Mammoth, you may award only nominal damages.  As to each of these three claims, I will provide you with further instructions.

<u>Mammoth's Actual Damages</u>:  If you find for Mammoth on its counterclaim for breach of contract, then you must determine Mammoth's Actual Damages.  Mammoth has the burden of proving its Actual Damages, if any, by a preponderance of the evidence.  Actual Damages means the amount of money that will reasonably and fairly compensate

INSTRUCTION NO. 25 (page 2)

Mammoth for any injury you find was caused by Straitshot.  I will provide you with an

additional instruction on this topic.

      <u>Your Duty</u>:  It is for you to determine what damages, if any, have been proved.  Your

award must be based upon evidence and not upon speculation, guesswork or conjecture.

INSTRUCTION NO. 25A

<u>Measure of Damages</u>

<u>Fifth and Sixth Claims</u>
<u>Misappropriation of Trade Secrets</u>
<u>and False Statements in Violation of the Lanham Act</u>

<u>Telekenex's Profits</u>

<u>Telekenex's Profits</u>:  If your verdict is for Straitshot on its fifth claim for

misappropriation of trade secrets against Telekenex, then in addition to Actual Damages,

Straitshot is entitled to recover against Telekenex any profits earned by Telekenex that are

attributable to Telekenex's use of the misappropriated trade secrets.  If your verdict is for

Straitshot on its sixth claim for false statements in violation of the Lanham Act against

Telekenex, then in addition to Actual Damages, Straitshot is entitled to recover against

Telekenex any profits earned by Telekenex that are attributable to Telekenex's false

statements in violation of the Lanham Act.  You may not include in any award of

Telekenex's profits any amount that you took into account in determining Actual Damages.

You may not award Telekenex's profits against any defendant other than Telekenex.

   <u>Burden of Proof as to Telekenex's Profits</u>:  Straitshot has the burden of proving

Telekenex's gross revenue by a preponderance of the evidence.  Gross revenue is all of such

defendant's receipts from sales that you find were attributable to the alleged conduct, namely

the misappropriation of trade secrets in the fifth claim and the false statements in violation of

the Lanham Act in the sixth claim.  Telekenex's profits are determined after deducting such

defendant's expenses from such defendant's gross revenue.

INSTRUCTION NO. 25A (page 2)


Telekenex has the burden of proving its own deductible expenses by a preponderance of the evidence.  Deductible expenses are all the overhead and production costs actually incurred in generating such defendant's gross revenue.

Telekenex also has the burden of proving by a preponderance of the evidence that some or all of its gross revenue are not attributable to the alleged conduct, namely the use of the misappropriated trade secrets in the fifth claim and the false statements in violation of the Lanham Act in the sixth claim.

INSTRUCTION NO. 25B

Measure of Damages

Eighth Claim
Breach of Contract
Against Mammoth


If your verdict is for Straitshot on its eighth claim for breach of contract, your award of damages is subject to the limitations set forth in the parties' contract. Ordinarily, a non-breaching party is entitled to recover such an amount as would place it in the condition it would have been in if the other party had adequately performed the contract, less any cost or other loss that the non-breaching party avoided by not having to perform. In this case, however, in their contract, the parties agreed that neither party would be liable for "any indirect, consequential, exemplary, special, reliance, cost of cover, incidental, or punitive damages (including without limitation, lost business, revenue, profits, or goodwill)." Thus, for purposes of Straitshot's eighth claim for breach of contract, you may not award to Straitshot any lost revenue or profits, any diminution in Straitshot's goodwill, or any other item of damages excluded by the parties' contract. You may, however, award to Straitshot nominal damages, which means a small sum fixed without regard to the amount of loss.

INSTRUCTION NO. 25C

Measure of Damages

Mammoth's Counterclaim
Breach of Contract
Against Straitshot

If your verdict is for Mammoth on its counterclaim for breach of contract, you may award to Mammoth those reasonably foreseeable damages that directly resulted from the breach, subject to the limitations set forth in the parties' contract.  Ordinarily, a non-breaching party is entitled to recover such an amount as would place it in the condition it would have been in if the other party had adequately performed the contract, less any cost or other loss that the non-breaching party avoided by not having to perform.  In this case, however, in their contract, the parties agreed that neither party would be liable for "any indirect, consequential, exemplary, special, reliance, cost of cover, incidental, or punitive damages (including without limitation, lost business, revenue, profits, or goodwill)."  Thus, for purposes of Mammoth's breach of contract counterclaim, you may award to Mammoth the amount owing under the contract for services rendered, but you may not award to Mammoth any lost revenue or profits, any diminution in Mammoth's goodwill, or any other item of damages excluded by the parties' contract.

INSTRUCTION NO. 26

<u>Mitigation of Damages</u>

Both Straitshot, in its claims, and Mammoth, in its counterclaim, have a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

With respect to Straitshot's claims, defendants have the burden of proving by a preponderance of the evidence:

(1)     That Straitshot failed to use reasonable efforts to mitigate damages; and

(2)     The amount by which damages would have to be mitigated.

With respect to Mammoth's counterclaim, Straitshot has the burden of proving by a preponderance of the evidence:

(1)     That Mammoth failed to use reasonable efforts to mitigate damages; and

(2)     The amount by which damages would have to be mitigated.

INSTRUCTION NO. 27

<u>Duplication of Damages</u>

Straitshot seeks recovery against each defendant on more than one theory of damages. If you find that Straitshot is entitled to recover, you should indicate each measure of damages.  Your separate awards of damages could result in a duplication of damages.  You should not concern yourselves with this issue.  The Court will correct for any duplication of damages you might award so that Straitshot under no circumstances would collect a double recovery.

INSTRUCTION NO. 28

<u>Deliberation</u>

Upon retiring to the jury room for your deliberation of this case, your first duty is to select a presiding juror to act as chairperson.  It is his or her duty to see that discussion is carried on in a sensible and orderly fashion, that the issues submitted for your decision are fully and fairly discussed, and that every juror has a chance to express himself or herself and participate in the deliberations upon each question before the jury.

You will be furnished with all the exhibits, these instructions and a suitable form of verdict.

This being a civil case, all of you must agree upon a verdict.  When you have so agreed, fill in the proper form of verdict to express the results of your determination.  The presiding juror will sign and date it and announce your agreement to the clerk who will conduct you into court to declare your verdict.

INSTRUCTION NO. 29

<u>Reaching Agreement</u>

Each of you must decide the case for yourself, but you should do so only after considering all the evidence, discussing it fully with the other jurors, and listening to the views of the other jurors.

Do not be afraid to change your opinion if you think you are wrong.  But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to return a verdict but, of course, only if each of you can do so after having made his or her own conscientious determination.  Do not surrender an honest conviction as to the weight and effect of the evidence simply to reach a verdict.

Your verdict must be based solely on the evidence and on the law as I have given it to you in these Instructions.

INSTRUCTION NO. 30

<u>Communication with Court</u>

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court.  Remember that you are not to tell anyone -- including me -- how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

If you send a note to me, there will be some delay in my response because I will discuss the note with the lawyers before preparing a response.

INSTRUCTION NO. 31

<u>Verdict</u>

After you have reached unanimous agreement on a verdict, your presiding juror will fill in, date, and sign the verdict form and advise the court that you have reached a verdict.