UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STRAITSHOT COMMUNICATIONS, INC., a
Washington corporation, and STRAITSHOT RC,
LLC, a Delaware limited liability company,

No. C10-268Z

                    Plaintiffs,

v.

SPOLIATION FINDINGS OF FACT
AND CONCLUSIONS OF LAW

TELEKENEX, INC., a Delaware corporation;
IXC HOLDINGS, INC., a Delaware corporation;
MARK PRUDELL and JOY PRUDELL,
husband and wife and the marital community
composed thereof; MARK RADFORD and
NIKKI RADFORD, husband and wife and the
marital community composed thereof; JOSHUA
SUMMERS and JULIA SUMMERS, husband
and wife and the marital community composed
thereof; ANTHONY ZABIT and KAREN
SALAZAR, husband and wife and the marital
community composed thereof; BRANDON
CHANEY and DEANNA CHANEY, husband
and wife and the marital community composed
thereof; MAMMOTH NETWORKS, LLC, and
BRIAN WORTHEN and NIKKI WORTHEN,
husband and wife and the marital community
composed thereof,

                    Defendants.
_____

MAMMOTH NETWORKS, LLC, a Wyoming
limited liability company,

                    Counterclaimant,

v.

STRAITSHOT COMMUNICATIONS, INC., a
Washington corporation,

                    Third-Party Defendant.

SPOLIATION FINDINGS OF FACT AND CONCLUSIONS OF LAW - 1

1

## INTRODUCTION

2

3
          This matter came before the Court on Straitshot Communications, Inc. and Straitshot

4
RC, LLC's motion in limine seeking sanctions against Defendants Telekenex, Inc., IXC

5
Holdings, Inc., Brandon Chaney, Deanna Chaney, Anthony Zabit, Karen Salazar, Joshua

6
Summers, and Julia Summers for spoliation and failure to produce documents during

7
discovery (docket no. 278).  The Court gave an instruction to the jury at trial on spoliation,

8
but otherwise deferred ruling on Plaintiffs' motion.  See Minute Order (docket no. 316).

9
          The Court has considered all of the declarations and exhibits filed with the motion, the

10
exhibits admitted into evidence at trial, the testimony of witnesses at trial, and the arguments

11
of counsel.  The Court being fully advised, now enters the following Findings of Fact and

12

13
Conclusions of Law.

14
**The Parties**

15
          1.        Plaintiff Straitshot Communications, Inc. was a corporation organized under

16
the laws of the State of Washington and authorized to conduct business in the State of

17

18
Washington.  Plaintiff Straitshot RC, LLC, is a Delaware limited liability company.

19
(Straitshot Communications, Inc. and Straitshot RC, LLC are collectively referred to as

20
"Plaintiff" or "Straitshot").

21
          2.        Defendant Telekenex, Inc. ("Telekenex") is a Delaware corporation, registered

22
to do business in Washington.  Defendant IXC Holdings, Inc. ("IXC Holdings") is a

23

24
corporation organized under the laws of the State of Delaware.  IXC Holdings maintains an

25

SPOLIATION FINDINGS OF FACT AND CONCLUSIONS OF LAW - 2

office in Seattle, Washington and is registered to do business in the State of Washington. IXC Holdings is the successor in interest to Telekenex.

3. Defendants Joshua Summers ("Summers") and Julia Summers are Washington residents and husband and wife, constituting a marital community. Summers started his employment as a network engineer and progressed to the point that he was part of the management team at Straitshot by 2008. As part of the management team, Summers was involved in all aspects of strategy involving the growth of the company and how to resolve complex issues that Straitshot customers were having with their networks. During at least 2008 and until he resigned in 2009, Summers managed all of the Straitshot engineers. Summers resigned on January 27, 2009 by email. Tr. Ex. A-232.

**Summers's Use of Straitshot's Laptop and Deletion of Files**

4. On January 27, 2009, when Summers submitted his resignation, Summers was in possession of miscellaneous property of Straitshot, including computer equipment and files. Jan 27 Trial Tr. at 29-30.

