1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

STRAITSHOT COMMUNICATIONS,
INC., et al.,

9

Plaintiffs,

10

v.

11

TELEKENEX, INC., et al.,

12

Defendants.

C10-268 TSZ

ORDER

13

THIS MATTER comes before the Court on plaintiffs' motions for spoliation

14

sanctions, docket no. 511, and for attorney's fees and costs pursuant to Washington's

15

Consumer Protection Act ("CPA"), docket no. 512.  Having reviewed all papers filed in

16

support of, and in opposition to, each motion, the Court enters the following Order.

17

**Background**

18

Plaintiff Straitshot Communications, Inc. ("Straitshot") commenced this action in

19

King County Superior Court on February 5, 2009.  *See* Ex. 5 to Martin Decl. pursuant to

20

Local Rule CR 101(b) (docket no. 4-6); *see also* Complaint, Ex. 1 to Praecipe (docket

21

no. 28-2).  The complaint was amended twice before the matter was removed to this

22

Court on February 12, 2010, based on federal question jurisdiction, Straitshot having

23

added in its Second Amended Complaint a claim under the Racketeer Influenced and Corrupt Organizations ("RICO") statute, specifically 18 U.S.C. § 1962.  _See_ Notice of Removal (docket no. 1); _see also_ Second Amended Complaint, Ex. A to Notice of Removal (docket no. 1-2).  The Court subsequently dismissed the RICO claim, as well as a claim under a similar state statute, without prejudice and with leave to amend.  Order (docket no. 139).  By Fourth Amended Complaint, Straitshot RC, LLC ("SRC LLC") was added as a plaintiff, and the federal and state RICO claims were realleged.  _See_ Fourth Amended Complaint (docket no. 173).  By Fifth Amended Complaint, defendant Telekenex, Inc.'s successor-in-interest, IXC Holdings, Inc. (collectively "Telekenex"), was named as a defendant.  Fifth Amended Complaint (docket no. 175).  A few months later, the Court granted summary judgment against plaintiffs, and dismissed the federal and state RICO claims, as well as a claim for "corporate disregard," with prejudice.  Order (docket no. 229).  The Fifth Amended Complaint was the operative pleading for the remainder of the case.

The case proceeded to trial on eight claims asserted by plaintiffs against various defendants and one counterclaim asserted by defendant Mammoth Networks, LLC ("Mammoth") against plaintiffs.  _See_ Court's Instructions (docket no. 388).  After hearing evidence and counsel's arguments over a 14-day period and deliberating for 2½ days, the jury rendered a verdict as follows:

| Claim No. | Theory of Relief | Defendant(s) | Verdict in Favor of | Damages |
|---|---|---|---|---|
| 1 | Breach of Contract | Prudell Radford | Plaintiffs | $0 |
| 2 | Tortious Interference | Telekenex | Telekenex | N/A |

ORDER - 2

| Claim No. | Theory of Relief | Defendant(s) | Verdict in Favor of | Damages |
|---|---|---|---|---|
| 3 | Breach of Loyalty | Prudell<br>Radford<br>Summers | Plaintiffs, except as to Radford | $6,490,000* |
| 4 | Tortious Interference | All Defendants | Plaintiffs, except as to Mammoth/Worthen | $6,490,000* |
| 5 | Trade Secret Misappropriation | All Defendants | Defendants | N/A |
| 6 | Lanham Act Violation | Telekenex<br>Zabit<br>Chaney<br>Prudell<br>Radford | Defendants | N/A |
| 7 | Consumer Protection Act | Telekenex<br>Zabit<br>Chaney<br>Summers<br>Prudell<br>Radford | Plaintiffs, except as to Summers | $6,490,000* |
| 8 | Breach of Contract | Mammoth | Mammoth | N/A |
| CC | Breach of Contract | Plaintiffs | Mammoth | $674,431 |

*See* Verdict (docket no. 403); *see also* Judgment (docket no. 411).  Plaintiffs' award of damages (indicated with an asterisk in the foregoing chart) is the same regardless of the theory of relief on which it is based.  *See* Judgment (docket no. 411); *see also* Court's Instruction No. 27 (docket no. 388).

After the jury reached its verdict, the Court entered two separate sets of findings of fact and conclusions of law, one concerning the affirmative defenses of estoppel, waiver, and the doctrine of unclean hands, and the other regarding spoliation and the failure to produce documents during discovery.  *See* Findings of Fact and Conclusions of Law (docket no. 410); Spoliation Findings of Fact and Conclusions of Law (docket no. 416) [hereinafter "Spoliation FFCL"].  In the former, the Court concluded that the affirmative defenses had not been proven, and in the latter, the Court awarded sanctions in favor of plaintiffs and against defendants Joshua and Julia Summers, Telekenex, Inc., and IXC

ORDER - 3

1   Holdings, Inc. for (i) costs in attempting to identify and recover destroyed documents,

2   including the fees and costs of expert Erik Laykin; (ii) reasonable attorney's fees in

3   pursuing the destroyed documents and documents that Summers and/or Telekenex failed

4   to produce; and (iii) other costs caused by defendants' conduct related to the Straitshot

5   laptop.  Spoliation FFCL No. 32 (docket no. 416 at 13).   In their pending motion

6   seeking to quantify these sanctions, docket no. 511, plaintiffs request a total award of

7   $519,074.99, which includes (i) $185,769.72 in costs, including the charges of expert

8   Erik Laykin of Duff & Phelps, LLC; (ii) attorney's fees in the amount of $222,203.51,

9   adjusted in light of defendants' response identifying certain computational errors and

10  other discrepancies, _see_ Reply (docket no. 551); and (iii) a multiplier of 1.5, which

11  plaintiffs argue is warranted by contingency enhancements plaintiffs are contractually

12  obligated to pay to their attorneys.