5. Between January 27 and February 5, Straitshot requested Summers to provide assistance to Straitshot customers, which he provided. Trial Exs. A-82, A-234, A-236, A-237, A-238, A-240, A-242. He was paid by Straitshot during this time. During this time period, Summers was also working for Telekenex to transition Straitshot customers to Telekenex. Jan 27 Trial Tr. at 5-29; Trial Exs. 52, 57, 95, 234. This included organizing a Telekenex "Transition Team" to move Straitshot customers and distributing to Telekenex a

SPOLIATION FINDINGS OF FACT AND CONCLUSIONS OF LAW - 3

script to use with such customers.  Summers drafted the script used by Telekenex in an

attempt to have Straitshot customers migrate to Telekenex.

6.      On or about February 6, 2009, Summers spoke with Telekenex counsel and

became aware of litigation between Straitshot and Telekenex.  On February 6, 2009,

Summers sent an e-mail to Andrew Gold, the CEO of Straitshot, telling Gold he felt there

was a conflict, and that he would cease assisting Straitshot.  Summers testified that "shortly

thereafter" he "shut down all my access" and "ceased my abilities to help them out."  Jan 27

Trial Tr. at 25-26; Trial Ex. A-242.  At all times material after February 6, 2009, Summers

worked exclusively for Telekenex.

7.      On February 11, 2009, Summers returned the majority of the Straitshot

property in his possession to Straitshot's CFO Phil Howe at the Bel-Red storage locker, but

maintained possession of his Straitshot laptop.  Jan 27 Trial Tr. at 30-33.  The Straitshot

laptop, which was provided to Summers sometime in 2007, contained confidential Straitshot

customer information and data that showed how each Straitshot customer's network was

built, the kind of circuits each Straitshot customer had, the IP addresses of the Straitshot

customer circuits, when Straitshot had installed its customer circuits, the underlying carriers

for the Straitshot customer circuits, the amount of Straitshot monthly revenue derived from

each of Straitshot customers, and other confidential information belonging to Straitshot.  Jan

27 Trial Tr. at 56; Decl. of Andrew Gold in Supp. of Plaintiffs' in Limine Motions ¶¶ 4-5,

docket no. 279; Ex. 28 to Decl. of Leonard Gail in Supp. of Straitshot's Motions in Limine,

SPOLIATION FINDINGS OF FACT AND CONCLUSIONS OF LAW - 4

docket no. 280-3 ("Gail Decl."). The Straitshot laptop required a user name and a complex password in order to log on. Jan 27 Trial Tr. at 62.

8.      On February 13, 2009, Straitshot obtained a second temporary restraining order in King County Superior Court against "Telekenex, Inc. and its employees", "requiring Telekenex employee Joshua Summers to produce to Plaintiff's Counsel the Straitshot laptop in his possession." Trial Ex. 108. Summers received actual notice of the TRO on or about February 13, 2009. Jan 27 Trial Tr. at 66-67. On the same day, Summers called Howe to tell him the Straitshot laptop was in the Straitshot storage locker. Decl. of Phil Howe, Ex. 6. to Gail Decl. Howe again searched the storage locker and was unable to locate the missing laptop.

9.      On February 14, 2009, Summers used the Straitshot laptop to access a CD-ROM containing a file "Engineering Contacts." Expert Report of Eric Laykin ("Laykin Report") ¶ 18(c), Ex. 3 to Gail Decl.

10.      On February 15, Summers emailed Howe "I just wanted to email you and get confirmation that you received everything from me in regards to equipment. If I don't receive word by tuesday [sic] then I will assume this is confirmed. Thanks!" Trial Ex. A-248.