13          In their other pending motion for attorney's fees and costs pursuant to the CPA,

14  docket no. 512, plaintiffs originally asked for $3,385,983.92, but revised the figure to

15  $3,145,861.56, conceding as to some but not all of defendants' challenges regarding the

16  calculation of the lodestar amount and the inclusion of non-compensable costs.  _See_

17  Reply (docket no. 549).  The total requested by plaintiffs includes:  (i) $1,955,460.39 in

18  attorney's fees accrued by three different law firms; (ii) $212,670.97 in expenses,

19  including attorney's fees charged by two other law firms; and (iii) a multiplier of 1.5 to

20  reflect the contingent nature of the litigation, its alleged difficulty, and the perceived

21  quality of the services provided.  In preparing their motion, plaintiffs represent that they

22

23

ORDER - 4

1   have excluded time spent on matters unrelated to the CPA claim, for example, the federal

2   and state RICO claims and the claims between plaintiffs and Mammoth.[1]

3   **Discussion**

4   **A.      Spoliation**

5          The Court's authority to impose sanctions for spoliation of evidence is derived

6   from two sources:  (i) the inherent power of federal courts to take appropriate measures in

7   response to abusive litigation practices, and (ii) the available remedies outlined in Federal

8   Rule of Civil Procedure 37 when a party fails to comply with a duty or obey an order to

9   provide or permit discovery.  *See* *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir.

10  2006).  Sanctions may take the form of attorney's fees against a party who acts in "bad

11  faith, vexatiously, wantonly, or for oppressive reasons."  *Id.* at 961.  The Court has

12  already found that defendant Joshua Summers engaged in bad faith spoliation of evidence

13  and that he did so while an employee of Telekenex and acting within the scope of his

14  employment.  *See* Spoliation FFCL Nos. 25 & 31 (docket no. 416).  During the course of

15  trial, the parties stipulated that various e-mails, which were recovered from the despoiled

16  laptop that had been issued to and untimely returned by Summers, were not produced in

17  discovery by Telekenex.  *See* *id.* at No. 21; Stipulations (docket no. 377).  Telekenex's

18  failure to disclose these e-mails, which were either received or sent by individuals, other

19

20  _____

21  [1] Although the Fifth Amended Complaint contained fifteen causes of action, *see* docket no. 175, in light

22  of plaintiffs' efforts to segregate the attorney's fees related to claims dismissed prior to trial, the Court has
    treated the CPA claim as one of only eight, rather than fifteen, causes of action.

23

ORDER - 5

1   than Summers, who were associated with Telekenex, undermines any claim that it was

2   not complicit in or otherwise liable for Summers's spoliation efforts.

3        In determining the amount of monetary sanctions, the Court must be guided by a

4   standard of reasonableness.  *Leon*, 464 F.3d at 961.  Recovery should not exceed "those

5   expenses and fees that were reasonably necessary to resist the offending action."  *In re*

6   *Yagman*, 796 F.2d 1165, 1185, amended by 803 F.2d 1085 (9th Cir. 1986).  The starting

7   point for computing reasonable attorney's fees is the lodestar figure, which represents the

8   number of hours reasonably expended multiplied by a reasonable hourly rate.  *See* *Jordan*

9   *v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987).  A reasonable hourly rate is

10   one "in line with those prevailing in the community for similar services of lawyers of

11   reasonably comparable skill and reputation."  *Id.* at 1263.  Upward adjustments from the

12   lodestar amount, based on certain "other considerations," are proper only in "rare" and

13   "exceptional" cases, and they must be supported by specific evidence in the record and

14   detailed findings by the Court.  *Id.* at 1262.

15        1.    **Lodestar**

16        Turning now to the calculation of the lodestar value, the Court acknowledges and

17   appreciates plaintiffs' attorneys' attempts to apportion the attorney's fees and costs

18   associated with the spoliation issue,[2] but the Court must agree with many of the criticisms

19   lodged by defendants.

20

21   ─────────────────────

22   [2] Defendants contend that plaintiffs should not be compensated for the time required to segregate the spoliation fees and costs.  To the contrary, the Court concludes that the number of hours spent on such effort was both necessary and reasonable.  Lawyers do not ordinarily keep separate records for particular

23

ORDER - 6

a.      **Rates**

Although plaintiffs have appropriately not requested the full hourly rates charged by Massey & Gail LLP ("Massey & Gail"), namely $660 for named partners and $375 for a first-year associate, the reduced amounts still far exceed the prevailing rates in the local legal community for comparable work.  Plaintiffs were, of course, within their rights to retain out-of-state counsel, but they may not pass along the monetary consequences of such decision to defendants when many equally competent attorneys in the greater Seattle area could have provided similar services.  With regard to the Massey & Gail attorneys, the Court will apply the following hourly rates:

| Attorney | Rate |
| --- | --- |
| Leonard A. Gail (named partner) | $425 |
| Jonathan Massey (named partner) | $425 |
| Bruce Doughty (affiliated lawyer) | $375 |
| Matthew Reedy (first-year associate) | $195 |

These rates are consistent with those charged by other attorneys retained by plaintiffs in this case, and they are within the range of rates used by the Court in connection with attorney's fee applications involving similar claims and equivalent representation during the timeframe at issue here.  Defendants have not challenged the hourly rates ascribed to lawyers and paralegals at the other two firms representing plaintiffs, namely the Summit

tasks or services performed in a particular case, and counsel here could not have arranged in advance to track fees associated with spoliation, which is not expected in most cases.  Thus, to determine the amount of attorney's fees and costs relating solely to spoliation, plaintiffs' counsel were required to engage in an after-the-fact parsing of voluminous billing records to cull out the subset of entries on which sanctions could be based.  The Court will fully credit plaintiffs' attorneys for the time spent on this endeavor.