11.      On February 16, 2009, Summers signed a declaration under oath stating that "[o]n February 12th, I gave back all the hardware I had in my possession." Trial Tr. at 63-64. This declaration was filed in the King County Superior Court on February 17, 2009,

SPOLIATION FINDINGS OF FACT AND CONCLUSIONS OF LAW - 5

under cause no. 09-2-06611-6.  On the same day, Summers undertook various activities on the Straitshot laptop, including, without limitation, installing Windows Vista and partitioning the laptop's hard drive, the effect of which was to make deleted documents difficult or impossible to recover.  Summers thereafter continued to use the Straitshot laptop, delete files, and make alterations to the Straitshot laptop.  Laykin Report ¶ 23.  At trial, Summers admitted installing the Windows Vista program on the Straitshot laptop.

12.     On February 17, Summers created a new Telekenex folder on the Straitshot laptop containing Straitshot business information.  Laykin Report, ¶ 18.

13.     On February 18, 2009, Straitshot attorney Maureen Mitchell emailed Telekenex about the missing Straitshot laptop; the email was forwarded to Summers on the same day.  February 18, 2009 Mitchell email, Ex. 23 to Gail Decl.  Also on February 18, 2009, Straitshot obtained another state court TRO against "Telekenex, Inc. and its employees" (the "Amended 2nd TRO") "requiring Summers to make a diligent search for and produce the Straitshot laptop in his possession," and not to tamper with or alter the Straitshot laptop.  Trial Ex. 111.  On February 18, 2009, Summers had actual knowledge of the amended 2nd TRO.  On February 19, Summers deleted ten Excel files from the Straitshot laptop.  Laykin Report ¶ 25(d).

14.     On February 24, 2009, Summers ran a program on the Straitshot laptop, known as "RegEdit," the effect of which permanently destroyed or modified evidence of external devices attached to the Straitshot laptop, records of deleted files, and other user activity.  Laykin Report ¶ 25(g).

SPOLIATION FINDINGS OF FACT AND CONCLUSIONS OF LAW - 6

15.     On March 5, 2009, Summers shut down the Straitshot laptop for the last time. Laykin Report ¶ 23.

16.     On March 9, 2009, Summers sent a text message to Straitshot's CFO, Phil Howe, stating: "I finally went through all my closet and found the laptop bag behind a box. I can meet you tomorrow morning to give it to you?" Trial Ex. A-251.  On March 13, Summers delivered the missing Straitshot laptop to Straitshot's attorney.

17.     On March 18, 2009, the King County Superior Court issued an order on Plaintiff's Motion for Contempt, finding that "Defendants failed to timely deliver the laptop…[and] violated the [Amended 2nd TRO]." Trial Ex. 705.

18.     On August 3, 2009, Summers was deposed for the first time in this case and denied using the Straitshot laptop for Telekenex activities once he began working at Telekenex.  He claimed to have "stored" the laptop in the same place with the rest of the computer equipment, and he claimed to have no recollection of the last time he booted it up or of having used it during the time he worked for Telekenex.  Summers Aug. 3, 2009 Deposition at 63–65, Ex. 10 to Gail Decl.

19.     On October 7, 2010, Straitshot computer forensic expert, Erik Laykin, completed a report uncovering the computer usage described above and finding numerous occasions between February 16 and March 5, 2009 when Summers used the Straitshot laptop and destroyed various files.  Laykin Report ¶ 25.  Laykin testified at trial that the pattern of activity on the laptop demonstrated a deliberate effort to delete information on the laptop without leaving a pattern or signature on the hard drive and to try to remove the possibility of

SPOLIATION FINDINGS OF FACT AND CONCLUSIONS OF LAW - 7

reconstructing deleted files.  Laykin Report ¶ 23.  The Laykin Report was not admitted into

evidence at trial.  However, Laykin testified as an expert witness at trial about the report.

Trial Ex. 10.12 is a copy of the browser history that Laykin recovered from the Straitshot

laptop.  This history establishes that after the TRO was entered on February 13, 2009, a

search was run the next day for "data," and "forensics tools."  The Court finds that Laykin

testimony at trial was credible and adopts Laykin's conclusions in the report as findings of

fact.

20.    The Court finds that Summers' use of the Straitshot laptop during the period of

February 18, 2009 through March 5, 2009 was a deliberate effort to use and then conceal his

use of the Straitshot laptop.