1  Law Group PLLC ("Summit") and Savitt Bruce & Willey LLP (the "SBW Firm"), and

2  the Court has therefore employed all of those rates.

3          **b.**    **Hours**

4         Having fixed the rates to be used in calculating the lodestar amount, the Court

5  must evaluate whether the hours claimed were reasonably expended in connection with

6  the spoliation matter.  The Court concludes that the following reductions are warranted.

7          **i.**    **Block Billing**

8         The Court agrees with defendants that, with respect to block billing, plaintiffs'

9  counsel cannot simply assign an amount of time to a particular activity in the entry absent

10 some contemporaneous record to support such allocation.  Ordinarily, in deciding

11 attorney's fee motions, when a billing entry contains more than one activity, the Court

12 apportions the reported time equally among the described activities.  The Court generally

13 does so when the moving party has made no or minimal effort to segregate compensable

14 time within one or more block-billed entries.  Recognizing that plaintiffs' counsel has at

15 least attempted to parse through the various block-billed entries, the Court declines to

16 follow its usual course, which is unlikely to result in any more accurate estimate of the

17 time spent on spoliation issues, particularly given the incompleteness of Massey & Gail's

18 submissions.[3]  Instead, the Court will apply a reduction of ten percent (10%), which will

19 sufficiently account for the generous nature of plaintiffs' counsel's approximations.

20

21 _____

22 [3] Plaintiffs have not provided a full set of billing statements from Massey & Gail, instead proffering pared
down "invoices" that were created specifically for the pending motions, and the Court is therefore unable

23

### ii.   **Quarter-Hour Increments**

Pursuant to plaintiffs' concession that a deduction is justified because of Massey & Gail's practice of billing in quarter-hour (rather than tenth-of-an-hour) increments, the Court will decrease the attorney's fees associated with Massey & Gail's work by another five percent (5%).

### iii.   **Duplication**

The Court shares defendants' view that plaintiffs' counsel are seeking fees for duplicative work. The most glaring examples involve the trial testimony of plaintiffs' expert Erik Laykin, concerning which five different attorneys and three paralegals billed time, and closing argument, as to which, in addition to the lawyer who delivered the remarks, three others charged time. To adjust for such duplication of effort, which was most apparent in connection with trial work, the Court will decrease by 50% the fees relating to trial testimony and to opening and closing arguments. This reduction will not, however, apply to attorney's fees associated with discovery and pretrial efforts, including motions in limine, proposed findings of fact and conclusions of law, proposed spoliation jury instructions, and supplemental briefing on spoliation.[4]

---

to determine what proportion of plaintiffs' overall attorney's fees and costs are reflected in their current estimates of spoliation and CPA fees and costs.

[4] With regard to defendants' other complaints about duplication, the Court declines to penalize plaintiffs for substituting and adding attorneys, and will not otherwise second guess counsel's decisions concerning the efficient distribution of responsibilities or management of specific work.

ORDER - 9

### c.   **Calculation**

Based on the adjustments described above, the Court has computed the following

attorney's fees and costs:

| Firm or Party | Atty's Fees | Costs[5] | TOTAL |
|---|---|---|---|
| Massey & Gail LLP | $91,265.36 | $185,479.59 | $276,744.95 |
| Summit Law Group PLLC | $35,104.95 | $182.00 | $35,286.95 |
| Savitt Bruce & Willey LLP | $18,274.28 | $0.00 | $18,274.28 |
| Straitshot RC, LLC | N/A | $108.13 | $108.13 |
| **TOTALS** | $144,644.59 | $185,769.72 | $330,414.31 |

## 2.   **Multiplier**

Having calculated the lodestar amount, the Court must now consider plaintiffs'

request for an upward adjustment.  In seeking an enhancement, plaintiffs rely on their

agreements to pay some of their attorneys a multiple of their customary rates, depending

on the outcome of the case.[6]  In response, defendants contend that, under the "Discovery

Fee Award" provision of the Attorney-Client Fee Agreement between plaintiffs, Summit,

and Massey & Gail, plaintiffs owe no premium to counsel, and they should not receive an

---

[5] Defendants have not challenged the costs that plaintiffs have requested in connection with spoliation, which include $184,555.19 for the services of expert Erik Laykin, $182.00 in service fees, $924.40 in travel expenses relating to Joshua Summers's second deposition, and $108.13 in e-mail server fees.

[6] Plaintiffs have not provided copies of these agreements, but they have offered their attorneys' summaries of the relevant provisions.  According to Jessica Goldman, plaintiffs are obligated to pay Summit, in the event of a recovery, 145% of the standard hourly rate for work performed after May 2010.  Goldman Decl. at ¶ 22 (docket no. 515).  Before that date, Summit was apparently compensated on an hourly basis.  The SBW Firm entered into a slightly different agreement whereby plaintiffs would pay (i) nothing if the recovery was less than $600,000; (ii) fees at between 2.5 and 5 times the actual rate, depending on the number of hours expended and the types of services performed, up to a maximum of $25,000, if the recovery was between $600,000 and $1,902,000; and (iii) fees at similar multiples, up to a maximum of 50% of the recovery, if the recovery was in excess of $1,902,000.  Savitt Decl. at ¶¶ 12 & 13 (docket no. 514).  In contrast, Massey & Gail has a more traditional contingency fee agreement with plaintiffs, expecting no payment unless the recovery exceeds a certain amount, and being entitled to specific percentages of any recovery over such sum, with the percentages increasing as various conditions and thresholds are met.  Gail Decl. at ¶ 7 (docket no. 513).