21.    Laykin recovered several emails from the laptop, including a deleted February

11, 2009 email that Summers sent to the Telekenex "Transition Team," including Zabit,

which regarded "Access to the Straitshot Network," in which Summers states: "Someone has

changed the passwords for all the existing Straitshot equipment.  We are no longer able to get

into the routers or access customer routers.  Just keep this in mind when you are working

with customers on transition."  Trial Ex. 293.  This email, although requested by Straitshot

during discovery, was not produced in discovery.  Stipulations, docket no. 377, at Stipulation

No. 5.[1]  Other documents not produced in discovery include:

///

---

[1]Although the stipulation refers to the email as from January 11, 2009, the Court is satisfied the email is from February 11, 2009.

SPOLIATION FINDINGS OF FACT AND CONCLUSIONS OF LAW - 8

a. A January 29, 2009, email from Larry Bani to Aaron Kanahele, Tim Healy, Lorenzo Henderson, Leonard Williams, Dominick Nboli, Benjamin Jones, Jon Rief, and Oscar Molnar, carbon copying Karen Salazar, Heather Currie, Joel Ciniero, Felix Stuckey, Mark Prudell, Mark Radford, Brandon Chaney, Anthony Zabit, and Ralph Romero.  Trial Ex. 7.

b. A January 31, 2009, email from Anthony Zabit to Anthony Zabit with an excel file attachment entitled "copy of circuits back-up working.xls."  Trial Ex. 10.06.

c. A January 31, 2009, email from Anthony Zabit to Sunil Modi, John Holst, Joshua Summers, and Charles Hampton forwarding an excel file attachment entitled "copy of circuits back-up working.xls."  Trial Ex. 10.06.

d. A March 3, 2009, email from Joshua Summers to Darek Niedojadlo with the subject of "Existing Straitshot Customer Information for Monitoring:" which attaches an excel file entitled "Carrier Mappings-v2.xls."  Trial Ex. 10.07.

e. A February 11, 2009 Email from Joshua Summers to Stefan Dickason with the subject "Contact Sheet for Straitshot Carriers" with an attached excel file entitled "Engineering_Contacts v.3.xls."  Trial Ex. 10.10.

f. A January 30, 2009 email from Sunil Modi to Larry Bani and Karen Salazar, carbon copying Defendant Mark Prudell and Defendant Mark Radford with the subject "Dodge Chrysler Jeep of Rairdon – Old Straitshot Customer."  Trial Ex. 22.01.

SPOLIATION FINDINGS OF FACT AND CONCLUSIONS OF LAW - 9

g. A February 5, 2009, email from Sunil Modi to John Holst, Mark Prudell, and Mark Radford, carbon copying Joshua Summers, Charles Hampton, and Archie Acosta with the subject "Inked Customers."  Trial Ex. 22.02.

h. An email string ending on January 26, 2009, between Mark Prudell and Murray Barsch with the subject of "my contact info."  Trial Ex. 818.

i. An email string ending on February 9, 2009, between Scott McKay, Charles Hampton, and Marilou King with the subject of "Scott McKay's Resume, Per Our Conversation & Thank You" with an attached file titled "Scott_McKay Charles 01.30.09.doc."  Trial Ex. 23.02.

Stipulations, docket no. 377.  These documents, recovered by Laykin but not produced in discovery, demonstrate a deliberate effort to conceal the actions of the defendants.

22.    On November 16, 2010, Summers was deposed again in this litigation, after he had received the Laykin report. Jan 27 Trial Tr. at 61.  During this deposition and at trial, Summers testified to have "mistakenly" used the Straitshot laptop which he thought was a Telekenex laptop.  At trial, Summers testified that he was only able to ascertain that he was mistakenly using the Straitshot laptop as his Telekenex laptop when he checked the serial number. Jan 27 Trial Tr. at 32.  He testified, however, that he continued using the laptop even after he discovered it was the wrong laptop. Jan 27 Trial Tr. at 77.  Summers claimed that his mistake explains why he thought he had returned the laptop in February and why he didn't actually return it until March 13.  Summers testified that between February and March he used the laptop continuously for Telekenex work. Jan 27 Trial Tr. at 40-41.