ORDER - 10

1    upward adjustment from the lodestar amount.[7]   The Court need not and does not decide

2    whether the spoliation sanctions constitute a "Discovery Fee Award" within the meaning

3    of the fee agreement.  Defendants are not parties to the fee agreement, and the Court need

4    not interpret or enforce the agreement to determine the amount of attorney's fees and

5    expenses "reasonably necessary to resist the offending action."  _Yagman_, 796 F.2d at

6    1185.  Whether the spoliation sanctions are governed by the quoted provision of the fee

7    agreement is a matter strictly between plaintiffs and their counsel, and regardless of how

8    such question might ultimately be resolved, the Court is satisfied that an upward

9    adjustment of the lodestar figure for the spoliation sanctions is not warranted.  The

10   spoliation dispute was only one among many battles fought in this case.  None of the

11   factors on which a lodestar may appropriately be enhanced are present with regard to this

12   particular skirmish.  _See_ _Jordan_, 815 F.2d at 1262 nn.4 & 6 (reciting a previous twelve-

13   element approach to calculating a reasonable attorney's fee, which was articulated in

14   _Johnson v. Ga. Highway Express, Inc._, 488 F.2d 714 (5th Cir. 1974), and identifying four

15   _Johnson_ considerations on which an upward adjustment of the lodestar may not be

16   _____

17   [7] The section of the fee agreement on which defendants rely reads in relevant part:

18         Counsel may recover from defendants certain sums as sanctions, for fees and costs
          incurred in a discovery dispute ("Discovery Fee Award").  It is agreed that, because a
          Discovery Fee Award is a result of the additional work and expense required by the
19        discovery dispute, each Counsel shall be paid that portion of the Discovery Fee Award
          that resulted from such Counsel's work as reflected in the fee application filed with the
          Court.  Such a Discovery Fee Award would not qualify for the premium (145%) billing
20        rate and in addition would be reduced from the fees owed Counsel under, respectively
          Subparagraphs 4(a)(i) and (ii) above (for Summit) and Subparagraphs 4(c)(i) and (ii)
21        (for Massey).

     _See_ Ex. H at ¶ 4(e) to Silverstein Decl. (docket no. 547).

22

23

ORDER - 11

1   based).  In particular, the contingent nature of plaintiffs' counsel's fees has no bearing

2   with respect to the spoliation sanctions because the "risk of non-payment due to lack of

3   success" was exceedingly low.  _See_ _Jordan_, 815 F.2d at 1264.  Even if plaintiffs had not

4   prevailed at trial, the Court would still have imposed monetary sanctions relating to the

5   spoliation.  The Court DECLINES to impose a multiplier and HOLDS that the lodestar

6   amount is adequate and reasonable compensation for the efforts expended by plaintiffs'

7   attorneys in detecting the spoliation, exposing the culprits, and securing the various

8   remedies.

9   **B.    Consumer Protection Act**

10          Under the CPA, a prevailing plaintiff need not prove bad faith, or even actual

11   damages, to be entitled to an award of reasonable attorney's fees.  _See_ RCW 19.86.090;

12   _see_ _Mason v. Mortg. Am., Inc._, 114 Wn.2d 842, 855-56, 792 P.2d 142 (1990).  In

13   computing, for purposes of the CPA, a reasonable amount of attorney's fees, the Court is

14   not bound by the lodestar figure; rather, the Court is charged with making "an

15   independent decision" as to what represents a reasonable amount of attorney's fees.

16   _Nordstrom, Inc. v. Tampourlos_, 107 Wn.2d 735, 744, 733 P.2d 208 (1987).  With regard

17   to reasonableness, an attorney's billing records, although relevant, are "in no way

18   dispositive."  _Id._

19          **1.    Lodestar**

20          For the reasons discussed in connection with the spoliation sanctions, the Court

21   will use hourly rates for the Massey & Gail attorneys that are commensurate with those

22   prevailing in the Seattle legal community, and will apply the rates requested for the

23

1    lawyers at Summit and the SBW Firm.  The various concessions plaintiffs have made,

2    including the five percent (5%) reduction in fees for work performed by Massey & Gail

3    to compensate for the firm's quarter-hour billing practice, will also be incorporated into

4    the Court's calculations.  The remaining issue for the Court's consideration is whether

5    plaintiffs, in their attorney's fee application, have exceeded the scope of efforts necessary

6    to achieve a favorable result on their CPA claim.  The Court concludes they have and has

7    made the following adjustments.

8              **a.    <u>Vague Descriptions</u>**

9        The Court has not credited vague descriptions, for example "correspondence re

10   strategy issues," "correspondence re discovery cut off," or "conference re discovery

11   issues," <u>see</u> Ex. 3 to Tab 2 to Gail Decl. (docket nos. 513-6 through 513-9), which

12   provide no indication that the services related to plaintiffs' CPA claim.  All of the time

13   associated with such vague entries has been disregarded.

14             **b.    <u>Unrelated and Unsuccessful Matters</u>**

15       The Court has excluded all entries referencing Brian Worthen and/or Mammoth,[8]

16   against which the CPA claim was not alleged, and all entries mentioning Telekenex's

17   creditor "Wellington," which provided no evidence relevant to liability under the CPA

18   and only minimally pertinent information indirectly related to damages.  The Court has

19   also omitted the time spent deposing, conducting discovery concerning, or examining

20   Joshua and Julia Summers, as to whom plaintiffs did not prove their cause of action under

21   _____

22   [8] Plaintiffs have, however, received a portion of the attorney's fees requested for deposing and examining
     Jeremy Malli and Wayne Worthen.

23

ORDER - 13

1   the CPA.[9]  To the extent that Brian Worthen, Mammoth, Wellington, and/or Summers

2   appears in a block-billed entry, all of the time for such entry has been omitted.

3                  **c.**      **Duplicate Recovery**

4         With respect to the CPA claim, the Court has not awarded any fees for motions in

5   limine or proposed findings of fact and conclusions of law, which primarily concerned

6   spoliation and which have already been taken into account in the spoliation sanctions.