SPOLIATION FINDINGS OF FACT AND CONCLUSIONS OF LAW - 10

23.     Summers did not tell anyone at Straitshot in February or March 2009 that he had mistakenly used the Straitshot laptop thinking it was a Telekenex laptop.  The first time Summers told anyone at Straitshot about his alleged "mistaken" use of the Straitshot laptop was after he had read the Laykin Report in the Fall of 2010.

24.     The testimony of Joshua Summers concerning his use of the Straitshot laptop at his deposition on August 3, 2009, his deposition on November 16, 2010, and at trial was not credible.  The Court finds Summers intentionally and wrongfully used the Straitshot laptop after the TRO dated February 13, 2009, and his testimony to the contrary is not credible.

25.     The Court finds that Summers knew that he was in possession of the laptop and deliberately and in bad faith made substantial alterations and deletions to the laptop in violation of the February 13, 2009 and February 18, 2009 temporary restraining orders.

26.     The Court concludes that Summers failed to timely deliver the Straitshot laptop and intentionally violated the Amended 2nd TRO.

27.     The Court finds that at all times material between February 6, 2009 and March 5, 2009, Summers was an employee of Telekenex and was engaged in the performance of duties required of him by Telekenex.  The Court finds that the use of the Straitshot laptop and the deletion of files was conducted in furtherance of the business of Telekenex.

28.     Straitshot has failed to present evidence that any other Telekenex employee violated the Amended 2nd TRO by failing to make a diligent search for the Straitshot laptop, by failing to deliver the laptop, or by tampering with or altering the laptop.

SPOLIATION FINDINGS OF FACT AND CONCLUSIONS OF LAW - 11

**SANCTIONS FOR DESTRUCTION OF AND FAILURE TO PRODUCE EVIDENCE**

29.     "Under its 'inherent powers,' a district court may…award sanctions in the form of attorneys' fees against a party or counsel who acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  Leon v. IDX Systems Corp., 464 F.3d 951, 961 (9th Cir. 2006) (quoting Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (upholding award of attorney's fees for spoliation).  Bad faith may be demonstrated by hampering enforcement of a court order.  Id.

30.     Straitshot is entitled, pursuant to the Court's inherent authority, to sanctions against defendants Joshua Summers and Julia Summers for Summers' violation of the State Court's 2nd TRO and Amended 2nd TRO, his destruction of evidence on the Straitshot-owned laptop computer and his failure to produce responsive documents, as demonstrated by the non-production of documents recovered from the same laptop.

31.     At all times Summers used the laptop and deleted files between February 6, 2009 and March 5, 2009, Summers was an employee of Telekenex and acting within the scope of his employment.  Accordingly, Straitshot is entitled to sanctions under the doctrine of respondeat superior against Telekenex, and its successor in interest IXC Holdings, for Summers' destruction of evidence on the Straitshot-owned laptop computer and his failure to produce responsive documents.  Dickinson v. Edwards, 105 Wn.2d 457, 466-70 (1986).

SPOLIATION FINDINGS OF FACT AND CONCLUSIONS OF LAW - 12

32.     The Court awards sanctions in favor of Plaintiff Straitshot and against

Joshua Summers, Julia Summers, Telekenex, and IXC Holdings as follows: (1)

Straitshot's costs in attempting to identify and recover the destroyed documents,

including expert costs and fees of Erik Laykin; and (2) Straitshot's reasonable

attorneys' fees in pursing the destroyed documents and the documents that Summers

and/or Telekenex failed to produce, and (3) Any other costs to Plaintiff caused by the

defendants' conduct related to the Straitshot laptop.

DATED this 6th day of March, 2012.

_____
Thomas S. Zilly
United States District Judge

SPOLIATION FINDINGS OF FACT AND CONCLUSIONS OF LAW - 13