7   With regard to jury instructions, in addition to the amount included in the spoliation

8   sanctions, the Court has credited only one (1) hour of attorney time at the rate of $195,

9   which more than sufficiently compensates for the almost verbatim use of Washington's

10  pattern instructions concerning the elements of a CPA claim.

11                 **d.**      **Block Billing**

12        With respect to legal research and dispositive motions, to the extent that billing

13  entries reflected the quantity of time devoted solely to the CPA claim, the Court has

14  attributed the full amount; however, to the extent that billing entries refer to such efforts

15  or motions generally, only a pro rata portion of the fees was allowed.

16                 **e.**      **Pro Rata Recovery**

17        The Court is unpersuaded by plaintiffs' assertion that the CPA claim was so

18  closely related to other claims that "no reasonable segregation" can be made.  *See* Motion

19  at 10 (docket no. 512).  Plaintiffs suggest that, "[b]y misappropriating Plaintiffs'

20  _____

21  [9] Although labeling as "fallacious" defendants' position that plaintiffs should not receive attorney's fees
    relating to Summers's testimony because they did not prevail in their claim against him, *see* Reply at 4

22  n.3 (docket no. 549), plaintiffs offer no citation to the record to support their apparent contention that
    Summers's testimony helped establish the CPA violation at issue.

23

ORDER - 14

1   confidential business information, the Telekenex Defendants were able to make their

2   disinformation campaign more effective," *id.* at 13, but plaintiffs notably did not prevail

3   on their trade secret misappropriation or false advertising (Lanham Act) claims.  With

4   respect to the other causes of action on which plaintiffs were successful, namely breach

5   of employment contract, breach of loyalty, and interference with contractual relations,

6   plaintiffs fail to explain how the evidence underlying such legal theories overlapped with

7   the proof necessary to support their CPA claim, the sole premise of which was that

8   defendants made false statements about Straitshot to its customers.  *See* Instruction

9   No. 20 (docket no. 388).  Indeed, the other three causes of action could have been

10  established without reference to false statements, *see* Instructions Nos. 14, 16, & 17, and

11  the making of false statements could have been demonstrated without showing any

12  breach of contract or duty of loyalty and in the absence of any tortious interference.

13  Thus, unless a billing entry specifically referred to the CPA claim, the Court has reduced

14  the number of hours in the billing entry by the ratio that the CPA claim bears to the total

15  number of claims presented at trial, specifically one-to-eight (1/8).  Moreover, time spent

16  on the current motion for attorney's fees has been discounted by 40% to reflect plaintiffs'

17  limited success.

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23

### f.    **Calculation**

The Court has computed a lodestar sum of $212,088.91, which is derived from the following data:

| Attorney/Paralegal | Hours | Rate | Discount | | Award |
|---|---|---|---|---|---|
| **Summit Law Group PLLC** | | | | | |
| AAR | 383.1 | $ 170 | 0.125 | | $ 8,140.88 |
| ALV | 230.75 | $ 90 | 0.125 | | $ 2,595.94 |
| JEK | 31.9 | $ 170 | 0.125 | | $ 677.88 |
| JLG | 863.25 | $ 320 | 0.125 | | $ 34,530.00 |
| KMO | 175.8 | $ 170 | 0.125 | | $ 3,735.75 |
| LMH | 44.2 | $ 270 | 0.125 | | $ 1,491.75 |
| | 2.5 | $ 270 | 1.000 | | $ 675.00 |
| **Savitt Bruce & Willey LLP** | | | | | |
| DBP | 67.7 | $ 155 | 0.125 | | $ 1,311.69 |
| DEM | 55.9 | $ 345 | 0.125 | | $ 2,410.69 |
| DMC | 0.7 | $ 155 | 0.125 | | $ 13.56 |
| | 0.4 | $ 155 | 1.000 | | $ 62.00 |
| JPS | 323.9 | $ 395 | 0.125 | | $ 15,992.56 |
| **Massey & Gail LLP** | | | | | |
| BMD | 625.0 | $ 375 | 0.95 | 0.125 | $ 27,832.03 |
| | 2.75 | $ 375 | 0.95 | 1.000 | $ 979.69 |
| JSM | 565.55 | $ 425 | 0.95 | 0.125 | $ 28,542.60 |
| | 79.25 | $ 425 | 0.95 | 1.000 | $ 31,997.19 |
| LAG | 659.85 | $ 425 | 0.95 | 0.125 | $ 33,301.80 |
| MJR | 427.0 | $ 195 | 0.95 | 0.125 | $ 9,887.72 |
| | 69.5 | $ 195 | 0.95 | 0.600 | $ 7,724.93 |
| | 1.0 | $ 195 | 0.95 | 1.000 | $ 185.25 |
| | | | | **TOTAL**[10] | $212,088.91 |

---

[10] The Court has not awarded fees for the time billed by the following individuals:  DEJK (David Kruse), DLA (Denise Ashbaugh), DNB (David Bruce), LCL (Larry Locker), MAT (Molly Terwilliger), MAY (Miles Yanick), MLM (Maureen Mitchell), RCB (Rex Browning), SAS (Sivan Steffens), SCW (Stephen Willey), and SDM (Sofia Mabee).  Almost all of the time claimed for Mr. Browning was associated with fully redacted billing entries, and what services Mr. Browning actually provided in connection with this case remains a mystery.  The descriptions of work performed by Mr. Kruse, Mr. Locker, Ms. Mabee, and Ms. Steffens are not much more informative, with the exception of the eight hours Mr. Locker spent assisting then lead counsel Jessica Goldman prepare to defend Philip Howe's deposition, which the Court has not credited because it was unnecessarily duplicative.  Messrs. Bruce, Yanick, and Willey billed

ORDER - 16

2.    **Multiplier**

Plaintiffs have requested 150% of the attorney's fees they allege were incurred in connection with their CPA claim.  Plaintiffs bear the burden of justifying such deviation from the lodestar result.  *Bowers v. Transam. Title Ins. Co.*, 100 Wn.2d 581, 598, 675 P.2d 193 (1983).  Under Washington law, adjustments to the lodestar figure may be based on one or both of the following considerations:  the contingent nature of a fee arrangement and the quality of work performed.  *Id.*  The latter basis is extremely limited, and may be applied "only when the representation is unusually good or bad, *taking into account the level of skill normally expected* of an attorney commanding the hourly rate used to compute the 'lodestar.'"  *Id.* at 599 (emphasis in original).  Plaintiffs make reference to this factor, but they offer no support for a determination that counsel in this case provided services of an exceptional quality.  Thus, the only ground on which plaintiffs might demonstrate the appropriateness of an enhancement is the contingent character of the fee arrangements with counsel.

The purpose of the contingency adjustment is to account for the risk that the suit will not succeed.  *See id.* at 598 (quoting Samuel R. Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?*, 126 U. PA. L. REV. 281, 324-25 (1977) (In contingent cases, "counsel bear the risk that they will not be compensated at all for their time and

---

solely for reading (and preparing to read) at trial designated portions of deposition transcripts; the Court has awarded $40 per day of testimony in witness fees for such non-legal services.  Moreover, with respect to similar activities performed by Messrs. Doughty and Manville, the Court has also credited only witness fees and not attorney's fees.  Finally, Ms. Ashbaugh, Ms. Mitchell, and Ms. Terwilliger appear to have devoted most of their minimal time on this case to issues unrelated to the CPA claim.

1    effort.  The experience of the marketplace indicates that lawyers generally will not

2    provide legal representation on a contingent basis unless they receive a premium for

3    taking that risk.")).  Thus, before using a contingent fee arrangement as a basis to

4    enhance the lodestar amount, the Court must assess the likelihood of success at the outset

5    of the litigation, bearing in mind that the contingency enhancement is designed solely to

6    compensate for the possibility that the action would be unsuccessful and that counsel

7    would receive no fee.  _Id._ at 598-99.  The adjustment may not be employed if the fee

8    agreement assures the attorney of fees regardless of the outcome of the case, or if the

9    hourly rate underlying the lodestar amount includes a premium, taking into account the

10   contingent nature of the representation.  _Id._ at 599.  Finally, the multiplier should not be

11   applied to time expended after recovery is assured, for example, for efforts made toward

12   securing attorney's fees as the prevailing party under a fee-shifting statute.  _Id._

13          Thus, plaintiffs' assertion that they are entitled to an across-the-board multiplier

14   lacks merit.  In applying the contingency enhancement to time devoted to obtaining

15   attorney's fees, as well as to post-verdict motions practice, plaintiffs completely disregard

16   the Washington Supreme Court opinion referenced in their motion.  _See_ Motion at 14

17   (docket no. 512) (citing _Bowers_).  Moreover, because Summit was compensated on an

18   hourly basis until May 2010, plaintiffs have no basis for requesting a contingency-based

19   adjustment as to over 70% of the attorney's fees accrued by Summit.  On the other hand,

20   with regard to attorney's fees incurred prior to verdict, for work performed by Massey &

21   Gail and the SBW Firm, as well as for services provided by Summit after May 2010, the

22   Court is persuaded that a slight upward departure from the lodestar figure is justified.

23

ORDER - 18

1    Plaintiffs' counsel prepared for and proceeded to trial in this matter with no assurance of

2    payment absent recovery.  Indeed, in the event that the jury's award failed to exceed

3    certain thresholds, two of the three firms were positioned to receive no fees even if

4    plaintiffs prevailed.  Thus, the Court concludes that a multiplier is necessary to account

5    for the risk that the suit would not be sufficiently successful.

6              In determining the appropriate quantum of such enhancement, the Court is mindful

7    that plaintiffs are entitled to attorney's fees only on their CPA claim, which was only one

8    of eight causes of action they pursued at trial, and only one of four causes of action on

9    which they prevailed.  Of the various hurdles plaintiffs surmounted in proving their CPA

10   and three other claims, the one to which the Court would assign the highest risk of failure

11   was establishing damages.  Indeed, the crux of defendants' post-verdict motions was that

12   the evidence did not support the jury's award of $6.49 million in damages.  *See* Tr. (Apr.

13   10, 2012) at 56:20-61:10 (docket no. 528).  With respect to the CPA claim, however,

14   plaintiffs did not have to prove actual damages to prevail; the injury element of a CPA

15   claim is met "if the consumer's property interest or money is diminished because of the

16   unlawful conduct even if the expenses caused by the statutory violation are minimal."

17   *Mason*, 114 Wn.2d at 854.  Moreover, plaintiffs did not have to prove actual damages to

18   obtain attorney's fees pursuant to the CPA; only an award of treble damages requires an

19   underlying determination of actual damages.  *Id.* at 855.  Thus, with respect to the CPA

20   claim, plaintiffs did not face the same challenges as existed in connection with their other

21   theories of recovery.  The Court is therefore of the opinion that the 1.5 (150%) multiplier

22   plaintiffs seek is not reasonable, and the Court will instead use a factor of 1.2 (120%).

23

ORDER - 19

Applying this enhancement to Summit's fees after May 2010 and before February 6, 2012, as well as to the pre-verdict fees of Massey & Gail and the SBW Firm, the Court derives the following sum to be awarded to plaintiffs in addition to the lodestar figure:

| Firm | Fees Eligible for Enhancement | Additional Amount to be Awarded |
|------|-------------------------------|---------------------------------|
| Summit Law Group PLLC | $   14,225.00 | $        2,845 |
| Savitt Bruce & Willey LLP | $   17,979.63 | $     3,595.93 |
| Massey & Gail LLP | $ 110,866.63 | $ 22,173.33 |
| **TOTAL** | | $ 28,614.26 |

The Court concludes that the computed lodestar amount, together with the stated contingency enhancement, constitutes a reasonable attorney's fee in light of the nature of the CPA claim, the course of the proceedings, the results achieved, and the underlying purpose of the CPA.  _See_ _Brand v. Dep't of Labor & Indus._, 139 Wn.2d 659, 667, 989 P.2d 1111 (2000) (observing that a "central" consideration in the Court's analysis should be "the underlying purpose of the statute authorizing the attorney fees").  Defendants Telekenex, Inc., IXC Holdings, Inc., Brandon Chaney, Mark Radford, and Anthony Zabit, and the marital community of each individual defendant,[11] shall be jointly and severally liable for the attorney's fees awarded by the Court to plaintiffs Straitshot Communications, Inc. and Straitshot RC, LLC.  _See_ _Venegas v. Mitchell_, 495 U.S. 82, 90 (1990) (fee-shifting statute controls "what the losing defendant must pay" to the

---

[11] Defendants Mark and Maria Josefina (a/k/a Joy) Prudell having filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code, the Court STAYS all further proceedings concerning the Prudells, _see_ 11 U.S.C. § 362(a), and the Court will enter supplemental judgment only as to defendants other than the Prudells.

ORDER - 20

1  prevailing party, not what the successful plaintiff must pay his, her, or its attorney); *see*
2  *also* *Astrue v. Ratliff*, 130 S. Ct. 2521 (2010) (the prevailing party, rather than the lawyer,
3  is entitled to receive the attorney's fees awarded under a fee-shifting provision); *compare*
4  *Okla. ex rel. Okla. Bar Ass'n v. Weeks*, 969 P.2d 347, 357 (Okla. 1998) (a prevailing
5  plaintiff's attorney may not recover both a contingency fee and the statutory award
6  (citing *Venegas v. Skaggs*, 867 F.2d 527, 534 n.7 (9th Cir. 1989), *aff'd*, 495 U.S. 82
7  (1990))).

8  **3.   Costs**

9      Plaintiffs seek costs to which they are not entitled under the CPA.  Costs are
10  limited to those defined in RCW 4.84.010.  *See* *Nordstrom*, 107 Wn.2d at 743 ("We
11  believe it gives the plaintiff in a Consumer Protection Act action an unwarranted
12  recovery to extend costs beyond those statutorily defined in RCW 4.84.010.").  Under
13  RCW 4.84.010, plaintiffs are entitled to filing fees, fees for service of process, notary
14  fees, reasonable expenses for obtaining certain reports and records that are admitted into
15  evidence at trial, statutory attorney and witness fees, and reasonable expenses for the
16  transcription of depositions used at trial.

17      Plaintiffs will not be awarded as costs the fees paid to other law firms, attorney
18  travel and subsistence expenses,[12] legal research service charges, copying, mailing, and

19  ───────────────

20  [12] Plaintiffs' reliance on *Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 144 Wn.2d
    130, 26 P.3d 910 (2001), for the proposition that attorney travel and subsistence expenses may be
21  recovered as costs is entirely misplaced.  In *Panorama*, the plaintiff did not tax costs pursuant to
    RCW 4.84.010.  *See id.* at 143.  Instead, the plaintiff was awarded attorney's fees as an insured that was
22  "forced to file suit to obtain the benefit of [its] insurance contract," pursuant to *Olympic S.S. Co. v.
    Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).  *See* 144 Wn.2d at 143.  In *Panorama*, the issue

23  ORDER - 21

messenger fees, pro hac vice application fees, electronic filing (PACER) fees, or

undefined printing costs.  *See* *Estep v. Hamilton*, 148 Wn. App. 246, 261-63, 201 P.3d

331 (2008) (declining to award costs of deposition transcripts that were not made part of

the record, airfare for a party, expert witness fees, or photocopying costs); *compare* 28

U.S.C. § 1920.

Costs will be awarded only as follows:

| CATEGORY | AMOUNT |
|---|---|
| Filing Fee & Ex Parte Fees | $306.00 |
| Service of Process Fees[13] | $790.00 |
| Deposition Transcripts[14] | $9,312.90 |

---

was whether Westlaw charges and expert witness fees should have been included within the *Olympic Steamship* attorney's fees; the opinion does not provide any ruling concerning reimbursement of airfare or charges for food and lodging.  Plaintiffs refer to the portion of the *Panorama* decision that cites hazardous waste cleanup and civil rights cases in which expenses beyond the costs enumerated in RCW 4.84.010 were allowed, *id.* at 142-43 (quoting *La.-Pac. Corp. v. Asarco Inc.*, 131 Wn.2d 587, 934 P.2d 685 (1997), and *Blair v. Wash. State Univ.*, 108 Wn.2d 558, 740 P.2d 1379 (1987)), but as the Washington Court of Appeals has recently reiterated, the CPA is not analogous to such statutes, and unlike such statutes, the CPA is not "liberally construed to serve its beneficial purposes," *224 Westlake, LLC v. Engstrom Props., LLC*, 169 Wn. App. 700, 739, 281 P.3d 693 (2012).

[13] The cost summary submitted by plaintiffs, Ex. 4 to Tab 2 to Gail Decl. (docket nos. 513-9 through 513-10), includes numerous charges by ABC Legal Services, Inc. for "service" on individuals and entities that are not parties to this case.  By definition, such "service" does not constitute service of process, *see* BLACK'S LAW DICTIONARY 1325, 1491 (9th ed. 2009); *see also* Wash. CR 4(d) (outlining the methods for service of "summons and other process"), and plaintiffs are not entitled to reimbursement for such expenses.  The Court has credited plaintiffs with the charges associated with service on defendants Brandon Chaney ($140), Mark Radford ($160), Anthony Zabit ($75), IXC Holdings, Inc. ($245), and IXC, Inc. ($170), but not for service on Joshua Summers, as to whom plaintiffs did not prevail on their CPA claim.  Plaintiffs have not requested process service fees relating to defendants Mark Prudell or Telekenex, Inc.

[14] The Court has included the costs of transcripts for the depositions of individual defendants other than Joshua Summers, namely Brandon Chaney ($1,860.25), Mark Prudell ($2,033.25), Mark Radford ($1,902.50), and Anthony Zabit ($3,516.90).  The Court has not awarded the costs of transcripts for the depositions of Carl Thomas Hunsinger, Jeremy Malli, Larry Marcus, Oscar Molnar, and Wayne Worthen, portions of which were read into the record during trial, *see* Minutes (docket nos. 370, 375, 376), because plaintiffs have provided no documentation concerning these depositions.  The description "Court Reporter fee," which appears several times in the cost summary prepared by Massey & Gail, does not suffice.  The expenses relating to Andrew Gold's and Phil Howe's depositions have been excluded because both individuals provided live testimony on behalf of plaintiffs, and such transcripts were not used by plaintiffs

| CATEGORY | AMOUNT |
|---|---|
| Statutory Attorney Fee (RCW 4.84.080) | $200.00 |
| Witness Fees[15] | $760.00 |
| TOTAL | $11,368.90 |

**Conclusion**

For the foregoing reasons, plaintiffs' motions for spoliation sanctions, docket

no. 511, and for attorney's fees and costs pursuant to Washington's Consumer Protection

Act ("CPA"), docket no. 512, are each GRANTED in part and DENIED in part.  The

Clerk is DIRECTED to enter two separate supplemental judgments as follows.  The first

supplemental judgment shall be in favor of plaintiffs Straitshot Communications, Inc. and

Straitshot RC, LLC and against defendants Joshua and Julia Summers, Telekenex, Inc.,

and IXC Holdings, Inc., jointly and severally, in the amount of $144,644.59 in attorney's

fees and $184,555.19 in costs, for a total of $330,414.31 as spoliation sanctions, together

---

at trial.  Finally, with regard to the deposition of Brian Worthen, the Court declines plaintiffs' request for such expenses in light of the fact that the CPA claim was not even alleged against Worthen or Mammoth.

[15] Plaintiffs have not sought mileage or other travel expenses of witnesses.  As to witness compensation, although Washington contemplates a lower amount, *see* RCW 2.40.010; RCW 2.36.150, the Court has applied the federal rate of $40 per day, *see* 28 U.S.C. § 1821(b).  The Court has taxed the witness fees as follows:

| Witness | No. of Days | Costs Awarded | Witness | No. of Days | Costs Awarded |
|---|---|---|---|---|---|
| Lorraine Barrick | 3 | $120 | Scott MacPherson | 1 | $40 |
| David Bruce (Hunsinger deposition) | 1 | $40 | Duncan Manvill (W. Worthen deposition) | 1 | $40 |
| Bruce Doughty (Marcus deposition) | 1 | $40 | Stephen C. Perry | 2 | $80 |
| Andrew Gold | 4 | $160 | Zachary Sargent | 1 | $40 |
| Philip Howe | 2 | $80 | Stephen Willey (Malli deposition) | 1 | $40 |
| Erik Laykin | 1 | $40 | Miles Yanick (Molnar deposition) | 1 | $40 |
| | | | **TOTAL** | | $760 |

ORDER - 23

1    with interest at the rate of eighteen-hundredths of one percent (0.18%) per annum from

2    the date of entry of the Court's Spoliation Findings of Fact and Conclusions of Law,

3    namely March 6, 2012, until paid in full.  *See* 28 U.S.C. § 1961; *see also* *Friend v.*

4    *Kolodzieczak*, 72 F.3d 1386, 1391-92 (9th Cir. 1995) ("Interest runs from the date that

5    entitlement to fees is secured, rather than from the date that the exact quantity of fees is

6    set.").

7            The second supplemental judgment shall be in favor of plaintiffs Straitshot

8    Communications, Inc. and Straitshot RC, LLC and against defendants Telekenex, Inc.,

9    IXC Holdings, Inc., Brandon Chaney, Mark Radford, and Anthony Zabit, and the marital

10   community of each individual defendant, jointly and severally, in the amount of

11   $240,703.17 in attorney's fees and $11,368.90 in costs, for a total of $252,072.07, which

12   is awarded pursuant to RCW 19.86.090, RCW 4.84.010, and 28 U.S.C. § 1920, together

13   with interest at the rate of seventeen-hundredths of one percent (0.17%) per annum from

14   the date of the original judgment, namely February 23, 2012, until paid in full.  *See*

15   *Friend*, 72 F.3d at 1391-92.

16           This matter is STAYED with respect to defendants Mark and Maria Josefina

17   (a/k/a Joy) Prudell (the "Prudell Defendants") pursuant to 11 U.S.C. § 362(a), and is

18   CLOSED with respect to all other parties.  Plaintiffs and the Prudell Defendants are

19   DIRECTED to file a joint status report within fourteen (14) days after the conclusion of

20   bankruptcy proceedings or by June 10, 2013, whichever occurs earlier.

21

22

23

ORDER - 24

1        The Clerk is further DIRECTED to send a copy of this Order to all counsel of

2   record.

3        IT IS SO ORDERED.

4        Dated this 20th day of November, 2012.

5

6                                        _____
                                         THOMAS S. ZILLY
7                                        United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 25